FILED
14-0797
1/7/2015 4:47:38 PM
tex-3688319
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# No. 14-0797

_____

# In the
# Supreme Court of Texas

_____

IN RE STEVEN C. PHILLIPS,
*RELATOR*.

_____

On Petition for Writ of Mandamus to
the Texas Comptroller of Public Accounts

_____

## RESPONDENT'S MANDAMUS RECORD

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

CHARLES E. ROY
FIRST ASSISTANT ATTORNEY
GENERAL

DAVID C. MATTAX
DEPUTY ATTORNEY GENERAL FOR
DEFENSE LITIGATION

ROBERT O'KEEFE
DIVISION CHIEF
FINANCIAL LITIGATION, TAX, AND
CHARITABLE TRUSTS DIVISION

LESLI G. GINN
DEPUTY DIVISION CHIEF
STATE BAR NO. 24050664

ERIKA R. SAMS
ASSISTANT ATTORNEY GENERAL
STATE BAR NO. 24083784

OFFICE OF THE ATTORNEY GENERAL
FINANCIAL LITIGATION, TAX, AND
CHARITABLE TRUSTS DIVISION
P.O. BOX 12548 (MC 17-6)
AUSTIN, TEXAS 78711-2548
TEL. (512) 936-0538
FAX (512) 477-2348
LESLI.GINN@TEXASATTORNEYGENERAL.GOV
ERIKA.SAMS@TEXASATTORNEYGENERAL.GOV

*COUNSEL FOR RESPONDENT, TEXAS
COMPTROLLER OF PUBLIC ACCOUNTS*




October 14, 2009

Mr. Vincent Castilleja
Crime Records Services
Texas Department of Public Safety
PO Box 4143
Austin, Texas 78765

Dear Mr. Castilleja:

Pursuant to Chapter 103 of the Civil Practice and Remedies Code, as amended by the 81st Legislature, a claimant is entitled to compensation in an amount equal to $25,000 multiplied by the number of years served as a registered sex offender.

Please provide us a written statement verifying registration as a sex offender and length of registration including start and end dates for the following claimant.

| Name | DOB | Texas DL Number | SSN | TDCJ # | SID # |
|---|---|---|---|---|---|
| Steven C Phillips | ▮▮▮▮ | n/a | ▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |

If you have any questions regarding this request, please call 512-936-6100 or Kristie Guerra @ 512-463-4014.

Sincerely,

Leonard Higgins
Comptroller's Judiciary Section
PO Box 13528
Austin, Texas 78711-3528

RMR 000001

# REQUEST FOR WRONGFUL IMPRISONMENT COMPENSATION 2009

## COMPTROLLER USE ONLY

| AGY | COBJ | TC | FUND | AY | PCA | APPROVAL | DOCUMENT NUMBER | DOCUMENT AMOUNT |
|-----|------|----|----- |----|-----|----------|-----------------|-----------------|
|     |      |    |      |    |     |          |                 | 51A             |

Claimant name and address

STEVEN C. PHILLIPS

Social Security Number

TDCJ Number

Phone number

Alternate phone number

Mail completed form and documentation to
**COMPTROLLER'S JUDICIARY SECTION**
P.O Box 13528
Austin, TX 78711-3528
Call 1-800-531-5441, ext. 6-5985 or (512) 936-5985

## REQUIRED DOCUMENTATION

| | | |
|---|---|---|
| A verified copy of pardon / court order showing actual innocence and justifying application. | Enclosed | ☑ |
| A written statement from Texas Department of Criminal Justice verifying length of incarceration in a State prison. | Enclosed | ☑ |
| A written statement verifying the length of incarceration from any Texas County or Municipality where incarcerated in relation to the charges for which claimant is eligible to make the claim. | Enclosed | ☑ |
| If applicable, a written statement from Texas Department of Criminal Justice verifying length of time spent on parole. | Enclosed | ☑ |
| If applicable, a written statement from the Texas Department of Public Safety verifying registration as a sex offender and length of registration. | Enclosed | ☑ |
| A certified copy each child support order , if applicable, under which child support payments became due during the time the claimant served in prison and copies of the official child support payment records described by Section 234.009, Family Code, for that period. | Enclosed | ☑ |
| For proof of birth date provide a copy of birth certificate, or state driver's license, or state ID, or a notarized statement verifying month, day and year of birth. | Enclosed | ☑ |

**Total Amount of Claim Supported by the Attached Documentation:** 4,800,000.00

## CLAIMANT'S CERTIFICATION

I, _Steven_ STEVEN C. PHILLIPS, do hereby certify that the amount requested is due and payable pursuant to Chapter 103 of the Texas Civil Practice and Remedies Code and I will immediately notify the Comptroller's Judiciary Section in writing of any changes or conditions which will disqualify this payment.

| Claimant Signature | Date |
|---|---|
| sign here ▶ Steven C. Phillips | 10 / 13 / 09 |

## IF REPRESENTED, CLAIMANT'S LEGAL COUNSEL

| Attorney of Record | Contact Phone Number (Area code and phone number) |
|---|---|
| | |

Address/City/State/zip code

## COMPTROLLER APPROVAL

I approve this request for payment and to the best of my knowledge this request for payment is true and correct. This payment complies with Chapter 103 of the Texas Civil Practice and Remedies Code.

Audited by:

| Approved by | Date |
|---|---|
| sign here ▶ | 12 / 02 / 09 |

RMR 000002



RMR 000003



## TEXAS DEPARTMENT OF PUBLIC SAFETY
### CRIME RECORDS SERVICE

| TxDPS Public Site | TxDPS Secure Site | | Español | Print | Help |

TXDPS - TXDPS Public Sex Offender Registry - PHILLIPS,STEVEN CHARLES

Home | New Search | Results | Subscribe                                    Sign In

Date:6/1/2009
User:

**New Account**

**User Training**

Criminal History

Sex Offender Registry

T.R.I.P

H.E.A.T

Metal Recycling Program

**Sex Offender Registry**

Search

**Account**

Message Center

Manage Account

Help

**Sign In**

PHILLIPS,STEVEN CHARLES

**Description**

| | |
|---|---|
| SID | █████████ |
| Risk Level | HIGH |
| Ending Registration Date | NON-EXPIRE |
| Verification Requirement | QUARTERLY |
| Sex | MALE |
| Race | WHITE |
| Ethnicity | NON-HISPANIC |
| Height | 5'9" |
| Weight | 188 lbs |
| Hair Color | BLACK |
| Eye Color | GREEN |
| Shoe Size | 11 |
| Shoe Width | UNKNOWN |
| ICO | |

**Current Photo**

RECEIVED

OCT 1 4 2009

BIA

Photo Reported - 2/26/2008

**Names**

- PHILLIPS,STEVEN CHARLES (PRIMARY)
- PHILLIPS,STEVEN C

**Birthdates**

- ███████ (PRIMARY)

**Registration/Verification Information**

| Date | Event Type | Agency |
|---|---|---|
| 09/16/08 | VERIFICATION | DALLAS POLICE DEPARTMENT |
| 12/28/07 | REGISTRATION | DEPT OF CRIMINAL JUSTICE HUNTSVILLE |

**Address Information**

| Date | Address | |
|---|---|---|
| 09/16/08 | ████████████ DALLAS | Display on Map |

**Occupation Information**

| Date | Employer | Address |
|---|---|---|
| 09/16/08 | UNEMPLOYED | |

**Education Information**

| Date | School | | Employee | Student |
|---|---|---|---|---|
| 09/16/08 | NONE | | | |

**Occupational License Information**

| Date | Occupational License Issuer |
|---|---|
| 09/16/08 | NONE |

RMR 000004

Offenses

TX:11990003 AGG SEXUAL ASSAULT

| Victim Sex | Victim Age | GOC | Time | Disposition Date | Discharge | Status |
|---|---|---|---|---|---|---|
| FEMALE | 29 | | 40Y | 6/11/1984 | NO | PAROLE |
| Citation | | | | | | |

TEXAS PENAL CODE §22.021

TX:11990003 AGG SEXUAL ASSAULT

| Victim Sex | Victim Age | GOC | Time | Disposition Date | Discharge | Status |
|---|---|---|---|---|---|---|
| FEMALE | 29 | | 30Y | 8/24/1983 | NO | PAROLE |
| Citation | | | | | | |

TEXAS PENAL CODE §22.021

TX:36990013 INDECENCY W/A CHILD EXPOSES

| Victim Sex | Victim Age | GOC | Time | Disposition Date | Discharge | Status |
|---|---|---|---|---|---|---|
| FEMALE | 16 | | 10Y | 6/11/1984 | YES | UNKNOWN |
| Citation | | | | | | |

TEXAS PENAL CODE §21.11 (A)(2)

TX:11990003 AGG SEXUAL ASSAULT

| Victim Sex | Victim Age | GOC | Time | Disposition Date | Discharge | Status |
|---|---|---|---|---|---|---|
| FEMALE | 27 | | 10Y | 6/11/1984 | YES | UNKNOWN |
| Citation | | | | | | |

TEXAS PENAL CODE §22.021

TX:22990003 BURGLARY HABITATION INTEND OTHER FELONY

| Victim Sex | Victim Age | GOC | Time | Disposition Date | Discharge | Status |
|---|---|---|---|---|---|---|
| FEMALE | 27 | | 10Y | 6/11/1984 | YES | UNKNOWN |
| Citation | | | | | | |

TEXAS PENAL CODE §30.02 (D)

TX:22990003 BURGLARY HABITATION INTEND OTHER FELONY

| Victim Sex | Victim Age | GOC | Time | Disposition Date | Discharge | Status |
|---|---|---|---|---|---|---|
| FEMALE | 29 | | 30Y | 8/27/1982 | NO | PAROLE |
| Citation | | | | | | |

TEXAS PENAL CODE §30.02 (D)

Supplemental Photos :



Photo Reported - 12/28/2007

RMR 000005



Photo Reported - 12/28/2007

---

**Notice**

DPS cannot guarantee the records you obtain through this site relate to the person about whom you are seeking information. Searches based on names, dates of birth and other alphanumeric identifiers are not always accurate. The only way to positively link someone to a criminal record is through fingerprint verification. Additional Caveats...

---

Site design and code Copyrighted 1997-2008 by **MicroAssist, Inc.**. All Rights Reserved. This site was created for the **Texas Department of Public Safety** by MicroAssist, Inc. The Texas Department of Public Safety is responsible for its content. Please review Texas Department of Public Safety's **Privacy Policy** before using the information on this site.

RMR 000006



# Texas Department of Criminal Justice

Brad Livingston
Executive Director

September 15, 2009

Steven Charles Phillips ···

███████████

RE: Phillips, Steven Charles ███████



**RECEIVED**

OCT 1 4 2009

**BIA**

Dear Ms. Stone,

The files of this Agency have been reviewed on offender Steven Charles Phillips, ████████████
pursuant to your request.

Offender Phillips was received *into* TDCJ custody on 2-22-1983 from Dallas County on eight 10-year
sentences, two-30-year sentences, and a 40-year sentence. Offender Phillips is charged with Aggravated
Assault (4cts.), Burglary of a Habitation (3cts.), <u>Indecency W/Child</u>, Aggravated Rape, and Aggravated
<u>Sexual Abuse (2cts.)</u> by the 204th and 194th Judicial District Courts, under cause numbers
F82-82743-NKQ, F82-79130-JKQ, F82-86748-NKQ, F82-68990-JKQ, F82-77699-QKQ,
F82-87051-JKQ, **F82-79140-JKQ, F82-86866-NKNKQ, F82-77700-QKQ, F82-77162-NKMKQ,
F82-77161-NKM.** Offender Phillips is charged for offenses occurring on 5-15-1982, 4-22-1982, and
5-14-1982, with sentencing on 6-11-1984, 8-24-1983, and 8-27-1982. Offender Phillips was released
from TDCJ custody on 12-28-2007 on mandatory supervision.

On 10-27-2008 the Court of Criminal Appeals issued mandates on cause numbers F82-79140-JKQ,
F82-86866-NKNKQ, F82-7700-QKQ, F82-77162-NKMKQ, and F82-77161-NKM, setting these cases
aside.

Offender Phillips served a total of 25-years, 6-months, and 18-days on these cause numbers, and is not
under TDCJ jurisdiction.

**Offender Phillips was on mandatory supervision from 12-28-2007 until 10-27-2007, for a period of
9-months, and 29-days.**

Sincerely,

Charley Valdez
PS-III
Offender Time Management
Classification and Records
(936) 437-6380

cc: file

*9b 10/27/08*
*Ct Crime Appeals*
*mandate Date*
*above*

---

*Our mission is to provide public safety, promote positive change in offender
behavior, reintegrate offenders into society, and assist victims of crime.*

P.O. Box 99
Huntsville, Texas 77342-0099
www.tdcj.state.tx.us

RMR 000007

RECEIVED

OCT 1 4 2009

BIA

IN THE CHANCERY COURT OF BOONE COUNTY, ARKANSAS

CHERI SUE PHILLIPS,                                          PLAINTIFF

Vs.                        No. _____

STEVEN CHARLES PHILLIPS,                                    DEFENDANT

## DECREE OF DIVORCE

NOW, on this 2nd day of February, 1978, comes on for hearing the above styled cause, and same is submitted upon the oral testimony of plaintiff and witness on her behalf, the official file, statement of counsel and other matters and things before the Court, from all of which the Court finds:

That the parties hereto are residents of Boone County, Arkansas, the defendant presently being in the military service in Germany; that the defendant was duly notified by publication and by Attorney Ad Litem, such proof of publication and Report of Attorney Ad Litem being filed herein; that the Court has jurisdiction of the parties and subject matter.

That the plaintiff has alleged and established by competent testimony just and proper grounds for divorce and a decree of absolute divorce should be entered in her favor.

That to this marriage was born one child, namely ████████; that said child is presently in the care and custody of the plaintiff and she is fit and proper person to continue the care and custody of said child, subject to the defendant's right of reasonable visitation with said child. That the defendant shall pay to the plaintiff for the support of said child the sum of $100.00 each month.

That the defendant should return immediately to plaintiff three boxes of her personal items, which she left in Germany.

IT IS, THEREFORE, BY THE COURT, Considered, Ordered, Adjudged and Decreed that plaintiff, Cheri Sue Phillips, should be and she is hereby granted a decree of absolute divorce from the defendant, Steven Charles Phillips; that the plaintiff is awarded the care and custody of the minor child of the parties, subject to defendant's right of reasonable visitation with said child; that the defendant should be and he is hereby ordered to pay to the plaintiff for the support of said child, the sum

RMR 000008

of $100.00 per month; that the defendant be and he hereby is directed to return immediately to the plaintiff three boxes of her personal items, which she left in Germany.

_Nell Powell Wright_
CHANCERY JUDGE
2/7/78

RMR 000009

NOV. 24, 2007 10:59

ARKANSAS DEPARTMENT OF HEALTH 103 '76 000103
Bureau of Vital Statistics
CERTIFICATE OF LIVE BIRTH

REGISTRATION DISTRICT No. 6

| | | |
|---|---|---|
| **1. PLACE OF BIRTH** A. COUNTY — Boone | **2. USUAL RESIDENCE OF MOTHER (WHERE DOES MOTHER LIVE?)** A. STATE — Arkansas | B. COUNTY — Boone |
| B. CITY, TOWN, OR LOCATION — Harrison | C. CITY, TOWN, OR LOCATION — Harrison | |
| C. NAME OF HOSPITAL OR INSTITUTION (IF NOT IN HOSPITAL, GIVE STREET ADDRESS) — Boone County Hospital | D. STREET ADDRESS — Rt. 2 | |
| D. IS PLACE OF BIRTH INSIDE CITY LIMITS? YES ☒ NO ☐ | E. IS RESIDENCE INSIDE CITY LIMITS? YES ☐ NO ☒ | |

**CHILD**

| 3. NAME (TYPE OR PRINT) FIRST ▮ MIDDLE ▮ LAST — Phillips | | |
|---|---|---|
| 4. SEX — Fe | 5A. THIS BIRTH SINGLE ☒ TWIN ☐ TRIPLET ☐ | 5B. IF TWIN OR TRIPLET, CHILD WAS BORN 1ST ☐ 2ND ☐ 3RD ☐ |

6. DATE OF BIRTH — MONTH ▮ DAY ▮ YEAR ▮ HOUR ▮

**FATHER**

| 7. NAME FIRST — Steven | MIDDLE — Charles | LAST — Phillips | 8. COLOR OR RACE — White |
|---|---|---|---|
| 9. AGE (AT TIME OF THIS BIRTH) — 17 YEARS | 10. BIRTHPLACE (STATE OR FOREIGN COUNTRY) — Texas | | 11. USUAL OCCUPATION — U.S. Army |

**MOTHER**

| 12. MAIDEN NAME FIRST — Cheryl | MIDDLE — Sue | LAST — ▮ | 13. COLOR OR RACE — White |
|---|---|---|---|
| 14. AGE (AT TIME OF THIS BIRTH) — 16 YEARS | 15. BIRTHPLACE (STATE OR FOREIGN COUNTRY) — Arkansas | | |

16. PREVIOUS DELIVERIES TO MOTHER (DO NOT INCLUDE THIS BIRTH)

| 17. INFORMANT — NAME — Cheryl Phillips | RELATION TO CHILD — Mother | A. HOW MANY OTHER CHILDREN ARE NOW LIVING? — 0 | B. HOW MANY OTHER CHILDREN WERE BORN ALIVE BUT ARE NOW DEAD? — 0 | C. HOW MANY FETAL DEATHS (FETUSES BORN DEAD AT ANY TIME AFTER CONCEPTION)? — 0 |
|---|---|---|---|---|

**CERTIFIER**

I CERTIFY THAT THE ABOVE NAMED CHILD WAS BORN ALIVE AT THE PLACE AND TIME AND ON THE DATE STATED ABOVE.

18A. SIGNATURE — *[signature]*  
18B. DATE ▮  
18C. ATTENDANT M.D., MIDWIFE, OTHER (SPECIFY) — M.D.

18E. CERTIFIER — NAME (TYPE OR PRINT) — O.A. Hable M.D.

18D. WAS MOTHER'S BLOOD TESTED FOR SYPHILIS? YES ☒ NO ☐
18F. MAILING ADDRESS — Harrison, Arkansas

REGISTRAR — SIGNATURE
19. *Sarah Ellen Davis*

20. DATE RECEIVED BY LOCAL REGISTRAR ▮

CONFIDENTIAL INFORMATION FOR MEDICAL AND HEALTH USE

---

THIS IS A CERTIFIED COPY OF AN ORIGINAL DOCUMENT

THIS IS TO CERTIFY, That the above is an exact reproduction of the original certificate which is on file in this office and of which I am legal custodian. IN TESTIMONY WHEREOF, witness my hand and seal of office at Little Rock, Arkansas. (Do not accept if rephotographed, or if seal cannot be felt. The reproduction of this document is prohibited by law — Arkansas Statute 82-529.)

March 17, 1976
Date

*Robert T. Bailey*
State Registrar

RMR 000010

RMR 000011

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

**DISTRICT COURT**
**F I L E D**

FEB 12 1992

DON E. AUSTIN, COURT CLERK
STATE OF OKLA. TULSA, COUNTY

TRACI M. PHILLIPS,

    Plaintiff,

vs.

STEVEN C. PHILLIPS,

    Defendant.

Case No. FD 91 08634

DECREE OF DIVORCE

NOW on this 12th day of February, 1992, the above entitled cause comes on for hearing, the Plaintiff, TRACI M. PHILLIPS, appearing in person and by her attorney, Julia Draughon, and the Defendant appears not having heretofore executed and filed sufficient entry of appearance and waiver of time to plead.

The Court having examined the files and records in this case and having heard oral testimony of one witness sworn and examined in open Court and having fully considered all material facts alleged in Plaintiff's petition, finds;

That the parties hereto were legally married on or about the 18th day of July, 1980, in Harrison, Arkansas and have been since that time and are at the present time husband and wife;

That of the marriage hereto one (1) child has been born to the parties, namely;

<span style="background:black">████████████████</span>

and that the Court does have jurisdiction to determine custody of the above named minor child under the provisions of 10 O.S. 1601 et seq and that the provisions of 25 U.S.C.A. 1901 et seq and 10 O.S. 40 et seq do not apply to these proceedings;

That a state of irreconcilable incompatibility exists between the parties hereto and is such that an absolute decree of divorce should be awarded to both parties as prayed for;

That the Plaintiff has been a resident of the State of Oklahoma for a period of six months next preceding the filing herein and a resident of Tulsa County for thirty days;

That the Plaintiff should be awarded the exclusive care and custody of the minor child subject to the Defendant's rights of visitation every other weekend and any other times agreeable to both parties. The Defendant should pay the sum of $108.50 per month child support. The Plaintiff should be responsible for any medical/dental expenses of the minor child.

That each party should be awarded the property in their possession;

RMR 000012

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that TRACI M. PHILLIPS, Plaintiff herein, and STEVEN C. PHILLIPS, Defendant herein, be and they are hereby awarded an absolute decree of divorce each from the other, and the bonds of matrimony hereto existing between said parties are hereby dissolved, set aside and held for naught, and both parties are released therefrom; PROVIDED, that the parties are enjoined from marrying any other party for a period of six (6) months from the date hereof.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiff is awarded the exclusive care and custody of the minor child subject to Defendant's rights of visitation every other weekend and any other times agreeable to both parties. The Defendant is ordered and directed to pay the amount of $108.50 per month child support during the minority of the child or until further order of the Court. The Plaintiff should be responsible for any medical/dental expenses of the minor child.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the portion of Defendant's income or periodic earnings specified in 12 O.S. Section 1171.2 is hereby assigned to Plaintiff to meet the periodic child support arrearages or other maintenance payments, or both, imposed by this Decree. Defendant's present and/or future employer or any person, department of the State or political subdivision thereof, owing monies, income or periodic earnings to defendant is directed, upon receipt of the notice provided in 12 O.S. Section 1171.3(D) & (E), to pay the sums specified in the notice to Plaintiff, until further order of the Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that each party is awarded the property in their possession and each party releases, quit claims and assigns to the other party all his or her right, title and interest, present and prospective, in each item of property confirmed to the other party.

Judge Russell P. Hass

_____

Judge of the District Court

APPROVED:

_____
Traci M. Phillips, Plaintiff

_____
Julia Draughon #13270
TULSA LAW CLINIC
4809 S. 33rd W. Ave.
Tulsa, Oklahoma 74107
918/445-0266

RMR 000013


RECEIVED
OCT 1 4 2009
BIA



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. AP-76,010, AP-76,011, AP-76,012, AP-76,013 & AP-76,014

### EX PARTE STEVEN CHARLES PHILLIPS, Applicant

ON APPLICATIONS FOR WRITS OF HABEAS CORPUS
CAUSE NOS. F82-77700-Q; F82-77162-Q; F82-79140-Q; F82-86866-Q
IN THE 204TH DISTRICT COURT FROM DALLAS COUNTY AND
CAUSE NO. F82-77161-M IN THE 194TH DISTRICT COURT FROM
DALLAS COUNTY

*Per curiam.*

### OPINION

Pursuant to the provisions of Article 11.07 of the Texas Code of Criminal Procedure, the clerk of the trial court transmitted to this Court these applications for writs of habeas corpus. *Ex parte Young*, 418 S.W.2d 824, 826 (Tex. Crim. App. 1967). Applicant was convicted of two aggravated sexual abuse causes, sentenced to forty and thirty years' imprisonment, indecency with a child, sentenced to ten years' imprisonment, burglary of a habitation, sentenced to thirty years' imprisonment, and aggravated rape, sentenced to ten years' imprisonment. The Fifth Court of Appeals affirmed his convictions for one of the aggravated sexual abuse cases and the burglary of

OCT 0 6 2009

RMR 000014

'a habitation. *Phillips v. State*, No. 05-83-1058-CR (Tex. App.–Dallas, delivered October 26, 1984) and *Phillips v. State*, No. 05-82-01260-CR (Tex. App.–Dallas, delivered January 4, 1984). Applicant pleaded guilty to the other causes and no appeal was taken from those.

Applicant contends that he has newly discovered evidence that he is actually innocent of these offenses. The trial court has determined that no rational jury would have convicted Applicant in light of the new evidence, which was previously unavailable to Applicant. The evidence, obtained pursuant to post-conviction DNA testing and investigation, indicates that it was another individual, and not Applicant, who committed at least one of these offenses. Applicant is entitled to relief. *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996).

Relief is granted. The judgments in Cause Nos. F82-77700-Q; F82-77162-Q; F82-79140-Q and F82-86866-Q in the 204th District Court of Dallas County and Cause No. F82-77161-M in the 194th District Court of Dallas County are set aside, and Applicant is remanded to the custody of the Sheriff of Dallas County to answer the charges against him.

Copies of this opinion shall be sent to the Texas Department of Criminal Justice-Correctional Institutions Division and Parole Division.


Delivered: October 1, 2008
Do Not Publish

RMR 000015

RECEIVED

OCT 1 4 2009

BIA

| EX PARTE | § | IN THE 204th JUDICIAL |
| | § | DISTRICT COURT |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |

## ORDER GRANTING RELIEF

The Court, having considered the allegations contained in Applicant's Application for Writ of Habeas Corpus[2], Applicant's Memorandum of Law in Support of His Application for Writ of Habeas Corpus, the State's Response, and official court records in the above numbered and entitled cause, makes the following findings of fact and conclusions of law:

## HISTORY OF THE CASE

On June 11, 1984, Applicant pled guilty to the offense of aggravated assault with a deadly weapon. Pursuant to a plea bargain, Applicant was sentenced to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division. Applicant did not appeal this conviction. Applicant discharged this sentence on June 3, 1992. *See State's Exhibit A.*

## ISSUES RAISED IN APPLICATION

In the instant writ application, Applicant contends that: (1) newly discovered evidence

_____

1 The original case number for this writ was W82-79130-Q(B). The writ was refiled under the above case number, WX0890025-Q, by order of this Court, at the request of the parties. The writ seeks relief pursuant to Article I, Section 12 and Article 5, Section 8 of the Texas Constitution and Article 11.05 of the Texas Code of Criminal Procedure.

2 The Court has also considered each of Applicant's ten additional applications for writs of habeas

1

RMR 000016

establishes that he is actually innocent of the offense of which he was convicted; and (2) the State failed to disclose statements material to guilt in violation of his due process rights.

## JURISDICTION

Jurisdiction is proper under Article 11.05. Applicant is not confined on this conviction as he discharged his sentence approximately sixteen years ago, and he is not facing other collateral consequences.

## SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

The Court makes the following findings of fact.

1. On May 15, 1982, at approximately 9:30 a.m. a man in a hooded, gray sweatshirt, who was carrying a handgun, walked into an Elaine Powers Figure Salon in Garland, Texas, and commanded that the women in the salon disrobe while he masturbated. *See Applicant's Exhibit 31.*

2. The assault was one of a string of sexual assaults in the Dallas area that were committed by a single individual. Applicant was investigated and prosecuted for the crime spree.

3. Applicant was charged with aggravated assault with a deadly weapon and indecency with a child as a result of the incident at Garland Elaine Powers Figure Salon. Applicant challenges his conviction for indecency with a child in writ number W82-79140-Q(B).

4. Applicant was indicted for eleven offenses related to a string of sexual offenses that occurred in the Dallas area over a two-day period on May 14 and 15, 1982. He was also indicted for a sexual assault that occurred in February of 1982. The twelve cases were considered related by police because the offenses had similar manner and means, including but not limited to a man carrying a handgun wearing a gray hooded

corpus. Collectively the writs related to a single crime spree in Dallas in the Spring of 1982.

2

RMR 000017

sweatshirt, covering part of his face, assaulting individuals, and driving a similar maroon car.

5. Applicant was identified by at least one victim as the perpetrator in each of the twelve indicted cases. Wanda S., one of the victims in the Elaine Powers Figure Salon in Garland, identified Applicant in a live line-up approximately four weeks after the assault. Wanda S. initially identified Sidney Goodyear, not Applicant, as the man who assaulted her.

6. Prior to pleading guilty to the aggravated assault that is the subject of this writ, Applicant faced two trials for the assault of Mary B, one of the other victims in the Dallas crime spree. In addition to being identified by Mary B. as her assailant, during the trials, Applicant was identified by Michelle H., Susan W., Lani B., and Shannon K., other victims in the Dallas crime spree, as the man responsible for the Dallas crime spree. Each of these victims testified to Applicant's bad reputation. The testimony from the victims of other incidents in the Dallas crime spree was based on what we now know was their inaccurate belief that Applicant was the perpetrator of the Dallas crime spree.

7. Applicant faced two separate trials for the assault of Mary B. He was first tried for burglary of a habitation, found guilty, and sentenced to thirty years' imprisonment. A year later he was tried for the charge of aggravated sexual abuse related to the same incident. Applicant testified at the first trial, but he did not testify in the guilt phase of the second trial.

8. At the first trial, Applicant presented a defense of misidentification and presented an alibi supported by his own testimony and the testimony of his wife, his sister-in-law, his brother-in-law, and his uncle.

9. Applicant was found guilty and sentenced to two concurrent thirty year terms in the two trials he faced related to the Mary B. assault. (RR: 191, 462).

10. On June 11, 1984, Applicant pled guilty to this offense — aggravated assault with a deadly weapon — as well as eight other charges in the Dallas crime spree, after being convicted for burglary of a habitation and the aggravated sexual abuse of Mary B. in which Michelle H. and the other victims in the Dallas crime spree testified against him.

3

RMR 000018

11. The various Dallas area police departments where each of the incidents occurred communicated with one another regarding suspects in these cases. Further, there was sharing of information with Kansas City police because they had experienced a string of similar offenses two weeks after the crime spree in Dallas.

12. Following the crimes in the Kansas City area which occurred on May 27, 1982, Kansas City police determined that Sidney Goodyear was responsible for the string of assaults in that jurisdiction. Goodyear's criminal history showed manner and means similar to the Dallas area offenses. *See Applicant's Exhibits 1-34.*

13. The fact that Goodyear was identified by Wanda S. as the man who assaulted her and the other women in the Garland Elaine Powers Figure Salon was not shared with Phillips or his counsel. *See Applicant's Exhibit 40.*

14. In the case of victim Connie P., Ms. P. identified Applicant as her assailant in an aggravated sexual assault. This case was unlike the others in time (it occurred in February whereas the others were committed May 14 and 15), and the manner and means were dissimilar. Police were made aware that Applicant was not responsible for this offense prior to his first trial in the burglary of a habitation of Mary B. *See Applicant's Exhibit 37-38.* This information was not shared with Applicant or his counsel. *See Applicant's Exhibit 40.* The case was dismissed after Applicant pled guilty to the remaining indictments. *See Applicant's Exhibit 39.*

15. On June 6, 2001, Applicant filed a pro se motion for DNA testing of the evidence collected in the complainant Mary B. cases. He was denied testing, appealed it, and lost. While attempting to seek relief from the Court of Criminal Appeals, the State agreed to testing on June 21, 2007. *See State's Exhibit B.*

16. The DNA results excluded Applicant as the perpetrator in the rape of Mary B., thus also exonerating him from breaking into her apartment to commit said rape. *See Applicant's Exhibit 35.*

17. The State pursued DNA testing of Sidney Goodyear. Results showed that Goodyear was in fact responsible for the rape of Mary B. *See Applicant's* Exhibit 35.

18. After linking Goodyear's DNA to the rape of Mary B., the State gathered the following information about Goodyear: Goodyear committed a string of sexual assaults throughout the country in the 1960s, 1970s, and 1980s and was wanted by many local jurisdictions and the Federal Bureau of Investigations; Goodyear's crimes in other jurisdictions were nearly identical to the manner and means used in the Dallas

4

RMR 000019

area crime spree; Goodyear was an initial suspect in the Dallas crime spree; Goodyear owned a car and handgun that were consistent with the car and handgun used by the perpetrator in the Dallas crime spree; Goodyear was identified as the perpetrator in the Dallas crime spree by at least one of the victims; and the evidence the State possessed at the time of Applicant's prosecution that implicated Goodyear was not disclosed to Applicant.

## GROUND ONE: ACTUAL INNOCENCE

### CONCLUSIONS OF LAW

19. The Court concludes that the DNA results excluding Applicant and implicating Goodyear in the assault of Mary B. were unknown to Applicant at the time of trial and that Applicant's failure to discover this information was not due to a lack of due diligence on his part.

20. The Court concludes that the DNA results are newly discovered evidence that create a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict.

21. The Court concludes that the State and Applicant agree that Goodyear, not Applicant, committed the assault at the Elaine Powers Figure Salon in Garland.

22. The Court concludes that the DNA results implicating Goodyear in the Dallas crime spree and excluding Applicant are supported by the following information: Goodyear committed nearly identical crimes throughout the country both before and after the Dallas area crime spree; the Dallas police have at all times believed that each of the crimes in Dallas were committed by the same individual; Goodyear owned the same type of car and handgun that was used in the Dallas crime spree; Goodyear was an initial suspect and identified by at least one of the victim's in the Dallas crime spree; the victims in Dallas, including, but not limited to, Wanda S., and Mary B., provided police similar descriptions of the perpetrator; and the assaults occurred within hours of each other.

23. The Court concludes that relief should be granted to Applicant on his claim of actual innocence.

24. The Court concludes that Applicant's ground for relief should be granted and the conviction set aside under authority of *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996), in that Applicant has shown by clear and convincing evidence that

5

RMR 000020

no reasonable juror would have convicted him in light of the newly discovered DNA evidence and the other evidence demonstrating Goodyear's guilt and Applicant's innocence.

## GROUND TWO: BRADY CLAIMS

### CONCLUSIONS OF LAW

25. The Court concludes that the State failed to disclose material exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1963), and that Applicant is entitled to relief because there is a reasonable probability that had the exculpatory evidence been disclosed the outcome of the proceedings against Applicant would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Thomas v. State*, 841 S.W. 2d 399, 404 (Tex. Crim. App. 1992).

26. The Court concludes that Sidney Goodyear was a suspect in the crime spree for which Applicant was investigated and prosecuted in Dallas. The Court also finds that Goodyear committed similar offenses throughout the country before and after the Dallas crime spree. The Court also finds that at least one of the victims in the Dallas crime spree identified Goodyear as the assailant in the Dallas crime spree.

27. The Court concludes that while the Dallas area police identified Goodyear as a suspect in the Dallas crimes, knew he committed similar crimes in Kansas City two weeks after the crime spree in Dallas, and knew that at least one victim in Dallas identified Goodyear, this information was not disclosed to Applicant or his attorney.

28. The Court also concludes that, prior to Applicant's first trial, the Dallas Police confirmed that John Parks, not Applicant, committed the assault of Connie P., one of the Dallas victims who initially identified Applicant as her assailant. The Court finds that this information confirming that Applicant was actually innocent of the assault on Connie P. and the information that the police knew that Connie P. misidentified Applicant as her assailant was not disclosed to Applicant or his attorney until after he was found guilty at two trials and after he pled guilty to nine additional charges related to the Dallas crime spree.

29. The Court concludes that the evidence identified in paragraphs 26-28 constitutes material, exculpatory evidence which should have been disclosed to Applicant. The Court finds that there is a reasonable probability that there would have been a different outcome at Applicant's trials and that he would not have pled guilty to the remaining charges had the favorable evidence been disclosed by the State.

6

RMR 000021

30. The Court concludes that the State and Applicant agree that Applicant is entitled to relief based on the State's failure to disclose the favorable evidence identified in paragraphs 26-28.

31. The Court agrees and concludes that relief should be granted and the conviction set aside under the authority of *Brady v. Maryland*, 373 U.S. 83 (1963).

## ORDERS OF THE COURT

The Court ORDERS the following:

1. Applicant's writ of habeas corpus is granted pursuant to Article 11.05 of the Texas Code of Criminal Procedure.

2. Applicant's conviction is vacated based on a showing that he is actually innocent of the crime pursuant to *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996).

3. Independently, Applicant's conviction is vacated based on the State's failure to disclose material, exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1967).

4. The CLERK is instructed to forward a copy of this ORDER to Applicant's counsel and to counsel for the State.

SIGNED this 5th day of _____, 2008

JUDGE LENA LEVARIO
204TH JUDICIAL DISTRICT COURT

7.

RMR 000022

MOTION TO DISMISS PROSECUTION.    Form 183

# The State of Texas,

No. F82-87015-TK

STEVEN CHARLES PHILLIPS

AGG. SEX ASLT.

IN THE 204TH JUDICIAL

DISTRICT _____ COURT

DALLAS COUNTY, TEXAS

JULY _____ Term, A.D.19 84

Now comes the District Attorney of Dallas County, Texas and asks the Court to dismiss the above entitled and numbered cause, for the following reasons, to-wit:

The named defendant in this case is presently serving a 40 year sentence in the Texas Department of Corrections for a series of sexual offenses.

Extensive investigation by this office and the Dallas Police Department has revealed that John L. Parks of Wichita, Kansas committed this offense. Mr. Parks is presently in custody in Kansas awaiting trial for multiple sexual offenses.

The complainant in this case has been fully advised of these facts and is agreeable to this dismissal.

WHEREFORE, PREMISES CONSIDERED, it is respectfully requested that this case be dismissed.

JUL 2 4 1984 Dismissed on Motion of Dist. Atty. ( _C Stoller_ Asst. Dist. Atty.)

FILED
JUL 23 1984
BILL LONG
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

FILED
JUL 24 1984
BILL LONG
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

Assistant District Attorney of
Dallas County, Texas

District Attorney of Dallas County, Texas

RMR 000023

*588- 93*

| STATE OF TEXAS | § | IN THE 204TH |
| V. | § | JUDICIAL DISTRICT COURT OF |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |
| NO. F82-86866-Q(B) | § | |

## MOTION TO DISMISS

**NOW COMES** the District Attorney of Dallas County, Texas, and asks this Court to dismiss the above-entitled and numbered cause for the following reasons, to-wit:

The Defendant stands charged with the offense of aggravated rape. The Defendant pled guilty to this offense and was sentenced to ten years in prison. Post-conviction DNA testing establishes that the Defendant did not commit this offense.

The Defendant filed a writ of habeas corpus alleging that he was actually innocent of the charged offense and that the State failed to turn over exculpatory evidence. The State agreed that the Defendant was entitled to relief. This Court issued findings of fact and a recommendation that relief be granted and transmitted them to the Texas Court of Criminal Appeals. On October 1, 2008, the Court of Criminal Appeals granted relief on actual innocence grounds, set aside the Defendant's conviction, and remanded the case to this Court.

**WHEREFORE, PREMISES CONSIDERED,** the State respectfully requests that this case be dismissed because Steven Charles Phillips has shown that he is actually innocent of the charged offense.

NOV 0 7 2008

Dismissed on Motion of Dist. Atty. ( _Michael_ Asst. Dist. Atty.)
_Ware_

_____
Michael Ware
Assistant District Attorney
Dallas County, Texas

_____
Craig Watkins
Criminal District Attorney
Dallas County, Texas

*588-91*

| STATE OF TEXAS | § | IN THE 204TH |
| | § | |
| V. | § | JUDICIAL DISTRICT COURT OF |
| | § | |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |
| | § | |
| NO. F82-79140-Q(B) | § | |
| | § | |
| | § | |

## MOTION TO DISMISS

**NOW COMES** the District Attorney of Dallas County, Texas, and asks this Court to dismiss the above-entitled and numbered cause for the following reasons, to-wit:

The Defendant stands charged with the offense of indecency with a child. The Defendant pled guilty to this offense and was sentenced to ten years in prison. Post-conviction DNA testing conducted in one of the Defendant's eleven related cases establishes that the Defendant did not commit this offense.

The Defendant filed a writ of habeas corpus alleging that he was actually innocent of the charged offense and that the State failed to turn over exculpatory evidence. The State agreed that the Defendant was entitled to relief. This Court issued findings of fact and a recommendation that relief be granted and transmitted them to the Texas Court of Criminal Appeals. On October 1, 2008, the Court of Criminal Appeals granted relief on actual innocence grounds, set aside the Defendant's conviction, and remanded the case to this Court.

**WHEREFORE, PREMISES CONSIDERED,** the State respectfully requests that this case be dismissed because Steven Charles Phillips has shown that he is actually innocent of the charged offense.

NOV 0 7 2008

Dismissed on Motion of Dist. Atty. ( *Michael Ware* ___ Asst. Dist. Atty. )

Michael Ware
Assistant District Attorney
Dallas County, Texas

Craig Watkins
Criminal District Attorney
Dallas County, Texas

MONICA DAVIS

RMR 000025

588- 92

| STATE OF TEXAS | § | IN THE 204TH |
|---|---|---|
| V. | § | JUDICIAL DISTRICT COURT OF |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |
| NO. F82-77162-Q(B) | § | |

## MOTION TO DISMISS

NOW COMES the District Attorney of Dallas County, Texas, and asks this Court to dismiss the above-entitled and numbered cause for the following reasons, to-wit:

The Defendant stands charged with the offense of aggravated sexual abuse. The Defendant was convicted of this offense in August of 1983 and was sentenced to thirty years in prison. Post-conviction DNA testing establishes that the Defendant did not commit this offense.

The Defendant filed a writ of habeas corpus alleging that he was actually innocent of the charged offense and that the State failed to turn over exculpatory evidence. The State agreed that the Defendant was entitled to relief. This Court issued findings of fact and a recommendation that relief be granted and transmitted them to the Texas Court of Criminal Appeals. On October 1, 2008, the Court of Criminal Appeals granted relief on actual innocence grounds, set aside the Defendant's conviction, and remanded the case to this Court.

**WHEREFORE, PREMISES CONSIDERED,** the State respectfully requests that this case be dismissed because Steven Charles Phillips has shown that he is actually innocent of the charged offense.

NOV 0 7 2008

Dismissed on Motion of Dist. Atty. ( _Michael Ware_ Asst. Dist. Atty.)

_Michael Ware_
Michael Ware
Assistant District Attorney
Dallas County, Texas

_Craig Watkins_
Craig Watkins
Criminal District Attorney
Dallas County, Texas

MONICA DAVIS

2008 NOV -7 AM 9:33

RMR 000026

588- 89

| STATE OF TEXAS | § | IN THE 204TH |
|---|---|---|
| V. | § | JUDICIAL DISTRICT COURT OF |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |
| NO. F82-77161-Q(B) | § | |

## MOTION TO DISMISS

NOW COMES the District Attorney of Dallas County, Texas, and asks this Court to dismiss the above-entitled and numbered cause for the following reasons, to-wit:

The Defendant stands charged with the offense of burglary of a habitation. The Defendant was convicted of this offense in August of 1982 and was sentenced to thirty years in prison. Post-conviction DNA testing establishes that the Defendant did not commit this offense.

The Defendant filed a writ of habeas corpus alleging that he was actually innocent of the charged offense and that the State failed to turn over exculpatory evidence. The State agreed that the Defendant was entitled to relief. This Court issued findings of fact and a recommendation that relief be granted and transmitted them to the Texas Court of Criminal Appeals. On October 1, 2008, the Court of Criminal Appeals granted relief on actual innocence grounds, set aside the Defendant's conviction, and remanded the case to this Court.

WHEREFORE, PREMISES CONSIDERED, the State respectfully requests that this case be dismissed because Steven Charles Phillips has shown that he is actually innocent of the charged offense.

NOV 0 7 2008

Dismissed on Motion of Dist. Atty. ( _Michael Ware_ Asst. Dist. Atty.)

_____
Michael Ware
Assistant District Attorney
Dallas County, Texas

_____
Craig Watkins
Criminal District Attorney
Dallas County, Texas

RMR 000027

588-90

| STATE OF TEXAS | § | IN THE 204ᵀᴴ |
|---|---|---|
| | § | |
| V. | § | JUDICIAL DISTRICT COURT OF |
| | § | |
| Steven Charles Phillips | § | DALLAS COUNTY, TEXAS |
| | § | |
| NO. F82-77700-Q(B) | § | |
| | § | |
| | § | |

## MOTION TO DISMISS

NOW COMES the District Attorney of Dallas County, Texas, and asks this Court to dismiss the above-entitled and numbered cause for the following reasons, to-wit:

The Defendant stands charged with the offense of aggravated sexual abuse. The Defendant pled guilty to this offense and was sentenced to forty years in prison. Post-conviction DNA testing conducted in one of the Defendant's eleven related cases establishes that the Defendant did not commit this offense.

The Defendant filed a writ of habeas corpus alleging that he was actually innocent of the charged offense and that the State failed to turn over exculpatory evidence. The State agreed that the Defendant was entitled to relief. This Court issued findings of fact and a recommendation that relief be granted and transmitted them to the Texas Court of Criminal Appeals. On October 1, 2008, the Court of Criminal Appeals granted relief on actual innocence grounds, set aside the Defendant's conviction, and remanded the case to this Court.

WHEREFORE, PREMISES CONSIDERED, the State respectfully requests that this case be dismissed because Steven Charles Phillips has shown that he is actually innocent of the charged offense.

NOV 0 7 2008

Dismissed on Motion of Dist. Atty. (_Michael Ware_ Asst. Dist. Atty.)

Michael Ware
Assistant District Attorney
Dallas County, Texas

Craig Watkins
Criminal District Attorney
Dallas County, Texas

MONICA DAVIS
2008 NOV -7 AM 10:33

RMR 000028



# Texas Department of Criminal Justice

Brad Livingston
Executive Director

November 13, 2009

Leonard Higgins
Comptroller's Judiciary Section
Texas Comptroller of Public Accounts
P.O. Box 13528
Austin, Tx. 78711-3528



RECEIVED

NOV 18 2009

SIA

RE: Phillips, Steven Charles

The files of this Agency have been reviewed on offender Steven Charles Phillips, ▇▇▇▇▇ pursuant to your request.

Offender Phillips was received into TDCJ custody on 2-22-1983 from Dallas County on eight-10-year sentences, two- 30-years, and a 40-year sentence, with sentences to run concurrent.

| Offenses | County | Cause Number | Sentence | Sentence Date | Date of Offense | Sentence Begin Date | Maximum Expiration |
|---|---|---|---|---|---|---|---|
| Aggravated Assault | Dallas | F82-82743-NKQ | 10-years | 6-11-1984 | 5-15-1982 | 6-4-1982 | 6-3-1992 |
| Aggravated Assault | Dallas | F82-79130-JKQ | 10-years | 6-11-1984 | 5-15-1982 | 6-4-1982 | 6-3-1992 |
| Aggravated Assault | Dallas | F82-76748-NKQ | 10-years | 6-11-1984 | 5-14-1982 | 6-4-1982 | 6-3-1992 |
| Aggravated Assault | Dallas | F82-86990-JKQ | 10-years | 6-11-1984 | 4-22-1982 | 6-4-1982 | 6-3-1992 |
| Burglary Habitation | Dallas | F82-87051-JKQ | 10-years | 6-11-1984 | 5-14-1982 | 6-4-1982 | 6-3-1992 |
| Burglary Habitation | Dallas | F82-77699-QKQ | 10-years | 6-11-1984 | 5-14-1982 | 6-10-1982 | 6-9-1992 |
| Aggravated Rape | Dallas | F82-86866-NKNKQ | 10-years | 6-11-1984 | 5-14-1982 | 6-4-1982 (10-27-08 per CCA mandate) | (6-3-1992) |
| Indecency W/Child | Dallas | F82-79140-JKQ | 10-years | 6-11-1984 | 5-15-1982 | 6-10-1982 (10-27-08 per CCA Mandate) | (6-9-1992) |
| Burglary Habitation | Dallas | F82-77161-NKM | 30-years | 8-27-1982 | 5-14-1982 | 6-10-1982 (10-27-08 per CCA Mandate) | |
| Aggravated Sexual Abuse W/DW | Dallas | F82-77162-NKMKQ | 30-years | 8-24-1983 | 5-14-1982 | 6-4-1983 (10-27-08 per CCA Mandate) | |
| Aggravated Sexual Abuse | Dallas | F82-77700-QKQ | 40-years | 6-11-1984 | 5-14-1982 | 6-4-1982 (10-27-08 per CCA Mandate) | |

Offender Phillips was released from TDCJ custody on mandatory supervision on 10-23-1996, and returned to TDCJ custody on 1-7-1998 with jail credit allowed from 5-14-1997 due to violation of mandatory supervision, and pursuant to revocation warrant of arrest issued 11-18-1997 by the Parole Division. Offender Phillips was again released from TDCJ custody on 12-28-2007 on mandatory supervision and remained on supervision until the Court of Appeals issued a mandate on cause numbers **F82-86866-NKNKQ, F82-79140-JKQ, F82-77161-NKM, F82-77162-NKMKQ, and F82-77700-QKQ, setting the cases aside on 10-27-2008.**

---

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

P.O. Box 99
Huntsville, Texas 77342-0099
www.tdcj.state.tx.us

RMR 000029

**Phillips, Steven Charles  TDCJ# 351441**
**Page 2**

Offender Phillips spent a total of 2-years, 1-month, and 10-days on mandatory supervision on the two 30-years, and the 40-year sentence in cause numbers F82-77161-NKM, F82-77162-NKMKQ, and F82-77700-QKQ. The sentences in the two 10-year sentences in cause numbers F82-86866-NKNKQ and F82-79140-JKQ expired on 6-3-1992, and 6-9-1992, while Offender Phillips was in TDCJ custody.

Offender Phillips served a total of 25-years and 3-days of calendar time on these sentences, and is not under TDCJ jurisdiction.

Sincerely,

Charley Valdez
PS-III
Offender Time Management
Classification and Records
(936) 437-6380


cc: file

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

P.O. Box 99
Huntsville, Texas 77342-0099
www.tdcj.state.tx.us

RMR 000030



**STATE OF ARKANSAS**
**Department of Finance**
**and Administration**

**CHILD SUPPORT ENFORCEMENT**
Post Office Box 637
Berryville, Arkansas 72616
Phone: (870) 423-2979
Toll Free (877) 900-1514
Fax: (870) 423-4635
http://www.state.ar.us/dfa

November 20, 2009

RE:     Cheri Macumber vs. Steven Phillips
          Case #  ████████  &  ████████

To Whom It May Concern:

This is to advise that no payments for child support have been processed thru the Office of Child Support from Steven Phillips in regard to the above referenced child support cases.

Sincerely,

Denise Hutchison
Child Support Supervisor I

RMR 000031

ARKANSAS CHILD SUPPORT TRACKING SYSTEM
PAYMENT HISTORY REPORT
FROM : 07/21/1979 TO : 11/23/2009

Case ID :
Payor ID:                     Name:      PHILLIPS C STEVEN            Docket Number:
Payee ID:                     Name:      MACUMBER S CHERJ
NO of Other Cases Payor is Present: 1

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

11/23/2009

RMR 000032

## Receipt Type

| Code | Description |
|------|-------------|
| 00 | Regular collection |
| 01 | Prior Collection |
| 02 | IRS Collection |
| 03 | State Revenue Collection |
| 04 | ESD Collection |
| 05 | Advance (Undistributed Excess) |
| 11 | Increase Regular Collections |
| 12 | Increase Advance |
| 13 | Increase ESD |
| 14 | Increase IRS |
| 15 | Increase State Revenues |
| 16 | Increase Prior Collections |
| 21 | Decrease Regular Collections |
| 22 | Decrease Advance |
| 23 | Decrease ESD |
| 24 | Decrease IRS |
| 25 | Decrease State Revenue |
| 26 | Decrease Prior Collections |

## RCT Status LookUp

| Code | Description |
|------|-------------|
| H | Hold |
| I | Identified |
| M | Manual Distribution |
| O | Out Of Balance |
| R | Research |
| S | SHEF Special Handling |
| X | Refund |

## Indicator LookUp

| Code | Description |
|------|-------------|
| AAC | Applied To Another Case (s) |
| HOL | On Hold |
| RNN | Refunded To NCP |
| IUN | Identified But Undistributed |
| RSC | Research , Shef , Out Of Balance |

## DISB. Hold LookUp

| Code | Description |
|------|-------------|
| A | Address Hold |
| D | Daily Disbursement Hold |
| I | 6 Month Hold |
| F | Future Hold |
| L | Less Than Zero Dollar Hold |
| W | Welfare Distribution Hold |
| P | Deceased Hold |
| E | Foster Care Hold |

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

11/23/2009

ARKANSAS CHILD SUPPORT TRACKING SYSTEM
PAYMENT HISTORY REPORT
FROM : 01/01/1976 TO : 11/23/2009

| | | |
|---|---|---|
| Case ID : ▮ | | Docket Number: ▮ |
| Payor ID: ▮ | Name: PHILLIPS C STEVEN | |
| Payee ID: ▮ | Name: MACUMBER S CHERI | |
| NO of Other Cases Payor is Present: 1 | | |

Collection before 08/01/1997

| Receipt Number | Receipt Date | Receipt Type | Receipt Amount | Check NO |
|---|---|---|---|---|
| 03/14/1997 0025 0077 | 03/12/1997 | 00 | 110.00 | ▮ |
| 04/18/1997 0003 0016 | 04/16/1997 | 00 | 110.00 | |

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

RMR 000034

## Receipt Type

| Code | Description |
|------|-------------|
| 00 | Regular collection |
| 01 | Prior Collection |
| 02 | IRS Collection |
| 03 | State Revenue Collection |
| 04 | ESD Collection |
| 05 | Advance (Undistributed Excess) |
| 11 | Increase Regular Collections |
| 12 | Increase Advance |
| 13 | Increase ESD |
| 14 | Increase IRS |
| 15 | Increase State Revenues |
| 16 | Increase Prior Collections |
| 21 | Decrease Regular Collections |
| 22 | Decrease Advance |
| 23 | Decrease ESD |
| 24 | Decrease IRS |
| 25 | Decrease State Revenue |
| 26 | Decrease Prior Collections |

## RCT Status LookUp

| Code | Description |
|------|-------------|
| H | Hold |
| I | Identified |
| M | Manual Distribution |
| O | Out Of Balance |
| R | Research |
| S | SHEF Special Handling |
| X | Refund |

## Indicator LookUp

| Code | Description |
|------|-------------|
| AAC | Applied To Another Case (s) |
| HOL | On Hold |
| RNN | Refunded To NCP |
| IUN | Identified But Undistributed |
| RSC | Research , Shef , Out Of Balance |

## DISB. Hold LookUp

| Code | Description |
|------|-------------|
| A | Address Hold |
| D | Daily Disbursement Hold |
| I | 6 Month Hold |
| F | Future Hold |
| L | Less Than Zero Dollar Hold |
| W | Welfare Distribution Hold |
| P | Deceased Hold |
| E | Foster Care Hold |

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

11/23/2009



November 24, 2009

COPY

Mr. Steven C. Phillips

████████████████████████

Dear Mr. Phillips:

The Comptroller's Judiciary Section is in receipt of your claim and supporting documentation requesting wrongful imprisonment compensation. The claim has been approved for the following amount and pursuant to Section 103.151(a), Texas Civil Practice and Remedies Code, the payment will be mailed within 30 days of the date of this letter.

Lump-sum payment: $1,262,500.00

*Pursuant to Section 103.001(b), Texas Civil Practice and Remedies Code, the claim was reduced because of concurrent sentences served from June 4, 1982 through June 9, 1992. The sentences served under cause numbers F82-82743-Q, F82-79130-Q, F82-76748-Q, F82-86990-Q, F82-87051-Q and F82-77699-Q ran concurrently with cause numbers F82-86866-Q, F82-79140-Q, F82-77161-M, F82-77162-Q and F82-77700-Q. (See attachment) The court order submitted by the claimant did not grant relief for the sentences served under cause numbers F82-82743-Q, F82-79130-Q, F82-76748-Q, F82-86990-Q, F82-87051-Q and F82-77699-Q.*

In addition, any compensation for child support payments determined by the Comptroller to be owed under Section 103.052(a)(2), Texas Civil Practice and Remedies Code, will be paid within 30 days of the date of this letter. In accordance with Section 103.052(c), Texas Civil Practice and Remedies Code, any compensation for child support payments will be paid on the claimant's behalf in a lump-sum payment to the state disbursement unit, as defined by Section 101.0302, Texas Family Code, for distribution to the obligee under the child support order. The Comptroller will notify the claimant of the amount of any payment made on the claimant's behalf to the state disbursement unit.

If you have any questions or need additional information, please contact the Comptroller's Judiciary Section by e-mail at leonard.higgins@cpa.state.tx.us or by phone at 1-800-531-5441, extension 6-6100.

Sincerely,

Leonard Higgins
Comptroller's Judiciary Section

Attachment

RMR 000036



December 23, 2009

COPY

Mr. Steven C. Phillips

██████████████████

Dear Mr. Phillips:

Enclosed is your wrongful imprisonment compensation lump-sum payment in the amount of $1,262,500.00. Pursuant to Section 103.001(b), Texas Civil Practice and Remedies Code, the claim was reduced because of concurrent sentences served from June 4, 1982 through June 9, 1992. The sentences served under cause numbers F82-82743-Q, F82-79130-Q, F82-86748-Q, F82-86990-Q, F82-87051-Q and F82-77699-Q ran concurrently with cause numbers F82-86866-Q, F82-79140-Q, F82-77161-M, F82-77162-Q and F82-77700-Q.

The Comptroller's Judiciary Section received additional court orders submitted on your behalf by Mr. Randall E. Turner on December 17, 2009. The additional orders were received after the 10 day time period prescribed for applications to cure under Section 103.051(d), Texas Civil Practice and Remedies Code. The Comptroller will, however, consider the additional orders if a new compensation claim is submitted for the time during which the six concurrent sentences were served.

In addition, it appears that the claimant may be entitled to compensation for child support payments under Section 103.052(a)(2), Texas Civil Practice and Remedies Code. However, based on the records submitted, the Comptroller is unable to determine the appropriate amount of compensation that may be owed under Section 103.052(a)(2). If supplemental information is submitted which enables a determination of the appropriate amount owed, then payments will be made in accordance with Section 103.052(c), Texas Civil Practice and Remedies Code. Such payments will be paid on the claimant's behalf in a lump-sum payment to the state disbursement unit, as defined by Section 101.0302, Texas Family Code, for distribution to the obligee under the child support order. The Comptroller will notify the claimant of the amount of any payment made on the claimant's behalf to the state disbursement unit.

If you have any questions or need additional information, please contact the Comptroller's Judiciary Section by e-mail at leonard.higgins@cpa.state.tx.us or by phone at 1-800-531-5441, extension 6-6100.

Sincerely,

Leonard Higgins
Comptroller's Judiciary Section

RMR 000037

# REQUEST FOR WRONGFUL IMPRISONMENT COMPENSATION

## COMPTROLLER USE ONLY

| AGY | COBJ | TC | FUND | AY | PCA | APPROVAL | DOCUMENT NUMBER | DOCUMENT AMOUNT |
|-----|------|-----|------|-----|-----|----------|-----------------|-----------------|
|     |      |     |      |     |     |          |                 |                 |

RECEIVED
JAN 1 2 2010
BIA

| Claimant name and address | Social Security Number | TDCJ Number |
|---|---|---|
| STEVEN C. PHILLIPS | | |

Mail completed form and documentation to:
**COMPTROLLER'S JUDICIARY SECTION**
P.O. Box 13528
Austin, TX 78711-3528
Call 1-800-531-5441, ext. 6-5985 or (512) 936-5985

### REQUIRED DOCUMENTATION

| | | |
|---|---|---|
| A verified copy of pardon / court order showing actual innocence and justifying application. | Enclosed | ☑ |
| A written statement from Texas Department of Criminal Justice verifying length of incarceration in a State prison. | Enclosed | ☑ |
| A written statement verifying the length of incarceration from any Texas County or Municipality where incarcerated in relation to the charges for which claimant is eligible to make the claim. | Enclosed | ☐ |
| If applicable, a written statement from Texas Department of Criminal Justice verifying length of time spent on parole. | Enclosed | ☐ |
| If applicable, a written statement from the Texas Department of Public Safety verifying registration as a sex offender and length of registration. | Enclosed | ☐ |
| A certified copy each child support order , if applicable, under which child support payments became due during the time the claimant served in prison and copies of the official child support payment records described by Section 234.009, Family Code, for that period. | Enclosed | ☐ |
| For proof of birth date provide a copy of birth certificate, or state driver's license, or state ID, or a notarized statement verifying month, day and year of birth. | Enclosed | ☑ |

**THIS SECTION TO BE COMPLETED BY CLAIMANT**

Total Amount of Claim Supported by the Attached Documentation: $ 1,600,000 00

### CLAIMANT'S CERTIFICATION

I, Steven C. Phillips , do hereby certify that the amount requested is due and payable pursuant to Chapter 103 of the Texas Civil Practice and Remedies Code and I will immediately notify the Comptroller's Judiciary Section in writing of any changes or conditions which will disqualify this payment.

| sign here ▶ | Claimant Signature  *Steven C. Phillips* | Date  01 02 10 |
|---|---|---|

### IF REPRESENTED, CLAIMANT'S LEGAL COUNSEL

| Attorney of Record  N/A | Contact Phone Number (Area code and phone number) |
|---|---|
| Address/City/State/zip code | |

### COMPTROLLER APPROVAL

I approve this request for payment and to the best of my knowledge this request for payment is true and correct. This payment complies with Chapter 103 of the Texas Civil Practice and Remedies Code.

| | Audited by: |
|---|---|

| sign here ▶ | Approved by: | Date  2/26/10 |
|---|---|---|

RMR 000038

Steven C. Phillips

████████████████████

Leonard Higgins                                    01-07-10
Comptrollers Judiciary Section
Texas State Comptroller of Public Accts.
PO box 13528
Austin, Texas 78711-3528

Re: your 11-24-09 letter

Dear Mr. Higgins,

Please find the enclosed documents noted in your letter: Court orders
granting relief for sentences served under cause numbers F82-82743-Q, F-
82-79130-Q, F82-76748-Q, F82-86990-Q, F82-87051-Q and F82-77699-Q.

I hope these orders will enable you to proceed with my claim.

Thank You,

*Steven C. Phillips*

Steven C. Phillips

Attachment



**TEXAS**
DEPARTMENT OF PUBLIC SAFETY
DRIVER LICENSE

CLASS: C    DL:
DOB:    HT: 5-10
EXPIRES:    EYES: GRN
REST: A    SEX: M
END:

PHILLIPS, STEVEN CHARLES

RMR 000040



# Texas Department of Criminal Justice

Brad Livingston
Executive Director

RECEIVED

NOV 18 2009

BIA

November 13, 2009

Leonard Higgins
Comptroller's Judiciary Section
Texas Comptroller of Public Accounts
P.O. Box 13528
Austin, Tx. 78711-3528

RE: Phillips, Steven Charles ████████

The files of this Agency have been reviewed on offender Steven Charles Phillips, ████████ pursuant to your request.

Offender Phillips was received into TDCJ custody on 2-22-1983 from Dallas County on eight-10-year sentences, two- 30-years, and a 40-year sentence, with sentences to run concurrent.

| Offenses | County | Cause Number | Sentence | Sentence Date | Date of Offense | Sentence Begin Date | Maximum Expiration |
|---|---|---|---|---|---|---|---|
| Aggravated Assault | Dallas | F82-82743-NKQ | 10-years | 6-11-1984 | 5-15-1982 | 6-4-1982 | 6-3-1992 |
| Aggravated Assault | Dallas | F82-79130-JKQ | 10-years | 6-11-1984 | 5-15-1982 | 6-4-1982 | 6-3-1992 |
| Aggravated Assault | Dallas | F82-76748-NKQ | 10-years | 6-11-1984 | 5-14-1982 | 6-4-1982 | 6-3-1992 |
| Aggravated Assault | Dallas | F82-86990-JKQ | 10-years | 6-11-1984 | 4-22-1982 | 6-4-1982 | 6-3-1992 |
| Burglary Habitation | Dallas | F82-87051-JKQ | 10-years | 6-11-1984 | 5-14-1982 | 6-4-1982 | 6-3-1992 |
| Burglary Habitation | Dallas | F82-77699-QKQ | 10-years | 6-11-1984 | 5-14-1982 | 6-10-1982 | 6-9-1992 |
| Aggravated Rape | Dallas | F82-86866-NKNKQ | 10-years | 6-11-1984 | 5-14-1982 | 6-4-1982 (10-27-08 per CCA mandate) | (6-3-1992) |
| Indecency W/Child | Dallas | F82-79140-JKQ | 10-years | 6-11-1984 | 5-15-1982 | 6-10-1982 (10-27-08 per CCA Mandate) | (6-9-1992) |
| Burglary Habitation | Dallas | F82-77161-NKM | 30-years | 8-27-1982 | 5-14-1982 | 6-10-1982 (10-27-08 per CCA Mandate) | |
| Aggravated Sexual Abuse W/DW | Dallas | F82-77162-NKMKQ | 30-years | 8-24-1983 | 5-14-1982 | 6-4-1983 (10-27-08 per CCA Mandate) | |
| Aggravated Sexual Abuse | Dallas | F82-77700-QKQ | 40-years | 6-11-1984 | 5-14-1982 | 6-4-1982 (10-27-08 per CCA Mandate) | |

Offender Phillips was released from TDCJ custody on mandatory supervision on 10-23-1996, and returned to TDCJ custody on 1-7-1998 with jail credit allowed from 5-14-1997 due to violation of mandatory supervision, and pursuant to revocation warrant of arrest issued 11-18-1997 by the Parole Division. Offender Phillips was again released from TDCJ custody on 12-28-2007 on mandatory supervision and remained on supervision until the Court of Appeals issued a mandate on cause numbers **F82-86866-NKNKQ, F82-79140-JKQ, F82-77161-NKM, F82-77162-NKMKQ, and F82-77700-QKQ, setting the cases aside on 10-27-2008.**

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

RMR 000041

Offender Phillips spent a total of 1-years, 4-months, and 20-days on mandatory supervision on the two 30-years, and the 40-year sentence in cause numbers F82-77161-NKM, F82-77162-NKMKQ, and F82-77700-QKQ. The sentences in the two 10-year sentences in cause numbers F82-86866-NKNKQ and F82-79140-JKQ expired on 6-3-1992, and 6-9-1992, while Offender Phillips was in TDCJ custody.

Offender Phillips served a total of 25-years and 3-days of calendar time on these sentences, and is not under TDCJ jurisdiction.

Sincerely,

Charley Valdez
PS-III
Offender Time Management
Classification and Records
(936) 437-6380

cc: file

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

P.O. Box 99
Huntsville, Texas 77342-0099
www.tdcj.state.tx.us

RMR 000042

RECEIVED
OCT 1 4 2009
BIA



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOS. AP-76,010, AP-76,011, AP-76,012, AP-76,013 & AP-76,014

## EX PARTE STEVEN CHARLES PHILLIPS, Applicant

### ON APPLICATIONS FOR WRITS OF HABEAS CORPUS CAUSE NOS. F82-77700-Q; F82-77162-Q; F82-79140-Q; F82-86866-Q IN THE 204TH DISTRICT COURT FROM DALLAS COUNTY AND CAUSE NO. F82-77161-M IN THE 194TH DISTRICT COURT FROM DALLAS COUNTY

*Per curiam.*

### O P I N I O N

Pursuant to the provisions of Article 11.07 of the Texas Code of Criminal Procedure, the clerk of the trial court transmitted to this Court these applications for writs of habeas corpus. *Ex parte Young*, 418 S.W.2d 824, 826 (Tex. Crim. App. 1967). Applicant was convicted of two aggravated sexual abuse causes, sentenced to forty and thirty years' imprisonment, indecency with a child, sentenced to ten years' imprisonment, burglary of a habitation, sentenced to thirty years' imprisonment, and aggravated rape, sentenced to ten years' imprisonment. The Fifth Court of Appeals affirmed his convictions for one of the aggravated sexual abuse cases and the burglary of

OCT 0 6 2009

RMR 000043

a habitation. *Phillips v. State*, No. 05-83-1058-CR (Tex. App.–Dallas, delivered October 26, 1984) and *Phillips v. State*, No. 05-82-01260-CR (Tex. App.–Dallas, delivered January 4, 1984). Applicant pleaded guilty to the other causes and no appeal was taken from those.

Applicant contends that he has newly discovered evidence that he is actually innocent of these offenses. The trial court has determined that no rational jury would have convicted Applicant in light of the new evidence, which was previously unavailable to Applicant. The evidence, obtained pursuant to post-conviction DNA testing and investigation, indicates that it was another individual, and not Applicant, who committed at least one of these offenses. Applicant is entitled to relief. *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996).

Relief is granted. The judgments in Cause Nos. F82-77700-Q; F82-77162-Q; F82-79140-Q and F82-86866-Q in the 204th District Court of Dallas County and Cause No. F82-77161-M in the 194th District Court of Dallas County are set aside, and Applicant is remanded to the custody of the Sheriff of Dallas County to answer the charges against him.

Copies of this opinion shall be sent to the Texas Department of Criminal Justice–Correctional Institutions Division and Parole Division.

Delivered: October 1, 2008
Do Not Publish

RMR 000044

W82-77162-Q(B), W82-77699-Q(B), W82-77700-Q(B), W82-79130-Q(B),
W82-79140-Q(B), W82-82743-Q(B), W82-86748-Q(B), W82-86866-Q(B),
W82-86990-Q(B), and W82-87051-Q(B), W 82-77161-M(B)

| | | |
|---|---|---|
| EX PARTE | ) | IN THE 204th CRIMINAL |
| | ) | |
| | ) | DISTRICT COURT |
| | ) | |
| STEVEN CHARLES PHILLIPS | ) | DALLAS COUNTY, TEXAS |

## MOTION CLARIFYING JURISDICTION AND PROCEDURAL REMEDY FOR APPLICANT'S WRITS OF HABEAS CORPUS

Applicant Steve Charles Phillips files this motion amending his Memorandum of Law in Support of his Application for Writ of Habeas Corpus.

Mr. Phillips has ten applications for habeas corpus pending in this Court. These applications were filed on June 20, 2008 and challenge convictions associated with the following case numbers: F82-77162 (aggravated sexual abuse), F82-77700 (aggravated sexual abuse), F82-79140 (indecency with a child), F82-86866 (aggravated rape), F82-77699 (burglary of a habitation), F82-79130 (aggravated assault), F82-82743 (aggravated assault), F82-86748 (aggravated assault), F82-86990 (aggravated assault), and F82-87051 (burglary of a habitation). Each of these ten writs was filed pursuant to Article 11.07 of the Texas Code of Criminal Procedure. On July 3, 2008, Mr. Phillips filed an amendment pursuing habeas relief pursuant to Article 11.05 of the Texas Code of Criminal Procedure, Article V, Section 8 and Article I, Section 12 of the Texas Constitution.

Mr. Phillips files this motion to clarify the jurisdictional grounds and procedural remedies for each of his applications. For his applications for writ of habeas corpus for the following convictions, Mr. Phillips asserts that Article 11.07 is the exclusive remedy: F82-77162, F82-

416

RMR 000045

77700, F82-86-866, and F82-79140.[1] However, for the six remaining applications for writs of habeas corpus pending in this Court (convictions F82-77699, F82-79130, F82-82743, F82-86748, F82-86990, and F82-87051) Mr. Phillips only seeks habeas relief pursuant to Article 11.05 of the Texas Code of Criminal Procedure, Article V, Section 8 of the Texas Constitution, and Article I, Section 12 of the Texas Constitution.

To the extent that Mr. Phillips has previously asserted that Article 11.07 is the proper remedy for the six writs associated with the following convictions: F82-77699, F82-79130, F82-82743, F82-86748, F82-86990, and F82-87051, he seeks to amend the applications to rely solely on Article 11.05 of the Texas Code of Criminal Procedure, Article V, Section 8 of the Texas Constitution, and Article I, Section 12 of the Texas Constitution.

Respectfully submitted this _9_ day of July, 2008

Robert N. Udashen, P.C.
Bar Card No. 20369600
Sorrels, Udashen & Anton
2301 Cedar Springs Road, Suite 400
Dallas, Texas 75201
(214) 468-8100
Fax (214) 468-8104

Jason Kreag
Barry Scheck
Innocence Project, Inc.
100 Fifth Avenue, 3rd Floor
New York, NY 10011
(212) 364-5340
Fax (212) 364-5341

**Attorneys for Mr. Phillips**

---

[1]Mr. Phillips also has an application for writ of habeas corpus pending in the 194th Judicial District Court concerning his conviction in case number F82-77161. Mr. Phillips continues to seek relief from that conviction under art. 11.07.

RMR 000046

## CERTIFICATE OF SERVICE

On this __9__ day of July, 2008, a true and correct copy of Applicant Steven Charles Phillips' Motion Clarifying Jurisdiction and Procedural Remedy for Applicant's Writs of Habeas Corpus was delivered to the District Attorney of Dallas County, Texas.

_____
Robert N. Udashen, P.C.

RMR 000047

## WRIT NO. WX0890028-Q[1]

| EX PARTE | § | IN THE 204th JUDICIAL |
|---|---|---|
| | § | DISTRICT COURT |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |

### ORDER GRANTING RELIEF

The Court, having considered the allegations contained in Applicant's Application for Writ of Habeas Corpus[2], Applicant's Memorandum of Law in Support of His Application for Writ of Habeas Corpus, the State's Response, and official court records in the above numbered and entitled cause, makes the following findings of fact and conclusions of law:

### HISTORY OF THE CASE

On June 11, 1984, Applicant pled guilty to the offense of aggravated assault with a deadly weapon. Pursuant to a plea bargain, Applicant was sentenced to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division. Applicant did not appeal this conviction. Applicant discharged this sentence on June 3, 1992. *See State's Exhibit A.*

### ISSUES RAISED IN APPLICATION

In the instant writ application, Applicant contends that: (1) newly discovered evidence

---

1 The original case number for this writ was W82-86990-Q(B). The writ was refiled under the above case number, WX0890028-Q, by order of this Court, at the request of the parties. The writ seeks relief pursuant to Article I, Section 12 and Article 5, Section 8 of the Texas Constitution and Article 11.05 of the Texas Code of Criminal Procedure.
2 The Court has also considered each of Applicant's ten additional applications for writs of habeas

1

RMR 000048

establishes that he is actually innocent of the offense of which he was convicted; and (2) the State failed to disclose statements material to guilt in violation of his due process rights.

## JURISDICTION

Jurisdiction is proper under Article 11.05. Applicant is not confined on this conviction as he discharged his sentence approximately sixteen years ago, and he is not facing other collateral consequences.

## SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

FINDINGS OF FACT

The Court makes the following findings of fact.

1. On April 22, 1982, at approximately 8:10 p.m., a man in a hooded, gray sweatshirt, who was carrying a handgun and holding a piece of clothe over his face, walked into the laundry factilty at an apartment complex and sexually assaulted Lani B. *See Applicant's Exhibit 25.* (At some point after the assault, but before Applicant's trials, Lani B. changed her name to Lani T.)

2. The assault was one of a string of similar sexual assaults that occurred in the Dallas area in the spring of 1982 that were committed by a single individual.

3. Applicant was indicted for eleven offenses in the Dallas area crime spree. Ten of these offenses occurred over a two-day period on May 14 and 15, 1982, and one occurred on April 22, 1982. The assault on April 22, 1982, is the subject of this writ. Applicant was also indicted for a sexual assault that occurred in February of 1982. The twelve cases were considered related by police because the offenses had similar manner and means, including but not limited to a man carrying a handgun wearing a gray hooded sweatshirt, covering part of his face, assaulting individuals, and driving a similar maroon car.

---

corpus. Collectively the writs related to a single crime spree in Dallas in the Spring of 1982.

2

RMR 000049

4. Applicant was identified by at least one victim as the perpetrator in each of the twelve indicted cases. Lani B. identified Applicant in a photo line-up approximately one month after her assault and in a live line-up over six weeks after her assault.

5. Prior to pleading guilty to the aggravated assault that is the subject of this writ, Applicant faced two trials for the assault of Mary B, another victim in the Dallas crime spree. Applicant was found guilty of burglary of a habitation in the first trial and aggravated sexual abuse in the second trial, and he was sentenced to concurrent thirty year terms for the assault of Mary B.

6. In addition to Mary B, several victims in the Dallas crime spree testified during Applicant's trials and identified him as the man responsible for the Dallas crime spree. Michelle H., one of the victims from May 14, 1982, identified Applicant and testified at both of his trials for the assault of Mary B. In addition, Lani B., testified at Applicant's second trial. Lani B. testified that Applicant had a bad reputation and improperly stated on cross-examination that she was not a complaining witness in this case, when in fact, she was. (RR1: 205-207). Other victims from the Dallas crime spree, Susan W. and Shannon K., also testified at Applicant's second trial. The testimony from the victims of other incidents in the Dallas crime spree was based on what we now know was their inaccurate belief that Applicant was the perpetrator of the Dallas crime spree.

7. Applicant testified at the first trial, but he did not testify in the guilt phase of the second trial. At the first trial, Applicant presented a defense of misidentification and presented an alibi supported by his own testimony and the testimony of his wife, his sister-in-law, his brother-in-law, and his uncle.

8. On June 11, 1984, Applicant pled guilty to this offense – aggravated assault with a deadly weapon related to the assault of Lani B. – as well as eight other charges in the Dallas crime spree, after being convicted for burglary of a habitation and the aggravated sexual abuse of Mary B.

9. The various Dallas area police departments where each of the incidents occurred communicated with one another regarding suspects in these cases. Further, there was sharing of information with Kansas City police because they had experienced a string of similar offenses two weeks after the crime spree in Dallas.

10. Following the crimes in the Kansas City area which occurred on May 27, 1982, Kansas City police determined that Sidney Goodyear was responsible for the string of assaults in that jurisdiction. Goodyear's criminal history showed manner and means

3

RMR 000050

similar to the Dallas area offenses. *See Applicant's Exhibits 1-34.*

11. Goodyear was identified by one Dallas victim, Wanda S., as the man who assaulted her. This information was not shared with Phillips or his counsel. *See Applicant's Exhibit 40.* She later identified Applicant as the man who assaulted her.

12. In the case of victim Connie P., Ms. P. identified Applicant as her assailant in an aggravated sexual assault. This case was unlike the others in time (it occurred in February whereas the others were committed May 14 and 15), and the manner and means were dissimilar. Police were made aware that Applicant was not responsible for this offense prior to his first trial in the burglary of a habitation of Mary B. *See Applicant's Exhibit 37-38.* This information was not shared with Applicant or his counsel. *See Applicant's Exhibit 40.* The case was dismissed after Applicant pled guilty to the remaining indictments. *See Applicant's Exhibit 39.*

13. On June 6, 2001, Applicant filed a pro se motion for DNA testing of the evidence collected in the complainant Mary B. cases. He was denied testing, appealed it, and lost. While attempting to seek relief from the Court of Criminal Appeals, the State agreed to testing on June 21, 2007. *See State's Exhibit B.*

14. The DNA results excluded Applicant as the perpetrator in the rape of Mary B., thus also exonerating him from breaking into her apartment to commit said rape. *See Applicant's Exhibit 35.*

15. The State pursued DNA testing of Sidney Goodyear. Results showed that Goodyear was in fact responsible for the rape of Mary B. *See Applicant's Exhibit 35.*

16. After linking Goodyear's DNA to the rape of Mary B., the State gathered the following information about Goodyear: Goodyear committed a string of sexual assaults throughout the country in the 1960s, 1970s, and 1980s and was wanted by many local jurisdictions and the Federal Bureau of Investigations; Goodyear's crimes in other jurisdictions were nearly identical to the manner and means used in the Dallas area crime spree; Goodyear was an initial suspect in the Dallas crime spree; Goodyear owned a car and handgun that were consistent with the car and handgun used by the perpetrator in the Dallas crime spree; Goodyear was identified as the perpetrator in the Dallas crime spree by at least one of the victims; and the evidence the State possessed at the time of Applicant's prosecution that implicated Goodyear was not disclosed to Applicant.

4

RMR 000051

GROUND ONE: ACTUAL INNOCENCE

CONCLUSIONS OF LAW

17. The Court concludes that the DNA results excluding Applicant and implicating Goodyear in the assault of Mary B. were unknown to Applicant at the time of trial and that Applicant's failure to discover this information was not due to a lack of due diligence on his part.

18. The Court concludes that the DNA results are newly discovered evidence that create a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict.

19. The Court concludes that the State and Applicant agree that Goodyear, not Applicant, committed the assault of Lani B.

20. The Court concludes that the DNA results implicating Goodyear in the Dallas crime spree and excluding Applicant are supported by the following information: Goodyear committed nearly identical crimes throughout the country both before and after the Dallas area crime spree; the Dallas police have at all times believed that each of the crimes in Dallas were committed by the same individual; Goodyear owned the same type of car and handgun that was used in the Dallas crime spree; Goodyear was an initial suspect and identified by at least one of the victim's in the Dallas crime spree; the victims in Dallas, including, but not limited to, Lani B. and Mary B., provided police similar descriptions of the perpetrator; and the assaults occurred within hours of each other.

21. The Court concludes that relief should be granted to Applicant on his claim of actual innocence.

22. The Court concludes that Applicant's ground for relief should be granted and the conviction set aside under authority of *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996), in that Applicant has shown by clear and convincing evidence that no reasonable juror would have convicted him in light of the newly discovered DNA evidence and the other evidence demonstrating Goodyear's guilt and Applicant's innocence.

RMR 000052

## GROUND TWO: BRADY CLAIMS

### CONCLUSIONS OF LAW

23. The Court concludes that the State failed to disclose material exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1963), and that Applicant is entitled to relief because there is a reasonable probability that had the exculpatory evidence been disclosed the outcome of the proceedings against Applicant would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Thomas v. State*, 841 S.W. 2d 399, 404 (Tex. Crim. App. 1992).

24. The Court concludes that Sidney Goodyear was a suspect in the crime spree for which Applicant was investigated and prosecuted in Dallas. The Court also finds that Goodyear committed similar offenses throughout the country before and after the Dallas crime spree. The Court also finds that at least one of the victims in the Dallas crime spree identified Goodyear as the assailant in the Dallas crime spree.

25. The Court concludes that while the Dallas area police identified Goodyear as a suspect in the Dallas crimes, knew he committed similar crimes in Kansas City two weeks after the crime spree in Dallas, and knew that at least one victim in Dallas identified Goodyear, this information was not disclosed to Applicant or his attorney.

26. The Court also concludes that, prior to Applicant's first trial, the Dallas Police confirmed that John Parks, not Applicant, committed the assault of Connie P., one of the Dallas victims who initially identified Applicant as her assailant. The Court finds that this information confirming that Applicant was actually innocent of the assault on Connie P. and the information that the police knew that Connie P. misidentified Applicant as her assailant was not disclosed to Applicant or his attorney until after he was found guilty at two trials and after he pled guilty to nine additional charges related to the Dallas crime spree.

27. The Court concludes that the evidence identified in paragraphs 24-26 constitutes material, exculpatory evidence which should have been disclosed to Applicant. The Court finds that there is a reasonable probability that there would have been a different outcome at Applicant's trials and that he would not have pled guilty to the remaining charges had the favorable evidence been disclosed by the State.

28. The Court concludes that the State and Applicant agree that Applicant is entitled to relief based on the State's failure to disclose the favorable evidence identified in paragraphs 24-26.

6

RMR 000053

29. The Court agrees and concludes that relief should be granted and the conviction set aside under the authority of *Brady v. Maryland*, 373 U.S. 83 (1963).

## ORDERS OF THE COURT

The Court ORDERS the following:

1. Applicant's writ of habeas corpus is granted pursuant to Article 11.05 of the Texas Code of Criminal Procedure.

2. Applicant's conviction is vacated based on a showing that he is actually innocent of the crime pursuant to *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996).

3. Independently, Applicant's conviction is vacated based on the State's failure to disclose material, exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1967).

4. The CLERK is instructed to forward a copy of this ORDER to Applicant's counsel and to counsel for the State.

SIGNED this 5th day of _Aug_____, 2008

JUDGE LENA LEVARIO
204TH JUDICIAL DISTRICT COURT

7

RMR 000054

## WRIT NO. WX0890024-Q[1]

| EX PARTE | § | IN THE 204th JUDICIAL |
|---|---|---|
| | § | DISTRICT COURT |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |

### ORDER GRANTING RELIEF

The Court, having considered the allegations contained in Applicant's Application for Writ of Habeas Corpus[2], Applicant's Memorandum of Law in Support of His Application for Writ of Habeas Corpus, the State's Response, and official court records in the above numbered and entitled cause, makes the following findings of fact and conclusions of law:

### HISTORY OF THE CASE

On June 11, 1984, Applicant pled guilty to the offense of burglary of a habitation. Pursuant to a plea bargain, Applicant was sentenced to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division. Applicant did not appeal this conviction. Applicant discharged this sentence on June 19, 1992. *See State's Exhibit A.*

### ISSUES RAISED IN APPLICATION

In the instant writ application, Applicant contends that: (1) newly discovered evidence establishes that he is actually innocent of the offense of which he was convicted; and (2) the

---

1 The original case number for this writ was W82-77699-Q(B). The writ was refiled under the above case number, WX0890024-Q, by order of this Court, at the request of the parties. The writ seeks relief pursuant to Article I, Section 12 and Article 5, Section 8 of the Texas Constitution and Article 11.05 of the Texas Code of Criminal Procedure.

2 The Court has also considered each of Applicant's ten additional applications for writs of habeas

1

RMR 000055

State failed to disclose statements material to guilt in violation of his due process rights.

## JURISDICTION

Jurisdiction is proper under Article 11.05. Applicant is not confined on this conviction as he discharged his sentence approximately sixteen years ago, and he is not facing other collateral consequences.

## SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

The Court makes the following findings of fact.

1. On May 14, 1982, a man in a hooded, gray sweatshirt and boots, who was carrying a handgun, approached victim Michelle H. around 1:15 p.m. while she was sunbathing next to the pool at an apartment complex. *See Applicant's Exhibit 27.*

2. The assailant forced the victim at gunpoint into the apartment where she was staying with a friend, commanded her to disrobe, and orally raped her. No DNA or other physical evidence was gathered from the crime scene.

3. The assault of Michelle H. occurred less than two hours before the assault of Mary B., another of the approximately 60 victims involved in the Dallas crime spree for which Applicant was prosecuted.

4. Applicant was indicted for eleven offenses related to a string of sexual offenses that occurred in the Dallas area over a two-day period on May 14 and 15, 1982. He was also indicted for a sexual assault that occurred in February of 1982. The twelve cases were considered related by police because the offenses had similar manner and means, including but not limited to a man carrying a handgun wearing a gray hooded sweatshirt, covering part of his face, assaulting individuals, and driving a similar maroon car.

---

corpus. Collectively the writs related to a single crime spree in Dallas in the Spring of 1982.

2

RMR 000056

5. Applicant was identified by at least one victim as the perpetrator in each of the twelve indicted cases. Michelle H. identified Applicant as her assailant in a photo line-up approximately four weeks after her assault.

6. Michelle H. also identified Applicant as her attacker in the two trials Applicant faced for the offenses against victim Mary B. (1RR2: 27; 2RR1: 194, 198). In addition to Michelle H., Susan W., Lani B., and Shannon K., other victims in the Dallas crime spree, also testified at Applicant's second trial. Each of these victims testified to Applicant's bad reputation. The testimony from the victims of other incidents in the Dallas crime spree was based on what we now know was their inaccurate belief that Applicant was the perpetrator of the Dallas crime spree.

7. Applicant faced two separate trials for the assault of Mary B. He was first tried for burglary of a habitation, found guilty, and sentenced to thirty years' imprisonment. A year later he was tried for the charge of aggravated sexual abuse related to the same incident. Applicant testified at the first trial, but he did not testify in the guilt phase of the second trial.

8. At the first trial, Applicant presented a defense of misidentification and presented an alibi supported by his own testimony and the testimony of his wife, his sister-in-law, his brother-in-law, and his uncle.

9. Applicant was found guilty and sentenced to two concurrent thirty year terms in the two trials he faced related to the Mary B. assault. (RR: 191, 462).

10. On June 11, 1984, Applicant pled guilty to this offense – burglary of a habitation related to the assault of Michelle H. – as well as eight other charges in the Dallas crime spree, after being convicted for burglary of a habitation and the aggravated sexual abuse of Mary B. in which Michelle H. testified against him.

11. The various Dallas area police departments where each of the incidents occurred communicated with one another regarding suspects in these cases. Further, there was sharing of information with Kansas City police because they had experienced a string of similar offenses two weeks after the crime spree in Dallas.

12. Following the crimes in the Kansas City area which occurred on May 27, 1982, Kansas City police determined that Sidney Goodyear was responsible for the string of assaults in that jurisdiction. Goodyear's criminal history showed manner and means similar to the Dallas area offenses. *See Applicant's Exhibits 1-34.*

RMR 000057

13. Goodyear was identified by one Dallas victim, Wanda S., as the man who assaulted her. This information was not shared with Phillips or his counsel. *See Applicant's Exhibit 40.* She later identified Applicant as the man who assaulted her.

14. In the case of victim Connie P., Ms. P. identified Applicant as her assailant in an aggravated sexual assault. This case was unlike the others in time (it occurred in February whereas the others were committed May 14 and 15), and the manner and means were dissimilar. Police were made aware that Applicant was not responsible for this offense prior to his first trial in the burglary of a habitation of Mary B. *See Applicant's Exhibit 37-38.* This information was not shared with Applicant or his counsel. *See Applicant's Exhibit 40.* The case was dismissed after Applicant pled guilty to the remaining indictments. *See Applicant's Exhibit 39.*

15. On June 6, 2001, Applicant filed a pro se motion for DNA testing of the evidence collected in the complainant Mary B. cases. He was denied testing, appealed it, and lost. While attempting to seek relief from the Court of Criminal Appeals, the State agreed to testing on June 21, 2007. *See State's Exhibit B.*

16. The DNA results excluded Applicant as the perpetrator in the rape of Mary B., thus also exonerating him from breaking into her apartment to commit said rape. *See Applicant's Exhibit 35.*

17. The State pursued DNA testing of Sidney Goodyear. Results showed that Goodyear was in fact responsible for the rape of Mary B. *See Applicant's* Exhibit 35.

18. After linking Goodyear's DNA to the rape of Mary B., the State gathered the following information about Goodyear: Goodyear committed a string of sexual assaults throughout the country in the 1960s, 1970s, and 1980s and was wanted by many local jurisdictions and the Federal Bureau of Investigations; Goodyear's crimes in other jurisdictions were nearly identical to the manner and means used in the Dallas area crime spree; Goodyear was an initial suspect in the Dallas crime spree; Goodyear owned a car and handgun that were consistent with the car and handgun used by the perpetrator in the Dallas crime spree; Goodyear was identified as the perpetrator in the Dallas crime spree by at least one of the victims; and the evidence the State possessed at the time of Applicant's prosecution that implicated Goodyear was not disclosed to Applicant.

4

RMR 000058

GROUND ONE: ACTUAL INNOCENCE

CONCLUSIONS OF LAW

19. The Court concludes that the DNA results excluding Applicant and implicating Goodyear in the assault of Mary B. were unknown to Applicant at the time of trial and that Applicant's failure to discover this information was not due to a lack of due diligence on his part.

20. The Court concludes that the DNA results are newly discovered evidence that create a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict.

21. The Court concludes that the State and Applicant agree that Goodyear, not Applicant, committed the crimes against Michelle H.

22. The Court concludes that the DNA results implicating Goodyear in the Dallas crime spree and excluding Applicant are supported by the following information: Goodyear committed nearly identical crimes throughout the country both before and after the Dallas area crime spree; the Dallas police have at all times believed that each of the crimes in Dallas were committed by the same individual; Goodyear owned the same type of car and handgun that was used in the Dallas crime spree; Goodyear was an initial suspect and identified by at least one of the victim's in the Dallas crime spree; the victims in Dallas, including, but not limited to, Michelle H. and Mary B., provided police similar descriptions of the perpetrator; and the assaults occurred within hours of each other.

23. The Court concludes that relief should be granted to Applicant on his claim of actual innocence.

24. The Court concludes that Applicant's ground for relief should be granted and the conviction set aside under authority of *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996), in that Applicant has shown by clear and convincing evidence that no reasonable juror would have convicted him in light of the newly discovered DNA evidence and the other evidence demonstrating Goodyear's guilt and Applicant's innocence.

5

RMR 000059

## GROUND TWO: BRADY CLAIMS

### CONCLUSIONS OF LAW

25. The Court concludes that the State failed to disclose material exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1963), and that Applicant is entitled to relief because there is a reasonable probability that had the exculpatory evidence been disclosed the outcome of the proceedings against Applicant would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Thomas v. State*, 841 S.W. 2d 399, 404 (Tex. Crim. App. 1992).

26. The Court concludes that Sidney Goodyear was a suspect in the crime spree for which Applicant was investigated and prosecuted in Dallas. The Court also finds that Goodyear committed similar offenses throughout the country before and after the Dallas crime spree. The Court also finds that at least one of the victims in the Dallas crime spree identified Goodyear as the assailant in the Dallas crime spree.

27. The Court concludes that while the Dallas area police identified Goodyear as a suspect in the Dallas crimes, knew he committed similar crimes in Kansas City two weeks after the crime spree in Dallas, and knew that at least one victim in Dallas identified Goodyear, this information was not disclosed to Applicant or his attorney.

28. The Court also concludes that, prior to Applicant's first trial, the Dallas Police confirmed that John Parks, not Applicant, committed the assault of Connie P., one of the Dallas victims who initially identified Applicant as her assailant. The Court finds that this information confirming that Applicant was actually innocent of the assault on Connie P. and the information that the police knew that Connie P. misidentified Applicant as her assailant was not disclosed to Applicant or his attorney until after he was found guilty at two trials and after he pled guilty to nine additional charges related to the Dallas crime spree.

29. The Court concludes that the evidence identified in paragraphs 26-28 constitutes material, exculpatory evidence which should have been disclosed to Applicant. The Court finds that there is a reasonable probability that there would have been a different outcome at Applicant's trials and that he would not have pled guilty to the remaining charges had the favorable evidence been disclosed by the State.

30. The Court concludes that the State and Applicant agree that Applicant is entitled to relief based on the State's failure to disclose the favorable evidence identified in paragraphs 26-28.

6

RMR 000060

31. The Court agrees and concludes that relief should be granted and the conviction set aside under the authority of *Brady v. Maryland*, 373 U.S. 83 (1963).

## ORDERS OF THE COURT

The Court ORDERS the following:

1. Applicant's writ of habeas corpus is granted pursuant to Article 11.05 of the Texas Code of Criminal Procedure.

2. Applicant's conviction is vacated based on a showing that he is actually innocent of the crime pursuant to *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996).

3. Independently, Applicant's conviction is vacated based on the State's failure to disclose material, exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1967).

4. The CLERK is instructed to forward a copy of this ORDER to Applicant's counsel and to counsel for the State.

SIGNED this _5_ day of _Aug_, 2008

JUDGE LENA LEVARIO
204TH JUDICIAL DISTRICT COURT

7

RMR 000061

## WRIT NO. WX0890025-Q[1]

| EX PARTE | § | IN THE 204th JUDICIAL |
| | § | DISTRICT COURT |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |

### ORDER GRANTING RELIEF

The Court, having considered the allegations contained in Applicant's Application for Writ of Habeas Corpus[2], Applicant's Memorandum of Law in Support of His Application for Writ of Habeas Corpus, the State's Response, and official court records in the above numbered and entitled cause, makes the following findings of fact and conclusions of law:

### HISTORY OF THE CASE

On June 11, 1984, Applicant pled guilty to the offense of aggravated assault with a deadly weapon. Pursuant to a plea bargain, Applicant was sentenced to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division. Applicant did not appeal this conviction. Applicant discharged this sentence on June 3, 1992. *See State's Exhibit A.*

### ISSUES RAISED IN APPLICATION

In the instant writ application, Applicant contends that: (1) newly discovered evidence

---

1 The original case number for this writ was W82-79130-Q(B). The writ was refiled under the above case number, WX0890025-Q, by order of this Court, at the request of the parties. The writ seeks relief pursuant to Article I, Section 12 and Article 5, Section 8 of the Texas Constitution and Article 11.05 of the Texas Code of Criminal Procedure.
2 The Court has also considered each of Applicant's ten additional applications for writs of habeas

1

RMR 000062

establishes that he is actually innocent of the offense of which he was convicted; and (2) the State failed to disclose statements material to guilt in violation of his due process rights.

## JURISDICTION

Jurisdiction is proper under Article 11.05. Applicant is not confined on this conviction as he discharged his sentence approximately sixteen years ago, and he is not facing other collateral consequences.

## SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

The Court makes the following findings of fact.

1. On May 15, 1982, at approximately 9:30 a.m. a man in a hooded, gray sweatshirt, who was carrying a handgun, walked into an Elaine Powers Figure Salon in Garland, Texas, and commanded that the women in the salon disrobe while he masturbated. *See Applicant's Exhibit 31.*

2. The assault was one of a string of sexual assaults in the Dallas area that were committed by a single individual. Applicant was investigated and prosecuted for the crime spree.

3. Applicant was charged with aggravated assault with a deadly weapon and indecency with a child as a result of the incident at Garland Elaine Powers Figure Salon. Applicant challenges his conviction for indecency with a child in writ number W82-79140-Q(B).

4. Applicant was indicted for eleven offenses related to a string of sexual offenses that occurred in the Dallas area over a two-day period on May 14 and 15, 1982. He was also indicted for a sexual assault that occurred in February of 1982. The twelve cases were considered related by police because the offenses had similar manner and means, including but not limited to a man carrying a handgun wearing a gray hooded

corpus. Collectively the writs related to a single crime spree in Dallas in the Spring of 1982.

2

RMR 000063

sweatshirt, covering part of his face, assaulting individuals, and driving a similar maroon car.

5. Applicant was identified by at least one victim as the perpetrator in each of the twelve indicted cases. Wanda S., one of the victims in the Elaine Powers Figure Salon in Garland, identified Applicant in a live line-up approximately four weeks after the assault. Wanda S. initially identified Sidney Goodyear, not Applicant, as the man who assaulted her.

6. Prior to pleading guilty to the aggravated assault that is the subject of this writ, Applicant faced two trials for the assault of Mary B, one of the other victims in the Dallas crime spree. In addition to being identified by Mary B. as her assailant, during the trials, Applicant was identified by Michelle H., Susan W., Lani B., and Shannon K., other victims in the Dallas crime spree, as the man responsible for the Dallas crime spree. Each of these victims testified to Applicant's bad reputation. The testimony from the victims of other incidents in the Dallas crime spree was based on what we now know was their inaccurate belief that Applicant was the perpetrator of the Dallas crime spree.

7. Applicant faced two separate trials for the assault of Mary B. He was first tried for burglary of a habitation, found guilty, and sentenced to thirty years' imprisonment. A year later he was tried for the charge of aggravated sexual abuse related to the same incident. Applicant testified at the first trial, but he did not testify in the guilt phase of the second trial.

8. At the first trial, Applicant presented a defense of misidentification and presented an alibi supported by his own testimony and the testimony of his wife, his sister-in-law, his brother-in-law, and his uncle.

9. Applicant was found guilty and sentenced to two concurrent thirty-year terms in the two trials he faced related to the Mary B. assault. (RR: 191, 462).

10. On June 11, 1984, Applicant pled guilty to this offense – aggravated assault with a deadly weapon – as well as eight other charges in the Dallas crime spree, after being convicted for burglary of a habitation and the aggravated sexual abuse of Mary B. in which Michelle H. and the other victims in the Dallas crime spree testified against him.

3

RMR 000064

11. The various Dallas area police departments where each of the incidents occurred communicated with one another regarding suspects in these cases. Further, there was sharing of information with Kansas City police because they had experienced a string of similar offenses two weeks after the crime spree in Dallas.

12. Following the crimes in the Kansas City area which occurred on May 27, 1982, Kansas City police determined that Sidney Goodyear was responsible for the string of assaults in that jurisdiction. Goodyear's criminal history showed manner and means similar to the Dallas area offenses. *See Applicant's Exhibits 1-34.*

13. The fact that Goodyear was identified by Wanda S. as the man who assaulted her and the other women in the Garland Elaine Powers Figure Salon was not shared with Phillips or his counsel. *See Applicant's Exhibit 40.*

14. In the case of victim Connie P., Ms. P. identified Applicant as her assailant in an aggravated sexual assault. This case was unlike the others in time (it occurred in February whereas the others were committed May 14 and 15), and the manner and means were dissimilar. Police were made aware that Applicant was not responsible for this offense prior to his first trial in the burglary of a habitation of Mary B. *See Applicant's Exhibit 37-38.* This information was not shared with Applicant or his counsel. *See Applicant's Exhibit 40.* The case was dismissed after Applicant pled guilty to the remaining indictments. *See Applicant's Exhibit 39.*

15. On June 6, 2001, Applicant filed a pro se motion for DNA testing of the evidence collected in the complainant Mary B. cases. He was denied testing, appealed it, and lost. While attempting to seek relief from the Court of Criminal Appeals, the State agreed to testing on June 21, 2007. *See State's Exhibit B.*

16. The DNA results excluded Applicant as the perpetrator in the rape of Mary B., thus also exonerating him from breaking into her apartment to commit said rape. *See Applicant's Exhibit 35.*

17. The State pursued DNA testing of Sidney Goodyear. Results showed that Goodyear was in fact responsible for the rape of Mary B. *See Applicant's Exhibit 35.*

18. After linking Goodyear's DNA to the rape of Mary B., the State gathered the following information about Goodyear: Goodyear committed a string of sexual assaults throughout the country in the 1960s, 1970s, and 1980s and was wanted by many local jurisdictions and the Federal Bureau of Investigations; Goodyear's crimes in other jurisdictions were nearly identical to the manner and means used in the Dallas

4

RMR 000065

area crime spree; Goodyear was an initial suspect in the Dallas crime spree; Goodyear owned a car and handgun that were consistent with the car and handgun used by the perpetrator in the Dallas crime spree; Goodyear was identified as the perpetrator in the Dallas crime spree by at least one of the victims; and the evidence the State possessed at the time of Applicant's prosecution that implicated Goodyear was not disclosed to Applicant.

## GROUND ONE: ACTUAL INNOCENCE

### CONCLUSIONS OF LAW

19. The Court concludes that the DNA results excluding Applicant and implicating Goodyear in the assault of Mary B. were unknown to Applicant at the time of trial and that Applicant's failure to discover this information was not due to a lack of due diligence on his part.

20. The Court concludes that the DNA results are newly discovered evidence that create a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict.

21. The Court concludes that the State and Applicant agree that Goodyear, not Applicant, committed the assault at the Elaine Powers Figure Salon in Garland.

22. The Court concludes that the DNA results implicating Goodyear in the Dallas crime spree and excluding Applicant are supported by the following information: Goodyear committed nearly identical crimes throughout the country both before and after the Dallas area crime spree; the Dallas police have at all times believed that each of the crimes in Dallas were committed by the same individual; Goodyear owned the same type of car and handgun that was used in the Dallas crime spree; Goodyear was an initial suspect and identified by at least one of the victim's in the Dallas crime spree; the victims in Dallas, including, but not limited to, Wanda S., and Mary B., provided police similar descriptions of the perpetrator; and the assaults occurred within hours of each other.

23. The Court concludes that relief should be granted to Applicant on his claim of actual innocence.

24. The Court concludes that Applicant's ground for relief should be granted and the conviction set aside under authority of *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996), in that Applicant has shown by clear and convincing evidence that

5



RMR 000066

no reasonable juror would have convicted him in light of the newly discovered DNA evidence and the other evidence demonstrating Goodyear's guilt and Applicant's innocence.

## GROUND TWO: BRADY CLAIMS

### CONCLUSIONS OF LAW

25. The Court concludes that the State failed to disclose material exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1963), and that Applicant is entitled to relief because there is a reasonable probability that had the exculpatory evidence been disclosed the outcome of the proceedings against Applicant would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Thomas v. State*, 841 S.W. 2d 399, 404 (Tex. Crim. App. 1992).

26. The Court concludes that Sidney Goodyear was a suspect in the crime spree for which Applicant was investigated and prosecuted in Dallas. The Court also finds that Goodyear committed similar offenses throughout the country before and after the Dallas crime spree. The Court also finds that at least one of the victims in the Dallas crime spree identified Goodyear as the assailant in the Dallas crime spree.

27. The Court concludes that while the Dallas area police identified Goodyear as a suspect in the Dallas crimes, knew he committed similar crimes in Kansas City two weeks after the crime spree in Dallas, and knew that at least one victim in Dallas identified Goodyear, this information was not disclosed to Applicant or his attorney.

28. The Court also concludes that, prior to Applicant's first trial, the Dallas Police confirmed that John Parks, not Applicant, committed the assault of Connie P., one of the Dallas victims who initially identified Applicant as her assailant. The Court finds that this information confirming that Applicant was actually innocent of the assault on Connie P. and the information that the police knew that Connie P. misidentified Applicant as her assailant was not disclosed to Applicant or his attorney until after he was found guilty at two trials and after he pled guilty to nine additional charges related to the Dallas crime spree.

29. The Court concludes that the evidence identified in paragraphs 26-28 constitutes material, exculpatory evidence which should have been disclosed to Applicant. The Court finds that there is a reasonable probability that there would have been a different outcome at Applicant's trials and that he would not have pled guilty to the remaining charges had the favorable evidence been disclosed by the State.

6

RMR 000067

30. The Court concludes that the State and Applicant agree that Applicant is entitled to relief based on the State's failure to disclose the favorable evidence identified in paragraphs 26-28.

31. The Court agrees and concludes that relief should be granted and the conviction set aside under the authority of *Brady v. Maryland*, 373 U.S. 83 (1963).

## ORDERS OF THE COURT

The Court ORDERS the following:

1. Applicant's writ of habeas corpus is granted pursuant to Article 11.05 of the Texas Code of Criminal Procedure.

2. Applicant's conviction is vacated based on a showing that he is actually innocent of the crime pursuant to *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996).

3. Independently, Applicant's conviction is vacated based on the State's failure to disclose material, exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1967).

4. The CLERK is instructed to forward a copy of this ORDER to Applicant's counsel and to counsel for the State.

SIGNED this 5th day of _____, 2008

JUDGE LENA LEVARIO
204TH JUDICIAL DISTRICT COURT

7

RMR 000068

| EX PARTE | § | IN THE 204th JUDICIAL |
|---|---|---|
| | § | DISTRICT COURT |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |

## ORDER GRANTING RELIEF

The Court, having considered the allegations contained in Applicant's Application for Writ of Habeas Corpus[2], Applicant's Memorandum of Law in Support of His Application for Writ of Habeas Corpus, the State's Response, and official court records in the above numbered and entitled cause, makes the following findings of fact and conclusions of law:

## HISTORY OF THE CASE

On June 11, 1984, Applicant pled guilty to the offense of aggravated assault with a deadly weapon. Pursuant to a plea bargain, Applicant was sentenced to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division. Applicant did not appeal this conviction. Applicant discharged this sentence on June 3, 1992. *See State's Exhibit A.*

## ISSUES RAISED IN APPLICATION

In the instant writ application, Applicant contends that: (1) newly discovered evidence

---

1 The original case number for this writ was W82-82743-Q(B). The writ was refiled under the above case number, WX0890026-Q, by order of this Court, at the request of the parties. The writ seeks relief pursuant to Article I, Section 12 and Article 5, Section 8 of the Texas Constitution and Article 11.05 of the Texas Code of Criminal Procedure.

2 The Court has also considered each of Applicant's ten additional applications for writs of habeas

RMR 000069

establishes that he is actually innocent of the offense of which he was convicted; and (2) the State failed to disclose statements material to guilt in violation of his due process rights.

## JURISDICTION

Jurisdiction is proper under Article 11.05. Applicant is not confined on this conviction as he discharged his sentence approximately sixteen years ago, and he is not facing other collateral consequences.

## SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

The Court makes the following findings of fact.

1. On May 15, 1982, at approximately 10:30 a.m., a man in a hooded, gray sweatshirt, who was carrying a handgun and holding a piece of clothe over his face, walked into an Elaine Powers Figure Salon in Carrollton, Texas and commanded that the women in the salon disrobe while he masturbated. One of the victims in the salon was Susan W. *See Applicant's Exhibit 32.*

2. The assault was one of a string of similar sexual assaults that occurred in the Dallas area in the spring of 1982 that were committed by a single individual. For example, approximately one hour before the assault at the Elaine Powers Figure Salon in Carrollton, a similar assault occurred at the Elaine Powers Figure Salon in Garland, Texas. In total, there were approximately sixty victims in the Dallas area crime spree, each describing the same perpetrator.

3. Applicant was indicted for eleven offenses in the Dallas crime spree. Ten of these offenses occurred over a two-day period on May 14 and 15, 1982, and one occurred on April 22, 1982. Applicant was also indicted for a sexual assault that occurred in February of 1982. The twelve cases were considered related by police because the offenses had similar manner and means, including but not limited to a man carrying a handgun wearing a gray hooded sweatshirt, covering part of his face, assaulting

corpus. Collectively the writs related to a single crime spree in Dallas in the Spring of 1982.

2

RMR 000070

individuals, and driving a similar maroon car.

4. Applicant was identified by at least one victim as the perpetrator in each of the twelve indicted cases. Susan W., one of the victims at the Elaine Powers Figure Salon in Carrollton, identified Applicant in a photo line-up.

5. Prior to pleading guilty to the aggravated assault that is the subject of this writ, Applicant faced two trials for the assault of Mary B, another victim in the Dallas crime spree. Applicant was found guilty of burglary of a habitation in the first trial and aggravated sexual abuse in the second trial, and he was sentenced to concurrent thirty year terms for the assault of Mary B.

6. In addition to Mary B, several victims in the Dallas crime spree testified during Applicant's trials and identified him as the man responsible for the Dallas crime spree. Michelle H., one of the victims from May 14, 1982, identified Applicant and testified at both of his trials for the assault of Mary B. Susan W., one of the victims at the Elaine Powers Figure Salon in Carrollton, testified at Applicant's second trial. Susan W. testified that Applicant had a bad reputation and improperly stated on cross-examination that she was not a complaining witness in this case, when in fact, she was. (RR1: 199-204). Other victims from the Dallas crime spree, Lani B. and Shannon K., also testified at Applicant's second trial. The testimony from the victims of other incidents in the Dallas crime spree was based on what we now know was their inaccurate belief that Applicant was the perpetrator of the Dallas crime spree.

7. Applicant testified at the first trial, but he did not testify in the guilt phase of the second trial. At the first trial, Applicant presented a defense of misidentification and presented an alibi supported by his own testimony and the testimony of his wife, his sister-in-law, his brother-in-law, and his uncle.

8. On June 11, 1984, Applicant pled guilty to this offense – aggravated assault with a deadly weapon related to the assault at the Elaine Powers in Carrollton – as well as eight other charges in the Dallas crime spree, after being convicted for burglary of a habitation and the aggravated sexual abuse of Mary B.

9. The various Dallas area police departments where each of the incidents occurred communicated with one another regarding suspects in these cases. Further, there was sharing of information with Kansas City police because they had experienced a string of similar offenses two weeks after the crime spree in Dallas.

3

RMR 000071

10. Following the crimes in the Kansas City area which occurred on May 27, 1982, Kansas City police determined that Sidney Goodyear was responsible for the string of assaults in that jurisdiction. Goodyear's criminal history showed manner and means similar to the Dallas area offenses. *See Applicant's Exhibits 1-34.*

11. Goodyear was identified by one Dallas victim, Wanda S., as the man who assaulted her. This information was not shared with Phillips or his counsel. *See Applicant's Exhibit 40.* She later identified Applicant as the man who assaulted her.

12. In the case of victim Connie P., Ms. P. identified Applicant as her assailant in an aggravated sexual assault. This case was unlike the others in time (it occurred in February whereas the others were committed May 14 and 15), and the manner and means were dissimilar. Police were made aware that Applicant was not responsible for this offense prior to his first trial in the burglary of a habitation of Mary B. *See Applicant's Exhibit 37-38.* This information was not shared with Applicant or his counsel. *See Applicant's Exhibit 40.* The case was dismissed after Applicant pled guilty to the remaining indictments. *See Applicant's Exhibit 39.*

13. On June 6, 2001, Applicant filed a pro se motion for DNA testing of the evidence collected in the complainant Mary B. cases. He was denied testing, appealed it, and lost. While attempting to seek relief from the Court of Criminal Appeals, the State agreed to testing on June 21, 2007. *See State's Exhibit B.*

14. The DNA results excluded Applicant as the perpetrator in the rape of Mary B., thus also exonerating him from breaking into her apartment to commit said rape. *See Applicant's Exhibit 35.*

15. The State pursued DNA testing of Sidney Goodyear. Results showed that Goodyear was in fact responsible for the rape of Mary B. *See Applicant's* Exhibit 35.

16. After linking Goodyear's DNA to the rape of Mary B., the State gathered the following information about Goodyear: Goodyear committed a string of sexual assaults throughout the country in the 1960s, 1970s, and 1980s and was wanted by many local jurisdictions and the Federal Bureau of Investigations; Goodyear's crimes in other jurisdictions were nearly identical to the manner and means used in the Dallas area crime spree; Goodyear was an initial suspect in the Dallas crime spree; Goodyear owned a car and handgun that were consistent with the car and handgun used by the perpetrator in the Dallas crime spree; Goodyear was identified as the perpetrator in the Dallas crime spree by at least one of the victims; and the evidence the State possessed

4

RMR 000072

at the time of Applicant's prosecution that implicated Goodyear was not disclosed to Applicant.

## GROUND ONE: ACTUAL INNOCENCE

### CONCLUSIONS OF LAW

17. The Court concludes that the DNA results excluding Applicant and implicating Goodyear in the assault of Mary B. were unknown to Applicant at the time of trial and that Applicant's failure to discover this information was not due to a lack of due diligence on his part.

18. The Court concludes that the DNA results are newly discovered evidence that create a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict.

19. The Court concludes that the State and Applicant agree that Goodyear, not Applicant, committed the assault at the Elaine Powers Figure Salon in Carrollton.

20. The Court concludes that the DNA results implicating Goodyear in the Dallas crime spree and excluding Applicant are supported by the following information: Goodyear committed nearly identical crimes throughout the country both before and after the Dallas area crime spree; the Dallas police have at all times believed that each of the crimes in Dallas were committed by the same individual; Goodyear owned the same type of car and handgun that was used in the Dallas crime spree; Goodyear was an initial suspect and identified by at least one of the victim's in the Dallas crime spree; the victims in Dallas, including, but not limited to, Susan W. and Mary B., provided police similar descriptions of the perpetrator; and the assaults occurred within hours of each other.

21. The Court concludes that relief should be granted to Applicant on his claim of actual innocence.

22. The Court concludes that Applicant's ground for relief should be granted and the conviction set aside under authority of *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996), in that Applicant has shown by clear and convincing evidence that no reasonable juror would have convicted him in light of the newly discovered DNA evidence and the other evidence demonstrating Goodyear's guilt and Applicant's innocence.

5

RMR 000073

## GROUND TWO: BRADY CLAIMS

### CONCLUSIONS OF LAW

23. The Court concludes that the State failed to disclose material exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1963), and that Applicant is entitled to relief because there is a reasonable probability that had the exculpatory evidence been disclosed the outcome of the proceedings against Applicant would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Thomas v. State*, 841 S.W. 2d 399, 404 (Tex. Crim. App. 1992).

24. The Court concludes that Sidney Goodyear was a suspect in the crime spree for which Applicant was investigated and prosecuted in Dallas. The Court also finds that Goodyear committed similar offenses throughout the country before and after the Dallas crime spree. The Court also finds that at least one of the victims in the Dallas crime spree identified Goodyear as the assailant in the Dallas area crime spree.

25. The Court concludes that while the Dallas area police identified Goodyear as a suspect in the Dallas crimes, knew he committed similar crimes in Kansas City two weeks after the crime spree in Dallas, and knew that at least one victim in Dallas identified Goodyear, this information was not disclosed to Applicant or his attorney.

26. The Court also concludes that, prior to Applicant's first trial, the Dallas Police confirmed that John Parks, not Applicant, committed the assault of Connie P., one of the Dallas victims who initially identified Applicant as her assailant. The Court finds that this information confirming that Applicant was actually innocent of the assault on Connie P. and the information that the police knew that Connie P. misidentified Applicant as her assailant was not disclosed to Applicant or his attorney until after he was found guilty at two trials and after he pled guilty to nine additional charges related to the Dallas crime spree.

27. The Court concludes that the evidence identified in paragraphs 24-26 constitutes material, exculpatory evidence which should have been disclosed to Applicant. The Court finds that there is a reasonable probability that there would have been a different outcome at Applicant's trials and that he would not have pled guilty to the remaining charges had the favorable evidence been disclosed by the State.

28. The Court concludes that the State and Applicant agree that Applicant is entitled to relief based on the State's failure to disclose the favorable evidence identified in

RMR 000074

paragraphs 24-26.

29. The Court agrees and concludes that relief should be granted and the conviction set aside under the authority of *Brady v. Maryland*, 373 U.S. 83 (1963).

## ORDERS OF THE COURT

The Court ORDERS the following:

1. Applicant's writ of habeas corpus is granted pursuant to Article 11.05 of the Texas Code of Criminal Procedure.

2. Applicant's conviction is vacated based on a showing that he is actually innocent of the crime pursuant to *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996).

3. Independently, Applicant's conviction is vacated based on the State's failure to disclose material, exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1967).

4. The CLERK is instructed to forward a copy of this ORDER to Applicant's counsel and to counsel for the State.

SIGNED this 5th day of _____, 2008

JUDGE LENA LEVARIO
204TH JUDICIAL DISTRICT COURT

7

RMR 000075



## WRIT NO. WX0890029-Q[1]

| | | |
|---|---|---|
| EX PARTE | § | IN THE 204th JUDICIAL |
| | § | DISTRICT COURT |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |

### ORDER GRANTING RELIEF

The Court, having considered the allegations contained in Applicant's Application for Writ of Habeas Corpus[2], Applicant's Memorandum of Law in Support of His Application for Writ of Habeas Corpus, the State's Response, and official court records in the above numbered and entitled cause, makes the following findings of fact and conclusions of law:

### HISTORY OF THE CASE

On June 11, 1984, Applicant pled guilty to the offense of burglary of a habitation. Pursuant to a plea bargain, Applicant was sentenced to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division. Applicant did not appeal this conviction. Applicant discharged this sentence on June 3, 1992. *See State's Exhibit A.*

### ISSUES RAISED IN APPLICATION

In the instant writ application, Applicant contends that: (1) newly discovered evidence establishes that he is actually innocent of the offense of which he was convicted; and (2) the

---

1 The original case number for this writ was W82-87051-Q(B). The writ was refiled under the above case number, WX0890029-Q, by order of this Court, at the request of the parties. The writ seeks relief pursuant to Article I, Section 12 and Article 5, Section 8 of the Texas Constitution and Article 11.05 of the Texas Code of Criminal Procedure.

2 The Court has also considered each of Applicant's ten additional applications for writs of habeas

1

RMR 000076

State failed to disclose statements material to guilt in violation of his due process rights.

## JURISDICTION

Jurisdiction is proper under Article 11.05. Applicant is not confined on this conviction as he discharged his sentence approximately sixteen years ago, and he is not facing other collateral consequences.

## SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

FINDINGS OF FACT

The Court makes the following findings of fact.

1. On May 14, 1982, at approximately 11:45 p.m., a man in a hooded, gray sweatshirt, who was carrying a handgun, broke into an apartment of Beverly S. *See Applicant's Exhibit 30.*

2. The assailant forced Beverly S. and five other women who were present in the apartment to take off their clothing and perform various sexual acts.

3. The assault was one of a string of similar sexual assaults that occurred in the Dallas area in the spring of 1982. For example, several hours before the assault of Beverly S., the perpetrator assaulted three other women in other apartment complexes in Dallas. In total, there were approximately sixty victims in the Dallas crime spree, each describing the same perpetrator.

4. Applicant was indicted for eleven offenses in the Dallas area crime spree. Ten of these offenses occurred over a two-day period on May 14 and 15, 1982, and one occurred on April 22, 1982. Applicant was also indicted for a sexual assault that occurred in February of 1982. The twelve cases were considered related by police because the offenses had similar manner and means, including but not limited to a man carrying a handgun wearing a gray hooded sweatshirt, covering part of his face, assaulting individuals, and driving a similar maroon car.

---

corpus. Collectively the writs related to a single crime spree in Dallas in the Spring of 1982.

2

RMR 000077

5. Applicant was identified by at least one victim as the perpetrator in each of the twelve indicted cases. On June 4, 1982, Beverly S. and two of the other women, Sandra W. and Shannon K., identified Applicant in a live line-up as the perpetrator of the burglary and sexual assault.

6. Prior to pleading guilty to burglary of a habitation of Beverly S's apartment, Applicant faced two trials for the assault of Mary B. Applicant was found guilty of burglary of a habitation in the first trial and aggravated sexual abuse in the second trial, and he was sentenced to concurrent thirty year terms.

7. In addition to Mary B, several victims in the Dallas crime spree testified during Applicant's trials and identified him as the man responsible for the Dallas crime spree. Michelle H., one of the victims from a similar crime at a different apartment complex on the afternoon of May 14, 1982, identified Applicant and testified at both of his trials for the assault of Mary B. Susan W., Lani B., and Shannon K., other victims in the Dallas crime spree, testified at Applicant's second trial. Shannon K., one of the victims in Beverly S's apartment, testified during the punishment phase of Applicant's second trial, outside of the presence of the jury, that Applicant had assaulted her. (RR1: 213). In the presence of the jury, she testified that Applicant had a bad reputation. (RR1: 268). The testimony from the victims of other incidents in the Dallas crime spree was based on what we now know was their inaccurate belief that Applicant was the perpetrator of the Dallas crime spree.

8. Applicant testified at the first trial, but he did not testify in the guilt phase of the second trial. At the first trial, Applicant presented a defense of misidentification and presented an alibi supported by his own testimony and the testimony of his wife, his sister-in-law, his brother-in-law, and his uncle.

9. On June 11, 1984, Applicant pled guilty to this offense – burglary of a habitation related to the assault of Beverly S. – as well as eight other charges in the Dallas crime spree, after being convicted for burglary of a habitation and the aggravated sexual abuse of Mary B.

10. The various Dallas area police departments where each of the incidents occurred communicated with one another regarding suspects in these cases. Further, there was sharing of information with Kansas City police because they had experienced a string of similar offenses two weeks after the crime spree in Dallas.

11. Following the crimes in the Kansas City area which occurred on May 27, 1982, Kansas City police determined that Sidney Goodyear was responsible for the string of

RMR 000078

assaults in that jurisdiction. Goodyear's criminal history showed manner and means similar to the Dallas area offenses. *See Applicant's Exhibits 1-34.*

12. Goodyear was identified by one Dallas victim, Wanda S., as the man who assaulted her. This information was not shared with Phillips or his counsel. *See Applicant's Exhibit 40.* She later identified Applicant as the man who assaulted her.

13. In the case of victim Connie P., Ms. P. identified Applicant as her assailant in an aggravated sexual assault. This case was unlike the others in time (it occurred in February whereas the others were committed May 14 and 15), and the manner and means were dissimilar. Police were made aware that Applicant was not responsible for this offense prior to his first trial in the burglary of a habitation of Mary B. *See Applicant's Exhibit 37-38.* This information was not shared with Applicant or his counsel. *See Applicant's Exhibit 40.* The case was dismissed after Applicant pled guilty to the remaining indictments. *See Applicant's Exhibit 39.*

14. On June 6, 2001, Applicant filed a pro se motion for DNA testing of the evidence collected in the complainant Mary B. cases. He was denied testing, appealed it, and lost. While attempting to seek relief from the Court of Criminal Appeals, the State agreed to testing on June 21, 2007. *See State's Exhibit B.*

15. The DNA results excluded Applicant as the perpetrator in the rape of Mary B., thus also exonerating him from breaking into her apartment to commit said rape. *See Applicant's Exhibit 35.*

16. The State pursued DNA testing of Sidney Goodyear. Results showed that Goodyear was in fact responsible for the rape of Mary B. *See Applicant's* Exhibit 35.

17. After linking Goodyear's DNA to the rape of Mary B., the State gathered the following information about Goodyear: Goodyear committed a string of sexual assaults throughout the country in the 1960s, 1970s, and 1980s and was wanted by many local jurisdictions and the Federal Bureau of Investigations; Goodyear's crimes in other jurisdictions were nearly identical to the manner and means used in the Dallas area crime spree; Goodyear was an initial suspect in the Dallas crime spree; Goodyear owned a car and handgun that were consistent with the car and handgun used by the perpetrator in the Dallas crime spree; Goodyear was identified as the perpetrator in the Dallas crime spree by at least one of the victims; and the evidence the State possessed at the time of Applicant's prosecution that implicated Goodyear was not disclosed to Applicant.

4

RMR 000079

## GROUND ONE: ACTUAL INNOCENCE

### CONCLUSIONS OF LAW

18. The Court concludes that the DNA results excluding Applicant and implicating Goodyear in the assault of Mary B. were unknown to Applicant at the time of trial and that Applicant's failure to discover this information was not due to a lack of due diligence on his part.

19. The Court concludes that the DNA results are newly discovered evidence that create a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict.

20. The Court concludes that the State and Applicant agree that Goodyear, not Applicant, committed the assault of Beverly S. and her friends.

21. The Court concludes that the DNA results implicating Goodyear in the Dallas crime spree and excluding Applicant are supported by the following information: Goodyear committed nearly identical crimes throughout the country both before and after the Dallas area crime spree; the Dallas police have at all times believed that each of the crimes in Dallas were committed by the same individual; Goodyear owned the same type of car and handgun that was used in the Dallas crime spree; Goodyear was an initial suspect and identified by at least one of the victim's in the Dallas crime spree; the victims in Dallas, including, but not limited to, Beverly S., Shannon K., Sandra W., and Mary B., provided police similar descriptions of the perpetrator; and the assaults occurred within hours of each other.

22. The Court concludes that relief should be granted to Applicant on his claim of actual innocence.

23. The Court concludes that Applicant's ground for relief should be granted and the conviction set aside under authority of *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996), in that Applicant has shown by clear and convincing evidence that no reasonable juror would have convicted him in light of the newly discovered DNA evidence and the other evidence demonstrating Goodyear's guilt and Applicant's innocence.

RMR 000080

## GROUND TWO: BRADY CLAIMS

### CONCLUSIONS OF LAW

24. The Court concludes that the State failed to disclose material exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1963), and that Applicant is entitled to relief because there is a reasonable probability that had the exculpatory evidence been disclosed the outcome of the proceedings against Applicant would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Thomas v. State*, 841 S.W. 2d 399, 404 (Tex. Crim. App. 1992).

25. The Court concludes that Sidney Goodyear was a suspect in the crime spree for which Applicant was investigated and prosecuted in Dallas. The Court also finds that Goodyear committed similar offenses throughout the country before and after the Dallas crime spree. The Court also finds that at least one of the victims in the Dallas crime spree identified Goodyear as the assailant in the Dallas crime spree.

26. The Court concludes that while the Dallas area police identified Goodyear as a suspect in the Dallas crimes, knew he committed similar crimes in Kansas City two weeks after the crime spree in Dallas, and knew that at least one victim in Dallas identified Goodyear, this information was not disclosed to Applicant or his attorney.

27. The Court also concludes that, prior to Applicant's first trial, the Dallas Police confirmed that John Parks, not Applicant, committed the assault of Connie P., one of the Dallas victims who initially identified Applicant as her assailant. The Court finds that this information confirming that Applicant was actually innocent of the assault on Connie P. and the information that the police knew that Connie P. misidentified Applicant as her assailant was not disclosed to Applicant or his attorney until after he was found guilty at two trials and after he pled guilty to nine additional charges related to the Dallas crime spree.

28. The Court concludes that the evidence identified in paragraphs 25-27 constitutes material, exculpatory evidence which should have been disclosed to Applicant. The Court finds that there is a reasonable probability that there would have been a different outcome at Applicant's trials and that he would not have pled guilty to the remaining charges had the favorable evidence been disclosed by the State.

29. The Court concludes that the State and Applicant agree that Applicant is entitled to relief based on the State's failure to disclose the favorable evidence identified in paragraphs 25-27.

RMR 000081

30. The Court agrees and concludes that relief should be granted and the conviction set aside under the authority of *Brady v. Maryland*, 373 U.S. 83 (1963).

## ORDERS OF THE COURT

The Court ORDERS the following:

1. Applicant's writ of habeas corpus is granted pursuant to Article 11.05 of the Texas Code of Criminal Procedure.

2. Applicant's conviction is vacated based on a showing that he is actually innocent of the crime pursuant to *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996).

3. Independently, Applicant's conviction is vacated based on the State's failure to disclose material, exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1967).

4. The CLERK is instructed to forward a copy of this ORDER to Applicant's counsel and to counsel for the State.

SIGNED this 5th day of _____, 2008

JUDGE LENA LEVARIO
204TH JUDICIAL DISTRICT COURT

7

RMR 000082

| EX PARTE | § | IN THE 204th JUDICIAL |
| --- | --- | --- |
| | § | DISTRICT COURT |
| STEVEN CHARLES PHILLIPS | § | DALLAS COUNTY, TEXAS |

## ORDER GRANTING RELIEF

The Court, having considered the allegations contained in Applicant's Application for Writ of Habeas Corpus[2], Applicant's Memorandum of Law in Support of His Application for Writ of Habeas Corpus, the State's Response, and official court records in the above numbered and entitled cause, makes the following findings of fact and conclusions of law:

## HISTORY OF THE CASE

On June 11, 1984, Applicant pled guilty to the offense of aggravated assault with a deadly weapon. Pursuant to a plea bargain, Applicant was sentenced to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division. Applicant did not appeal this conviction. Applicant discharged this sentence on June 3, 1992. *See State's Exhibit A.*

## ISSUES RAISED IN APPLICATION

In the instant writ application, Applicant contends that: (1) newly discovered evidence

---

1 The original case number for this writ was W82-86748-Q(B). The writ was refiled under the above case number, WX0890027-Q, by order of this Court, at the request of the parties. The writ seeks relief pursuant to Article I, Section 12 and Article 5, Section 8 of the Texas Constitution and Article 11.05 of the Texas Code of Criminal Procedure.

2 The Court has also considered each of Applicant's ten additional applications for writs of habeas

1

RMR 000083

establishes that he is actually innocent of the offense of which he was convicted; and (2) the State failed to disclose statements material to guilt in violation of his due process rights.

## JURISDICTION

Jurisdiction is proper under Article 11.05. Applicant is not confined on this conviction as he discharged his sentence approximately sixteen years ago, and he is not facing other collateral consequences.

## SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

FINDINGS OF FACT

The Court makes the following findings of fact.

1. On May 14, 1982, at approximately 2:15 p.m., a man in a hooded, gray sweatshirt, who was carrying a handgun, approached victim Carrie S. and her boyfriend, Mike W., as they sunbathed next to an apartment swimming pool. *See Applicant's Exhibit 28.*

2. The assailant forced victim Carrie S. to take off her clothes and "model" for him.

3. The assault was one of a string of similar sexual assaults that occurred in the Dallas area in the spring of 1982. For example, approximately one hour before the assault of Carrie S., a similar assault occurred at a different apartment complex pool in Dallas, during which the perpetrator assaulted Michelle H. Additionally, less than one hour after the assault of Carrie S., another similar assault occurred at third apartment complex, during which the perpetrator assaulted Mary B. In total, there were approximately sixty victims in the Dallas crime spree, each describing the same perpetrator.

4. Applicant was indicted for eleven offenses in the Dallas area crime spree. Ten of these offenses occurred over a two-day period on May 14 and 15, 1982, and one occurred on April 22, 1982. Applicant was also indicted for a sexual assault that

corpus. Collectively the writs related to a single crime spree in Dallas in the Spring of 1982.

2

RMR 000084

occurred in February of 1982. The twelve cases were considered related by police because the offenses had similar manner and means, including but not limited to a man carrying a handgun wearing a gray hooded sweatshirt, covering part of his face, assaulting individuals, and driving a similar maroon car.

5. Applicant was identified by at least one victim as the perpetrator in each of the twelve indicted cases. Carrie S. identified Applicant as her assailant in a photo line-up.

6. Prior to pleading guilty to the assault of Carrie S., Applicant faced two trials for the assault of Mary B. Applicant was found guilty of burglary of a habitation in the first trial and aggravated sexual abuse in the second trial, and he was sentenced to concurrent thirty year terms.

7. In addition to Mary B, several victims in the Dallas crime spree testified during Applicant's trials and identified him as the man responsible for the Dallas crime spree. Michelle H., Susan W., Lani B., and Shannon K., other victims in the Dallas crime spree, testified at Applicant's second trial. Each of these victims testified to Applicant's bad reputation. The testimony from the victims of other incidents in the Dallas crime spree was based on what we now know was their inaccurate belief that Applicant was the perpetrator of the Dallas crime spree.

8. Applicant testified at the first trial, but he did not testify in the guilt phase of the second trial. At the first trial, Applicant presented a defense of misidentification and presented an alibi supported by his own testimony and the testimony of his wife, his sister-in-law, his brother-in-law, and his uncle.

9. On June 11, 1984, Applicant pled guilty to this offense – aggravated assault with a deadly weapon related to the assault of Carrie S. – as well as eight other charges in the Dallas crime spree, after being convicted for burglary of a habitation and the aggravated sexual abuse of Mary B.

10. The various Dallas area police departments where each of the incidents occurred communicated with one another regarding suspects in these cases. Further, there was sharing of information with Kansas City police because they had experienced a string of similar offenses two weeks after the crime spree in Dallas.

11. Following the crimes in the Kansas City area which occurred on May 27, 1982, Kansas City police determined that Sidney Goodyear was responsible for the string of assaults in that jurisdiction. Goodyear's criminal history showed manner and means similar to the Dallas area offenses. *See Applicant's Exhibits 1-34.*

3

RMR 000085

12. Goodyear was identified by one Dallas victim, Wanda S., as the man who assaulted her. This information was not shared with Phillips or his counsel. *See Applicant's Exhibit 40.* She later identified Applicant as the man who assaulted her.

13. In the case of victim Connie P., Ms. P. identified Applicant as her assailant in an aggravated sexual assault. This case was unlike the others in time (it occurred in February whereas the others were committed May 14 and 15), and the manner and means were dissimilar. Police were made aware that Applicant was not responsible for this offense prior to his first trial in the burglary of a habitation of Mary B. *See Applicant's Exhibit 37-38.* This information was not shared with Applicant or his counsel. *See Applicant's Exhibit 40.* The case was dismissed after Applicant pled guilty to the remaining indictments. *See Applicant's Exhibit 39.*

14. On June 6, 2001, Applicant filed a pro se motion for DNA testing of the evidence collected in the complainant Mary B. cases. He was denied testing, appealed it, and lost. While attempting to seek relief from the Court of Criminal Appeals, the State agreed to testing on June 21, 2007. *See State's Exhibit B.*

15. The DNA results excluded Applicant as the perpetrator in the rape of Mary B., thus also exonerating him from breaking into her apartment to commit said rape. *See Applicant's Exhibit 35.*

16. The State pursued DNA testing of Sidney Goodyear. Results showed that Goodyear was in fact responsible for the rape of Mary B. *See Applicant's* Exhibit 35.

17. After linking Goodyear's DNA to the rape of Mary B., the State gathered the following information about Goodyear: Goodyear committed a string of sexual assaults throughout the country in the 1960s, 1970s, and 1980s and was wanted by many local jurisdictions and the Federal Bureau of Investigations; Goodyear's crimes in other jurisdictions were nearly identical to the manner and means used in the Dallas area crime spree; Goodyear was an initial suspect in the Dallas crime spree; Goodyear owned a car and handgun that were consistent with the car and handgun used by the perpetrator in the Dallas crime spree; Goodyear was identified as the perpetrator in the Dallas crime spree by at least one of the victims; and the evidence the State possessed at the time of Applicant's prosecution that implicated Goodyear was not disclosed to Applicant.

4

RMR 000086

GROUND ONE: ACTUAL INNOCENCE

CONCLUSIONS OF LAW

18. The Court concludes that the DNA results excluding Applicant and implicating Goodyear in the assault of Mary B. were unknown to Applicant at the time of trial and that Applicant's failure to discover this information was not due to a lack of due diligence on his part.

19. The Court concludes that the DNA results are newly discovered evidence that create a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict.

20. The Court concludes that the State and Applicant agree that it is highly probable that Goodyear, not Applicant, committed the assault of Carrie S.

21. The Court concludes that the DNA results implicating Goodyear in the Dallas crime spree and excluding Applicant are supported by the following information: Goodyear committed nearly identical crimes throughout the country both before and after the Dallas area crime spree; the Dallas police have at all times believed that each of the crimes in Dallas were committed by the same individual; Goodyear owned the same type of car and handgun that was used in the Dallas crime spree; Goodyear was an initial suspect and identified by at least one of the victim's in the Dallas crime spree; the victims in Dallas, including, but not limited to, Carrie S. and Mary B., provided police similar descriptions of the perpetrator; and the assaults occurred within hours of each other.

22. The Court concludes that relief should be granted to Applicant on his claim of actual innocence.

23. The Court concludes that Applicant's ground for relief should be granted and the conviction set aside under authority of *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996), in that Applicant has shown by clear and convincing evidence that no reasonable juror would have convicted him in light of the newly discovered DNA evidence and the other evidence demonstrating Goodyear's guilt and Applicant's innocence.

5

RMR 000087

## GROUND TWO: BRADY CLAIMS

### CONCLUSIONS OF LAW

24. The Court concludes that the State failed to disclose material exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1963), and that Applicant is entitled to relief because there is a reasonable probability that had the exculpatory evidence been disclosed the outcome of the proceedings against Applicant would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Thomas v. State*, 841 S.W. 2d 399, 404 (Tex. Crim. App. 1992).

25. The Court concludes that Sidney Goodyear was a suspect in the crime spree for which Applicant was investigated and prosecuted in Dallas. The Court also finds that Goodyear committed similar offenses throughout the country before and after the Dallas crime spree. The Court also finds that at least one of the victims in the Dallas crime spree identified Goodyear as the assailant in the Dallas crime spree.

26. The Court concludes that while the Dallas area police identified Goodyear as a suspect in the Dallas crimes, knew he committed similar crimes in Kansas City two weeks after the crime spree in Dallas, and knew that at least one victim in Dallas identified Goodyear, this information was not disclosed to Applicant or his attorney.

27. The Court also concludes that, prior to Applicant's first trial, the Dallas Police confirmed that John Parks, not Applicant, committed the assault of Connie P., one of the Dallas victims who initially identified Applicant as her assailant. The Court finds that this information confirming that Applicant was actually innocent of the assault on Connie P. and the information that the police knew that Connie P. misidentified Applicant as her assailant was not disclosed to Applicant or his attorney until after he was found guilty at two trials and after he pled guilty to nine additional charges related to the Dallas crime spree.

28. The Court concludes that the evidence identified in paragraphs 25-27 constitutes material, exculpatory evidence which should have been disclosed to Applicant. The Court finds that there is a reasonable probability that there would have been a different outcome at Applicant's trials and that he would not have pled guilty to the remaining charges had the favorable evidence been disclosed by the State.

29. The Court concludes that the State and Applicant agree that Applicant is entitled to relief based on the State's failure to disclose the favorable evidence identified in paragraphs 25-27.

RMR 000088

30. The Court agrees and concludes that relief should be granted and the conviction set aside under the authority of *Brady v. Maryland*, 373 U.S. 83 (1963).

## ORDERS OF THE COURT

The Court ORDERS the following:

1. Applicant's writ of habeas corpus is granted pursuant to Article 11.05 of the Texas Code of Criminal Procedure.

2. Applicant's conviction is vacated based on a showing that he is actually innocent of the crime pursuant to *Ex parte Elizondo*, 947 S.W. 2d 202 (Tex. Crim. App. 1996).

3. Independently, Applicant's conviction is vacated based on the State's failure to disclose material, exculpatory evidence as is required by *Brady v. Maryland*, 373 U.S. 83 (1967).

4. The CLERK is instructed to forward a copy of this ORDER to Applicant's counsel and to counsel for the State.

SIGNED this 5ᵗʰ day of _____, 2008

JUDGE LENA LEVARIO
204ᵀᴴ JUDICIAL DISTRICT COURT

7

RMR 000089

# CHILD SUPPORT ENFORCEMENT TRANSMITTAL #2 - SUBSEQUENT ACTIONS

Petitioner

IV-D Case:

[ ] TANF
[ ] IV-E FOSTER CARE
[ ] MEDICAID ONLY
[ ] FORMER ASSISTANCE

Respondent

Steven Phillips

Non-IV-D Case:

[ ] NEVER ASSISTANCE

[ ]

FILE STAMP

To: (Agency Name and Address)

Leonard Higgins
(512) 936-6184

| | | State |
|---|---|---|
| Responding FIPS Code | | |
| Responding IV-D Case No. | | |
| Responding Tribunal No. | | |

From: (Contact Person, Agency, Address, Phone, Fax, E-mail)

W Fisher
OCSE - Berryville

| | | State |
|---|---|---|
| Initiating FIPS Code | | |
| Initiating IV-D Case No. | | |
| Initiating Tribunal No. | | |

Send Payments To: (if different from above)
Arkansas Child Support Clearinghouse
P.O. BOX 8125
Little Rock, AR 72203

| | | | State | AR |
|---|---|---|---|---|
| Payment FIPS Code | 0500000 | | | |
| Bank Account | | Routing Code | | |

State with Continuing Exclusive Jurisdiction (CEJ)

## I. Action

1.[ ] Status Request

2.[ ] Status Update

3.[ ] Notice of Hearing

4.[ ] Notice of Case Forwarding

5.[ ] Document Filed

6.[ ] Order Issued/Confirmed

7.[ ] Notice of Arrearage Reconciliation/Determination of Sum-Certain

8.[ ] Change of Payee/Redirection of Payment

9.[X] Other    Ar case is Closed

[ ] Please Return the Acknowledgement Attached (2 of 2)

## II. Additional Information

Arkansas Case against Steven Phillips is closed as of 10/11/2002

02/26/2010 Date    Wendy Fisher Initiating Contact Person (Print or Type)    Telephone Number & Extension

Fax:    E-Mail:

Child Support Enforcement Transmittal #2 - Subsequent Actions    OMB No. 0970 - 0085

RMR 000090

# CHILD SUPPORT ENFORCEMENT TRANSMITTAL #2 - SUBSEQUENT ACTIONS

Petitioner

IV-D Case:          [ ] TANF
                    [ ] IV-E FOSTER CARE
                    [ ] MEDICAID ONLY
Respondent          [ ] FORMER ASSISTANCE
                    [ ] NEVER ASSISTANCE
Non-IV-D Case:      [ ]

FILE STAMP

To:  (Agency Name and Address)

Responding FIPS Code _____  State _____
Responding IV-D Case No. _____

Responding Tribunal No. _____

From:  (Contact Person, Agency, Address, Phone, Fax, E-mail)

Initiating FIPS Code _____  State _____

Initiating IV-D Case No. _____

Initiating Tribunal No. _____

Send Payments To:   (If different from above)     Payment FIPS Code _____  State _____
Arkansas Child Support Clearinghouse
P.O. BOX 8125                                     Bank Account _____  Routing Code _____
Little Rock, AR 72203
                                                  State with Continuing Exclusive Jurisdiction (CEJ) _____

## ACKNOWLEDGEMENTS                    Return This Form to Initiating State

[   ]  Request Received and No Additional Information is Necessary

[   ]  Additional Information Needed (See Remarks)

[   ]  Remarks/Response

[   ]  Your Case has been Forwarded for Action to:

Name of Worker
_____

Agency Name
_____

Address, FIPS Code
_____

Phone, Extension & Fax _____

_____        _____        _____
Date                   Person Completing Form (Print or Type)    Telephone Number & Extension

FAX:_____        E-mail: _____

Child Support Enforcement Transmittal #2 - Subsequent Actions          Return this Page to the Initiating Jurisdiction

RMR 000091

# CHILD SUPPORT ENFORCEMENT TRANSMITTAL #2 - SUBSEQUENT ACTIONS

Petitioner

IV-D Case:

[ ] TANF
[ ] IV-E FOSTER CARE
[ ] MEDICAID ONLY
[ ] FORMER ASSISTANCE
[ ] NEVER ASSISTANCE

Respondent

Steven Phillips

Non-IV-D Case:        [ ]

FILE STAMP

To: (Agency Name and Address)

Leonard Higgins
(512) 936-6184

Responding FIPS Code _____    State _____
Responding IV-D Case No. _____

Responding Tribunal No. _____

From: (Contact Person, Agency, Address, Phone, Fax, E-mail)

W Fisher
OCSE - Berryville

Initiating FIPS Code _____    State _____

Initiating IV-D Case No. _____

Initiating Tribunal No. _____

Send Payments To: (if different from above)
Arkansas Child Support Clearinghouse
P.O. BOX 8125
Little Rock, AR 72203

Payment FIPS Code    0500000         State    AR

Bank Account _____    Routing Code _____

State with Continuing Exclusive Jurisdiction (CEJ)  [_____]

## I. Action

1.[ ] Status Request

2.[ ] Status Update
3.[ ] Notice of Hearing

4.[ ] Notice of Case Forwarding
5.[ ] Document Filed
6.[ ] Order Issued/Confirmed

7.[ ] Notice of Arrearage Reconciliation/Determination of Sum-Certain
8.[ ] Change of Payee/Redirection of Payment
9.[X] Other  Ar case is closed

[ ] Please Return the Acknowledgement Attached (2 of 2)

## II. Additional Information

Arkansas Case against Steven Phillips is closed as of
10/1/2002

02/26/2010            Wendy Fisher
Date                  Initiating Contact Person (Print or Type)                    Telephone Number & Extension

Fax: ▮▮▮▮▮▮        E-Mail: _____

Child Support Enforcement Transmittal #2 - Subsequent Actions                OMB No. 0970 - 0085

— Denise Hutchison - Supervisor.

OCSE - FIS02 12/04 1 of 2

RMR 000092

# CHILD SUPPORT ENFORCEMENT TRANSMITTAL #2 - SUBSEQUENT ACTIONS

Petitioner

Respondent

IV-D Case:

[ ] TANF
[ ] IV-E FOSTER CARE
[ ] MEDICAID ONLY
[ ] FORMER ASSISTANCE
[ ] NEVER ASSISTANCE

Non-IV-D Case: [ ]

FILE STAMP

To: (Agency Name and Address)

Responding FIPS Code _____ State _____
Responding IV-D Case No. _____
Responding Tribunal No. _____

From: (Contact Person, Agency, Address, Phone, Fax, E-mail)

Initiating FIPS Code _____ State _____

Initiating IV-D Case No. _____

Initiating Tribunal No. _____

Send Payments To:  (If different from above)
Arkansas Child Support Clearinghouse
P.O. BOX 8125
Little Rock, AR 72203

Payment FIPS Code _____ State _____

Bank Account _____ Routing Code _____

State with Continuing Exclusive Jurisdiction (CEJ) _____

## ACKNOWLEDGEMENTS                Return This Form to Initiating State

[ ]  Request Received and No Additional Information is Necessary

[ ]  Additional Information Needed (See Remarks)

[ ]  Remarks/Response

[ ]  Your Case has been Forwarded for Action to:

Name of Worker

Agency Name

Address, FIPS Code

Phone, Extension & Fax _____

Date | Person Completing Form (Print or Type) | Telephone Number & Extension

FAX:_____        E-mail: _____

Child Support Enforcement Transmittal #2 - Subsequent Actions        Return this Page to the Initiating Jurisdiction

OCSE - FIS02 12/04 2 of 2

RMR 000093

ARKANSAS CHILD SUPPORT TRACKING SYSTEM
PAYMENT HISTORY REPORT
FROM : 07/01/1997 TO : 10/10/2002

Case ID :
Payor ID:                          Name:        PHILLIPS C STEVEN          Docket Number:
Payee ID:                          Name:        MACUMBER S CHERI
**NO of Other Cases Payor is Present: 1**

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

2/19/2010

RMR 000094

| | Receipt Type | | | RCT Status LookUp | |
|---|---|---|---|---|---|
| **Code** | **Description** | | **Code** | **Description** | |
| 00 | Regular collection | | H | Hold | |
| 01 | Prior Collection | | I | Identified | |
| 02 | IRS Collection | | M | Manual Distribution | |
| 03 | State Revenue Collection | | O | Out Of Balance | |
| 04 | ESD Collection | | R | Research | |
| 05 | Advance (Undistributed Excess) | | S | SHEF Special Handling | |
| 11 | Increase Regular Collections | | X | Refund | |
| 12 | Increase Advance | | | | |
| 13 | Increase ESD | | | | |
| 14 | Increase IRS | | | | |
| 15 | Increase State Revenues | | | | |
| 16 | Increase Prior Collections | | | | |
| 21 | Decrease Regular Collections | | | | |
| 22 | Decrease Advance | | | | |
| 23 | Decrease ESD | | | | |
| 24 | Decrease IRS | | | | |
| 25 | Decrease State Revenue | | | | |
| 26 | Decrease Prior Collections | | | | |

| | Indicator LookUp | | DISB. Hold LookUp | |
|---|---|---|---|---|
| **Code** | **Description** | **Code** | **Description** | |
| AAC | Applied To Another Case (s) | A | Address Hold | |
| HOL | On Hold | D | Daily Disbursement Hold | |
| RNN | Refunded To NCP | I | 6 Month Hold | |
| IUN | Identified But Undistributed | F | Future Hold | |
| RSC | Research , Shef , Out Of Balance | L | Less Than Zero Dollar Hold | |
| | | W | Welfare Distribution Hold | |
| | | P | Deceased Hold | |
| | | E | Foster Care Hold | |

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

RMR 000095

| S U S A N | TEXAS COMPTROLLER *of* PUBLIC ACCOUNTS |
|---|---|
| C O M B S | P.O. Box 13528 • Austin, TX 78711-3528 |



February 26, 2010

Mr. Steven C. Phillips

███████████████████████████

COPY

Dear Mr. Phillips:

The Comptroller's Judiciary Section is in receipt of your claim and supporting documentation submitted on January 12, 2010, requesting wrongful imprisonment compensation. The claim has been approved for the following amount and pursuant to Section 103.151(a), Texas Civil Practice and Remedies Code, the payment will be mailed within 30 days of the date of this letter.

      Lump-sum payment: $806,666.67

In addition, as compensation for child support payments under Section 103.052(a)(2), Texas Civil Practice and Remedies Code, a lump-sum payment will be paid on your behalf to the Texas Attorney General's Office for payment to the Oklahoma disbursement unit. This payment will be made within 30 days of the date of this letter in accordance with Section 103.151(a), Texas Civil Practice and Remedies Code. The Comptroller will give you notice of the payment amount.

If you have any questions or need additional information, please contact the Comptroller's Judiciary Section by e-mail at leonard.higgins@cpa.state.tx.us or by phone at 1-800-531-5441, extension 6-6100.

Sincerely,

Leonard Higgins
Comptroller's Judiciary Section

RMR 000096

RECEIVED

MAY 05 2010

JUDICIARY



*Cheryl Macumber*
*Re child suppat*

May 3, 2010

State of Texas Comptroller
Judiciary Section
Attn: Leonard Higgins
P.O. Box 13528
Austin, TX  78711-3528

Re: Steven Charles Phillips
SSN: ███████

To Whom it may Concern,

This document is my effort to detail the events and a time period that have created a child support payment that is severely in a state of arrears, and owed by the state of Texas.

Beginning with the years of ███ and ███, two children were born to Steven and myself. (see two attached documents)  Our marriage ended in 1978 (see the attached divorce decree). Our second child was born in ███ out of wedlock. The divorce decree acknowledges one child for a child support order, ████████

Here, I must acknowledge and point out that there is no child support order for the second child. Steven and I were not at odds with each other prior to his incarceration, so he just paid to me cash that I might need. We had no reason to believe that he would soon be in prison for the rest of the childs young life.

When the children were ages 6 and 3, their father, Steven Charles Phillips was wrongfully incarcerated for twenty-six years in the state of Texas. He was found innocent due to DNA testing and released in late 2008.

During that time, both the state of Texas and the state of Arkansas, in reference to child support, were unable to assist with child support for prisoners. However, child support cases were opened with the Child Support Enforcement Unit of Arkansas for both children. A total of $220 was paid in 1997 on one case. (see attached payment history documents) This amount will show as a deduction within my calculations as to what is due.

Once the children became 18, I had given up hope. The children wondered if the nightmare would be over and their father would ever be free. Please, keep in mind this incarceration covers a span of 26 long years. So, I did not keep receipts, medical bill receipts, dental bills, pharmacy bills, health insurance costs, education, etc. I did not keep the child support cases open, I did not petition the courts to increase child support order to keep up with the changing

1

RMR 000097

economy (there wasn't any child support).

Furthermore, and definately the most frustrating issue of all is that I did not have an order of child support set up before Steven became entangled in the terrible web of the Texas prison system. Both our hands were tied. Thank God he never gave up on proving his innocence.

My sincere effort has been put into arriving at a reasonable amount owed, and that it reflects a modest amount owed to these children by the state of Texas, accruing during the period of tme that their father was wrongfully imprisoned.

Originally, I had attempted to arrive at a total by multiplying a dollar amount for each child. I now realize that the most common way to come to a more suitable amount is to look at the amount paid each month for two children. I have looked at child support charts that go back as far as 1990.

I realize that the child support for ███████ states that only $100 per month was ordered to be paid. Steven was in the military and was 18 years old, and I thought $100 a month was a lot of money.

So, what I have done is this, I begin with the year 1982 and end with the year 1997. 1997 being the year that the second child turned 18. Every third year I increase the amount of child support, as I would have done had I had the opportunity to go before a judge and ask for an alteration in the payment because of Steven's increased earnings, cost of living adjustments, etc.

| | | | |
|---|---|---|---|
| 1982-1985 is 3 years | 36 months @ $500 per month | = | $18,000 (two children) |
| 1985-1988 is 3 years | 36 months @ $650 per month | = | $23,400 (two children) |
| 1988-1992 is 3 years | 36 months @ $800 per month | = | $28,800 (two children) |
| 1992-1994 is 2 years | 24 months @ $900 per month | = | $21,600 (two children) |
| 1994-1997 is 3 years | 36 months @ $575 per month | = | $20,700 (one child) |
| | | | $ 112,500  sub- total |
| 1997 payments made total $220 | | | - 220 |
| | | | $112,280  total due |

As I stated earlier, I did not keep 15 years worth of receipts or bills, etc. but one could etimate that over that period of  time one could expect to spend approximately $8,000 per child on health care, dental and orthodontia.

At last, that brings the final total to $128,280.

My greatest hope is that you will not hesitate. This money is for two very special young adults who did not deserve to be so wronfully deprived of the financial and emotional support of their father. These children are still "counting on me" to "see it through", and I am counting on you to take positive action with this letter and the attached documents.

2

RMR 000098

Please, feel free to contact me at any time.

Thanking you in Advance,

*Cheryl Sue Macumber*

Cheryl Sue Macumber

███████████

███████████████

3

RMR 000099

**ARKANSAS CHILD SUPPORT TRACKING SYSTEM**
**PAYMENT HISTORY REPORT**
**FROM : 01/01/1976 TO : 11/23/2009**

Case ID :
Payor ID:     Name:     PHILLIPS C STEVEN     Docket Number:
Payee ID:     Name:     MACUMBER S CHERI
**NO of Other Cases Payor is Present: 1**

**Collection before 08/01/1997**

| Receipt Number | Receipt Date | Receipt Type | Receipt Amount | Check NO |
|---|---|---|---|---|
| 03/14/1997 0025 0077 | 03/12/1997 | 00 | 110.00 | |
| 04/18/1997 0003 0016 | 04/16/1997 | 00 | 110.00 | |

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

| Receipt Type | | RCT Status LookUp | |
|---|---|---|---|
| **Code** | **Description** | **Code** | **Description** |
| 00 | Regular collection | H | Hold |
| 01 | Prior Collection | I | Identified |
| 02 | IRS Collection | M | Manual Distribution |
| 03 | State Revenue Collection | O | Out Of Balance |
| 04 | ESD Collection | R | Research |
| 05 | Advance (Undistributed Excess) | S | SHEF Special Handling |
| 11 | Increase Regular Collections | X | Refund |
| 12 | Increase Advance | | |
| 13 | Increase ESD | | |
| 14 | Increase IRS | | |
| 15 | Increase State Revenues | | |
| 16 | Increase Prior Collections | | |
| 21 | Decrease Regular Collections | | |
| 22 | Decrease Advance | | |
| 23 | Decrease ESD | | |
| 24 | Decrease IRS | | |
| 25 | Decrease State Revenue | | |
| 26 | Decrease Prior Collections | | |

| Indicator LookUp | | DISB. Hold LookUp | |
|---|---|---|---|
| **Code** | **Description** | **Code** | **Description** |
| AAC | Applied To Another Case (s) | A | Address Hold |
| HOL | On Hold | D | Daily Disbursement Hold |
| RNN | Refunded To NCP | I | 6 Month Hold |
| IUN | Identified But Undistributed | F | Future Hold |
| RSC | Research , Shef , Out Of Balance | L | Less Than Zero Dollar Hold |
| | | W | Welfare Distribution Hold |
| | | P | Deceased Hold |
| | | E | Foster Care Hold |

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

11/23/2009

**ARKANSAS CHILD SUPPORT TRACKING SYSTEM**
**PAYMENT HISTORY REPORT**
**FROM : 07/21/1979 TO : 11/23/2009**

Case ID :
Payor ID: ████████          Name:      PHILLIPS C STEVEN          Docket Number:
Payee ID:                   Name:      MACUMBER S CHERI
**NO of Other Cases Payor is Present: 1**

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

RMR 000102

## Receipt Type

| Code | Description |
|------|-------------|
| 00 | Regular collection |
| 01 | Prior Collection |
| 02 | IRS Collection |
| 03 | State Revenue Collection |
| 04 | ESD Collection |
| 05 | Advance (Undistributed Excess) |
| 11 | Increase Regular Collections |
| 12 | Increase Advance |
| 13 | Increase ESD |
| 14 | Increase IRS |
| 15 | Increase State Revenues |
| 16 | Increase Prior Collections |
| 21 | Decrease Regular Collections |
| | Decrease Advance |
| | Decrease ESD |
| 24 | Decrease IRS |
| 25 | Decrease State Revenue |
| 26 | Decrease Prior Collections |

## RCT Status LookUp

| Code | Description |
|------|-------------|
| H | Hold |
| I | Identified |
| M | Manual Distribution |
| O | Out Of Balance |
| R | Research |
| S | SHEF Special Handling |
| X | Refund |

## Indicator LookUp

| Code | Description |
|------|-------------|
| AAC | Applied To Another Case (s) |
| HOL | On Hold |
| RNN | Refunded To NCP |
| IUN | Identified But Undistributed |
| RSC | Research , Shef , Out Of Balance |



## DISB. Hold LookUp

| Code | Description |
|------|-------------|
| A | Address Hold |
| D | Daily Disbursement Hold |
| I | 6 Month Hold |
| F | Future Hold |
| L | Less Than Zero Dollar Hold |
| W | Welfare Distribution Hold |
| P | Deceased Hold |
| E | Foster Care Hold |

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

11/23/2009

RMR 000103



RMR 000104

**This is a legal document.** Signing this legal document gives you certain rights and responsibilities. Signing this document is voluntary. You should consult an attorney if you have concerns about signing this legal document. If you are not sure that the man named in this Acknowledgment is the biological father of the child, you should not sign this document. You may want to get a genetic test. **The biological father who signs this Acknowledgment becomes the legal father of the child when this document is filed with the Department of State Health Services, Texas Vital Statistics.** This document requires an Entity Code completed in the lower right corner by an individual certified by the Office of the Attorney General to administer Acknowledgments of Paternity.

## Benefits, Rights, And Responsibilities Of Paternity

Establishing parentage makes it easier for a child to receive benefits such as social security, military and veteran's benefits, health care coverage and life insurance, as well as inheritance.

Both parents have parental rights and duties as provided by state law. Either parent has the right to seek primary custody of the child. A parent not living with the child may have the right to visit and maintain a relationship with the child, either as both parents agree or as ordered by a court. **This Acknowledgment has the same effect as a court order establishing paternity.** By signing this Acknowledgment, you may be ordered to pay child support and medical support.

This document may be completed before the birth of the child, at the time of birth, or at any time after the birth of the child. If this document is signed before the birth of the child, it is binding for any child born no later than 300 days after the signature date on this document. When this Acknowledgment is properly filed with Texas Vital Statistics, it creates a parent-child relationship between the man and child. Establishment of paternity is required for a father's name to be entered on a birth certificate.

**Child support services can be obtained through the**
**Office of the Attorney General, Child Support Division or by hiring an attorney.**

## Denial Of Paternity

If a child's mother is married to a man other than the biological father at the time of birth or within 300 days of the ending of the marriage, the (ex) husband is presumed to be the legal father. To complete this document for a child that has a presumed father, the presumed father must deny paternity by completing the Denial of Paternity section. The mother must agree that the presumed father is not the biological father by also signing the denial section. The acknowledgment section must also be completed by the biological father and mother, or the denial will not be accepted. Upon the filing of this document, the presumed father is legally determined not to be the father of the child. His legal duty to support the child is removed. Likewise, his legal right of custody or visitation with the child is terminated.

## Change Of Mind

If any party to this document changes his/her mind about acknowledging or denying paternity, he/she may file a suit to rescind this document. This has to be done within sixty (60) days after this legal document is filed with Texas Vital Statistics or before the first hearing date in a proceeding involving the child, including child support, whichever occurs first. After sixty (60) days, or first hearing date, a lawsuit is required to challenge this document. Fraud, duress, or material mistake of fact in signing this form must be proven during the lawsuit. The suit must be brought within four (4) years of the file date of this document.

## If A Party Is A Minor

If a party to this document is a minor on the date the document is signed, the lawsuit required to challenge the document must be filed within four (4) years of the date the party became an adult

All parties must receive oral notice of the above information before completing this Acknowledgment. You can receive oral notice of the information by calling 1-866-255-2006 and selecting option 1, "Notice of Rights and Responsibilities of a Parent."

If you have questions, you may call the Paternity Opportunity Program at 1-866-255-2006.

RMR 000105

  

# STATE OF TEXAS
# ACKNOWLEDGMENT OF PATERNITY

This is a legal document. Type or Print in black ink. Parents are to be given a copy of this completed document.

We declare under penalty of perjury that <u>Steven</u>    <u>Charles</u>    <u>Phillips</u>
<br>Biological Father's first     middle      last name

is the biological father of ███████████████████████

born ██████████ _____      <u>Arkansas</u>
<br>        city       county       state

to <u>Cheryl</u>    <u>Sue</u>    <u>Phillips</u>   ██████████
<br>   Mother's first    middle    last name     maid

██████████████████████████████████████

We further declare under penalty of perjury that:

- We have been given written and oral notice of: the benefits of having paternity established; the availability of paternity establishment and child support services; and the legal consequences of, the rights and responsibilities of, and the alternative to signing this Acknowledgment.
- No other Acknowledgment of Paternity form naming another man as the biological father of this child has been filed.
- There is no court order naming another man as the biological father of this child.
- A genetic test has not determined that another man is the biological father of this child.

**Fill one circle by the correct statement from EACH of the following:**

| ⊗ There <u>has not</u> been genetic testing of the man listed above to determine if he is the biological father of this child. **or** | ○ Genetic testing <u>has</u> determined that the man listed above is the biological father of this child. |
|---|---|
| ⊗ The mother <u>was not</u> married to someone other than the biological father at the time of the child's birth or within 300 days prior to the child's date of birth, or there is a court order that states that the man the mother was married to is not the father of the child, and during the first two years of the child's life, no man continuously lived with the child and represented the child as his own. **or** | ○ The mother <u>was</u> married to someone other than the biological father at the time of the child's birth or during the 300 days before the child's birth or during the first two years of the child's life, a man continuously lived with the child and represented the child as his own; and that man has completed the Denial of Paternity below or has a Denial of Paternity filed with the Vital Statistics Unit. |

*Steven C. Phillips*    04/09/10      *Cheryl Sue Macumber*   5-3-10
<br>**Full Signature of Biological Father**     date       **Full Signature of Mother**       date

*** ** * ** *** ** * ** *** ** * ** *** ** * ** *** ** * ** *** ** * ** *** ** * ** *** ** * ** *** ** * ** ***

## Denial of Paternity (only required if "mother <u>was</u> married to someone other than the biological father or if, during the child's first two years of life, a man continuously lived with the child and represented the child as his own" is checked.)

We declare under penalty of perjury that _____,
<br>         Presumed Father's first      middle       last name

the presumed father of the child, is not the biological father. We understand that filing of this denial with an acknowledgment removes the presumed father's legal duty to support the child and terminates his right of custody or visitation with the child.

_____   _____    _____   _____
<br>**Full Signature of Presumed Father**    date    **Full Signature of Mother**      date

___/___/___   ___-___-___    _____   _____   _____   _____
<br>Presumed Father's date of birth   social security number    Presumed Father's address    city    state    zip code

Texas Department of State Health Services
<br>Vital Statistics Unit
<br>VS-159.1M Revised 9/2005

Entity Code      48424

WARNING: This is a governmental document. Texas Penal Code, Section 37.10, specifies penalties for making false entries or providing false information in this document.



**Este es un documento legal.** Firmar este documento legal le otorga ciertos derechos y responsabilidades. Firmar este documento es voluntario. Debe consultar un abogado si tiene preocupaciones sobre la firma de este documento legal. Si no tiene la seguridad de que el hombre que se menciona en este Reconocimiento es el papá biológico del niño*, no debe firmar este documento. Usted quizás desee pedir una prueba genética. **El papá biológico que firma este Reconocimiento se convierte en el papá legal del niño cuando se presenta este documento ante la Oficina de Estadísticas Vitales de Texas del Departamento Estatal de Servicios de Salud (Department of State Health Services, Texas Vital Statistics).** Este documento requiere que una persona certificada por la Procuraduría General para administrar el Reconocimiento de Paternidad escriba un Código de Entidad en el lado derecho al pie de la página.

## Beneficios, Derechos y Responsabilidades de la Paternidad

El establecer la paternidad facilita que un niño reciba beneficios tales como Seguro Social, beneficios de las fuerzas armadas y de veteranos, cobertura de seguro médico y seguro de vida, al igual que una herencia.

Según las leyes estatales ambos padres tienen derechos y deberes paternales. Cualquiera de los dos padres tiene derecho a intentar obtener la custodia principal del niño. Un padre que no vive con el niño puede tener derecho a las visitas y a mantener una relación con el niño, ya sea si los dos padres están de acuerdo o si lo ordena la corte. **Este reconocimiento tiene el mismo efecto que una orden de la corte que establece la paternidad.** Al firmar este Reconocimiento a usted se le puede ordenar que pague manutención de niños y manutención médica.

Se puede llenar este documento antes del nacimiento del niño, en el momento del nacimiento o en cualquier momento después del nacimiento. Si este documento se firma antes del nacimiento del niño, queda vigente para cualquier niño que nazca dentro de un lapso de 300 días después de la fecha en que se firmó. Cuando este Reconocimiento se presenta correctamente ante la Oficina de Estadísticas Vitales de Texas (Texas Vital Statistics) crea una relación padre e hijo entre el hombre y el niño. Se requiere el establecimiento de paternidad para que el padre de un niño aparezca en el acta de nacimiento.

**Se pueden obtener los servicios de manutención de niños a través de la División de la Procuraduría General para la Manutención de Niños o contratando a un abogado.**

## Negación de Paternidad

Si la mamá de un niño está casada con un hombre que no es el papá biológico al momento del nacimiento o se convierte en mamá antes de que transcurran 300 días de terminar el matrimonio, se presume que el (ex) esposo es el padre legal. Para llenar este documento para un niño que tiene un presunto padre, el presunto padre debe negar la paternidad llenando la sección de Negación de Paternidad. La mamá debe estar de acuerdo en que el presunto padre no es el papá biológico firmando también la sección de negación. La sección de reconocimiento también debe ser completada por el papá biológico y la mamá o de lo contrario no se aceptará la negación. Al presentar este documento se determina legalmente que el presunto padre no es el papá del niño y su deber legal de mantener al niño termina. Asimismo, su derecho legal de tener custodia o visitas con el niño desaparece.

## Cambio de Opinión

Si una de las partes de este documento cambia de opinión sobre el reconocimiento o negación de paternidad, él/ella pueda entablar una demanda para rescindir el documento. Esto se tiene que hacer dentro de los sesenta (60) días después de que este documento legal fue presentado ante la Oficina de Estadísticas Vitales o antes de la primera audiencia en el procedimiento que tiene que ver con el niño, incluyendo la manutención de niños: Lo que ocurra primero. Si se cambia de opinión cuando ya pasaron los sesenta (60) días o la fecha de la primera audiencia, se deberá entablar una demanda para desafiar el documento. Durante la demanda se deberá probar fraude, coacción o error material de los hechos al firmar el formulario. La demanda se debe entablar dentro de los cuatro (4) años desde haber presentado el documento.

## Si una de las partes es menor de edad

Si una de las partes a este documento es menor de edad en la fecha en que fue firmado, la fecha requerida para desafiar el documento debe ser antes de que transcurran cuatro (4) años de que la persona se convirtió en adulto.

Todas las partes deben recibir notificación oral de la información aquí mencionada antes de llenar el Reconocimiento de Paternidad. Usted puede recibir notificación oral de la información llamando al 1-866-255-2006 y eligiendo la opción 1, "Aviso de Derechos y Responsabilidades como Padre".

Si tiene alguna pregunta puede llamar al Programa de Oportunidad en la Paternidad al 1-866-255-2006.

**\*Nota del traductor: Para propósitos de esta traducción el término "niño" puede indicar tanto un niño como una niña.**

# STATE OF ARKANSAS

*void void void void*

*void void void void*

ARKANSAS DEPARTMENT OF HEALTH

**SEAL**

LITTLE ROCK, ARK.

THIS IS TO CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE CERTIFICATE ON FILE IN THE ARKANSAS DEPARTMENT OF HEALTH.

NOV 24  09

Michael A. Adams
State Registrar

**WARNING:** A REPRODUCTION OF THIS DOCUMENT RENDERS IT VOID AND INVALID. DO NOT ACCEPT UNLESS EMBOSSED SEAL OF THE ARKANSAS DEPARTMENT OF HEALTH IS PRESENT. IT IS ILLEGAL TO ALTER OR COUNTERFEIT THIS DOCUMENT.

2220086

VR-112

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER. THIS IS WATERMARKED PAPER. DO NOT ACCEPT WITHOUT FIRST HOLDING TO LIGHT TO VERIFY WATERMARK.

RMR 000108



## STATE OF ARKANSAS



FILE IN THE ARKANSAS DEPARTMENT OF HEALTH.

**SEAL**

NOV 24, 09

Michael A. Adams
State Registrar

**WARNING:** A REPRODUCTION OF THIS DOCUMENT RENDERS IT VOID AND INVALID. DO NOT ACCEPT UNLESS EMBOSSED SEAL OF THE ARKANSAS DEPARTMENT OF HEALTH IS PRESENT. IT IS ILLEGAL TO ALTER OR COUNTERFEIT THIS DOCUMENT.

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER. THIS IS WATERMARKED PAPER. DO NOT ACCEPT WITHOUT FIRST HOLDING TO LIGHT TO VERIFY WATERMARK.

2220086

RMR 000109

CHANCERY COURT OF BOONE COUNTY, ARKANSAS

PLAINTIFF

No.

STEVEN CHARLES PHILLIPS, DEFENDANT

DECREE OF DIVORCE

NOW, on this 2nd day of February, 1978, comes on for hearing the above styled cause, and same is submitted upon the oral testimony of plaintiff and witness on her behalf, the official file, statement of counsel and other matters and things before the Court, from all of which the Court finds:

That the parties hereto are residents of Boone County, Arkansas, the defendant presently being in the military service in Germany; that the defendant was duly notified by publication and by Attorney Ad Litem, such proof of publication and Report of Attorney Ad Litem being filed herein; that the Court has jurisdiction of the parties and subject matter.

That the plaintiff has alleged and established by competent testimony just and proper grounds for divorce and a decree of absolute divorce should be entered in her favor.

That to this marriage was born one child, namely ███████████ that said child is presently in the care and custody of the plaintiff and she is fit and proper person to continue the care and custody of said child, subject to the defendant's right of reasonable visitation with said child. That the defendant shall pay to the plaintiff for the support of said child the sum of $100.00 each month.

That the defendant should return immediately to plaintiff three boxes of her personal items, which she left in Germany.

IT IS, THEREFORE, BY THE COURT, Considered, Ordered, Adjudged and Decreed that plaintiff, Cheri Sue Phillips, should be and she is hereby granted a decree of

RMR 000110

of $100.00 per month; that the defendant be and he hereby is directed to return immediately to the plaintiff three boxes of her personal items, which she left in Germany.

Nell Powell Knight
CHANCERY JUDGE
2/7/78

RMR 000111

REVENUE PROCESSING DIVISION

# FLAG

TP # *Cheryl Sue Macumber*

APPROVED: *X. Cruz -3362/*　　DATE *8/16/10.*

Form 85-178 (10-90)

RMR 000112

Cheryl Sue Macumber



August 12, 2010

Dear Susan Combs,

My family and I are in desperate need of your help, encouragement, and advice. Our story is somewhat unbelievable, and it seems that it will be an ongoing nightmare if we do not receive some cooperation from our state governments, and federal if necessary. I pray that you will read this letter with compassion and sincerity, for we no longer know what to do to resolve this dilemma between two state governments, that involves two very innocent children.

I will try to make this as simply stated as possible; even though the timeline covers more than three decades:

In 1975, I married Steven Charles Phillips. We lived in our hometown of Harrison, Arkansas. I was sixteen years ol██████████████ when I gave birth to our daughter, ███████████████████ We agreed to a divorce in 1978 and a court order was set for child support for ██████ Although the marriage was dissolved, our relationship had not ended. I gave birth to Steven's son,████████████████ ██ ████████ Due to the fact that we were not married at the time, there was no court order for child support for ███████ I was only nineteen when ██████ was born, and I had no idea how important a court order would be in the legal system of 2010.

Steven moved to the state of Texas to make a new start, and I remained in Arkansas with the two children. Then, in 1983 Steven was arrested, falsely accused, and ultimately wrongfully imprisoned in the state of Texas until the latter part of 2008. He has been exonerated, he is being monetarily compensated, and his life is moving forward. His story is accessible via the internet.

However, what you do not see in the press/news/internet are the two children's stories. As I stated earlier, a child support order was and is in effect fo███████ but I never petitioned the courts for an order fo██████ I contacted the state of Texas to see if there was any kind of fund for children of prisoners, to no avail. I opened child support cases with the Department of Child Support Enforcement in Arkansas, for both children. *There was nothing they could do for these children but to wait until he was released. I* was to stay in touch with their office to keep the children's cases open. I did keep their cases open until they reached the ages of 18, and then I just gave up hope that they would ever see their Father outside of those prison walls.

Miraculously he, with the help of DNA testing, the Innocence Project and many others

RMR 000113

too numerous to mention, was released.

In speaking with the Office of Child Support Enforcement of Arkansas, I have learned that somewhere around 1998, their office went to a new computerized registry, and due to the fact that both children were over 18, their cases did not get included in the registry.

As I understand it, the state of Texas uses the office of the Attorney General to collect and disburse child support payments. Whereas, the state of Arkansas has its own division of Child Support Enforcement and is not under the administration of the Attorney General. So, I have been unsuccessful with Texas and Arkansas at working together to solve this dilemma.

I have written to and have spoke with a judiciary member, Leonard Higgins of the comptroller's office for the state of Texas. He states that the state of Texas will not consider paying the child support that is due to these two children without a court order for child support, as well as an actively open case with the Office of Child Support. Keep in mind that these two "children" are now ▮ and ▮ years old. Of course there is not an open case!

I will go on to say that this Mr. Leonard Higgins with the comptroller's office in Texas, has been rude, with no empathy or assistance. He even stated that "If you are looking for a source of income, you might get it from Steven, he has plenty!" This type of response has not been typical of any of the many people that I have spoken to in both Texas and Arkansas, most have been empathetic and willing to do what they can. I have enclosed a copy of the letter that I sent to Mr. Higgins stating the amount that I had calculated to be due to these children.

I am not looking for an income. I am now 51 years old and a retired teacher. I am not wealthy but I am very comfortable. I am remarried and I have 4 children and 15 grandchildren. This money from child support/state of Texas is not for me. It is for two children who did without so much and did absolutely nothing to deserve this neglect. Along with the shame and humiliation, the teasing, and the loneliness of having to do *without their Father, who was ultimately wrongfully found guilty of a terrible crime.*

Lives are being mended, relationships restored, and now that their Father is on the other side of the bars and razor wire, and in a new light, these children still cannot get a "break or ray of justice".

I refuse to sue their Father for Child Support. This is an error on the part of the state of Texas. If I work with the State of Arkansas, that is what they do; "Enforce".

As I bring this letter to a close, I pray that what you hold in your hands will not be tossed aside. But that you will look to the list of names to which this letter will be delivered and contact just one that you know and work together to help these children. Will you be the one to help or will you say "This is someone else's problem"?

RMR 000114

For █████████████ ...

Respectfully,

Cheryl Sue Macumber

Enclosures


Cc:
President Barack Obama
First Lady Michelle Obama
Vice President Joe Biden
The Honorable George W. Bush
*Laura Bush*
The Honorable George H.W. Bush
Barbara Bush
The Honorable Wm. J. Clinton
Sec. of State Hillary Clinton
Speaker of the House Nancy Pelosi
The Honorable Jimmy Carter
Rosalynn Carter

Senator Kit Bond (MO)
Senator Claire McCaskill (MO)
Congressman Roy Blunt (MO)

Governor Rick Perry (TX)
Attorney General Greg Abbott (TX)
Senator Kay Bailey Hutchison (TX)
Senator John Cornyn (TX)

Congressman John Boozman (AR)
Senator Mark Pryor (AR)
Senator Blanche Lincoln (AR)
Governor Mike Beebe (AR)
Bruce Campbell (AR)
*Representative Kay Hopper (AR)*
Representative John Burris (AR)
Senator Randy Laverty (AR)
Senator John Key (AR)

RMR 000115

Representative Roy Ragland (AR)
Chief Justice Jim Hannah (AR)
Justice Don Corbin (AR)
Justice Robert Brown (AR)
Justice Ron Sheffield (AR)
Justice Jim Gunter (AR)
Justice Paul Danielson (AR)
Justice Elana Wills (AR)
Hon. John Putman (AR)
Hon. Gary Isbell (AR)
Hon. Shawn Womack (AR)
Hon. Gordon Webb (AR)

U.S. Dept. of Health & Human Services/Admin. For Children & Families
Office of Child Support Enforcement: Administrator Dan McDonald (AR)

Oprah Winfrey
Dr. Phil McGraw

RMR 000116

████████████████

May 3, 2010

State of Texas Comptroller
Judiciary Section
Attn: Leonard Higgins
P.O. Box 13528
Austin, TX 78711-3528

Re: Steven Charles Phillips
SSN: ████████

To Whom it may Concern,

This document is my effort to detail the events and a time period that have created a child support payment that is severely in a state of arrears, and owed by the state of Texas.

Beginning with the years of ████ and ████, two children were born to Steven and myself. (see two attached documents) Our marriage ended in 1978 (see the attached divorce decree). Our second child was born in ████, out of wedlock. The divorce decree acknowledges one child for a child support order ████████████.

Here, I must acknowledge and point out that there is no child support order for the second child. Steven and I were not at odds with each other prior to his incarceration, so he just paid to me cash that I might need. We had no reason to believe that he would soon be in prison for the rest of the childs young life.

When the children were ages 6 and 3, their father, Steven Charles Phillips was wrongfully incarcerated for twenty-six years in the state of Texas. He was found innocent due to DNA testing and released in late 2008.

During that time, both the state of Texas and the state of Arkansas, in reference to child support, were unable to assist with child support for prisoners. However, child support cases were opened with the Child Support Enforcement Unit of Arkansas for both children. A total of $220 was paid in 1997 on one case. (see attached payment history documents) This amount will show as a deduction within my calculations as to what is due.

Once the children became 18, I had given up hope. The children wondered if the nightmare would be over and their father would ever be free. Please, keep in mind this incarceration covers a span of 26 long years. So, I did not keep receipts, medical bill receipts, dental bills, pharmacy bills, health insurance costs, education, etc. I did not keep the child support cases open, I did not petition the courts to increase child support order to keep up with the changing

1

RMR 000117

economy (there wasn't any child support).

Furthermore, and definately the most frustrating issue of all is that I did not have an order of child support set up before Steven became entangled in the terrible web of the Texas prison system. Both our hands were tied. Thank God he never gave up on proving his innocence.

My sincere effort has been put into arriving at a reasonable amount owed, and that it reflects a modest amount owed to these children by the state of Texas, accruing during the period of tme that their father was wrongfully imprisoned.

Originally, I had attempted to arrive at a total by multiplying a dollar amount for each child. I now realize that the most common way to come to a more suitable amount is to look at the amount paid each month for two children. I have looked at child support charts that go back as far as 1990.

I realize that the child support for ▮▮▮▮▮▮▮ tates that only $100 per month was ordered to be paid. Steven was in the military and was 18 years old, and I thought $100 a month was a lot of money.

So, what I have done is this, I begin with the year 1982 and end with the year 1997. 1997 being the year that the second child turned 18. Every third year I increase the amount of child support, as I would have done had I had the opportunity to go before a judge and ask for an alteration in the payment because of Steven's increased earnings, cost of living adjustments, etc.

| | | | |
|---|---|---|---|
| 1982-1985 is 3 years | 36 months @ $500 per month | = | $18,000 (two children) |
| 1985-1988 is 3 years | 36 months @ $650 per month | = | $23,400 (two children) |
| 1988-1992 is 3 years | 36 months @ $800 per month | = | $28,800 (two children) |
| 1992-1994 is 2 years | 24 months @ $900 per month | = | $21,600 (two children) |
| 1994-1997 is 3 years | 36 months @ $575 per month | = | $20,700 (one child) |
| | | | $ 112,500 sub- total |
| 1997 payments made total $220 | | | - 220 |
| | | | $112,280 total due |

As I stated earlier, I did not keep 15 years worth of receipts or bills, etc. but one could etimate that over that period of time one could expect to spend approximately $8,000 per child on health care, dental and orthodontia.

At last, that brings the final total to $128,280.

My greatest hope is that you will not hesitate. This money is for two very special young adults who did not deserve to be so wronfully deprived of the financial and emotional support of their father. These children are still "counting on me" to "see it through", and I am counting on you to take positive action with this letter and the attached documents.

Please, feel free to contact me at any time.

2

RMR 000118

Thanking you in Advance,

Cheryl Sue Macumber

█████████████████████████

████████████████████████████████████

3

RMR 000119

Cheryl S. Macumber

61 USA

RICHARD WRIGHT

USA FIRST-CLASS FOREVER

Comptroller's Office
Attn: Susan Combs, Exec. Admin.
P.O. Box 13528
Capitol Station
Austin, TX 78711-3528

2F
WMON
459

RMR 000120



**S U S A N**

**C O M B S**

TEXAS COMPTROLLER *of* PUBLIC ACCOUNTS

P.O. Box 13528 · Austin, TX 78711-3528



August 23, 2010

Ms. Cheryl Sue Macumber
████████████████████

**COPY**

Re: Steven Phillips Wrongful Imprisonment Claim

Dear Ms. Macumber:

Our office is in receipt of your letter dated August 12, 2010, addressed to Ms. Combs. It has been referred to the Judiciary Section for response on behalf of the agency. In your letter, you request assistance with obtaining compensation for child support incurred during the wrongful imprisonment of Mr. Steven Phillips.

Under Section 103.052(a)(2), Texas Civil Practice and Remedies Code, a person entitled to wrongful imprisonment compensation is also entitled to compensation for child support payments owed by the person on whose imprisonment the claim is based that became due during the time served in prison and interest on child support arrearages that accrued during that time. In order to receive the compensation for child support payments owed, Section 103.051(a)(6), Texas Civil Practice and Remedies Code requires the claimant to submit (1) a certified copy of each child support order requiring payment during the time the claimant served in prison and (2) copies of the official child support payment records for that period as described by Section 234.009, Texas Family Code.

Unfortunately, our office has not received the documents required by Section 103.051(a)(6). In addition, the Arkansas Child Support Enforcement Office indicated that no judgment was issued for case numbe███████████████████████ and the case file was closed and purged on October 11, 2002. In addition, according to the Enforcement Office, no judgment or order was issued for case number ████████████████████ Consequently, the Comptroller does not have the information necessary to determine the appropriate amount of compensation for child support payments that may be owed under Section 103.052(a)(2).

If supplemental documentation from the Arkansas Child Support Enforcement Office is submitted which meets the legal requirements of Section 103.051(a)(6), then any payment would be made in accordance with Section 103.052(c), Texas Civil Practice and Remedies Code. Pursuant to Section 103.052(c), any such payment would be paid on Mr. Steven Phillips's behalf in a lump-sum payment to the Arkansas Child Support Enforcement Office for distribution.

RMR 000121

Ms. Cheryl Sue Macumber
August 23, 2010
Page Two


I hope this information is helpful.  You may wish to contact an attorney for assistance in obtaining the required documentation from the Arkansas Child Support Enforcement Office.

Sincerely,

Leonard Higgins
Comptroller's Judiciary Section

2

RMR 000122



**STATE OF ARKANSAS**
**Department of Finance**
**and Administration**

**CHILD SUPPORT ENFORCEMENT**
Post Office Box 637
Berryville, Arkansas 72616
Phone: (870) 423-2979
Toll Free(877) 900-1514
Fax: (870) 423-4635
http://www.state.ar.us/dfa

RECEIVED

SEP 0 7 2010

JUDICIARY

August 27, 2010

Cheri Macumber

RE:    Child Support Case #

Dear Ms. Macumber,

    I have enclosed a copy of the arrears calculation for the above referenced case. OCSE records indicate only two payments received in 1997. The only order that I located was your divorce decree, in which he was ordered to pay $100 per month for one child,

Sincerely,

Denise Hutchison
Child Support Supervisor I

*[handwritten note:]* Not Closene in 2002
Amount Based on our Rungs.
No Active Case — Cheri
Would need to Open Case —
Unable Ain Cree SW — Chw
One 27 -

RMR 000123

IN THE CHANCERY COURT OF BOONE COUNTY, ARKANSAS

CHERI SUE PHILLIPS,                                    PLAINTIFF

    Vs.            No. E-77-337                          II-200

STEVEN CHARLES PHILLIPS,                                DEFENDANT

### DECREE OF DIVORCE

NOW, on this 2nd day of February, 1978, comes on for hearing the above styled cause, and same is submitted upon the oral testimony of plaintiff and witness on her behalf, the official file, statement of counsel and other matters and things before the Court, from all of which the Court finds:

That the parties hereto are residents of Boone County, Arkansas, the defendant presently being in the military service in Germany; that the defendant was duly notified by publication and by Attorney Ad Litem, such proof of publication and Report of Attorney Ad Litem being filed herein; that the Court has jurisdiction of the parties and subject matter.

That the plaintiff has alleged and established by competent testimony just and proper grounds for divorce and a decree of absolute divorce should be entered in her favor.

That to this marriage was born one child, namely ███████ that said child is presently in the care and custody of the plaintiff and she is fit and proper person to continue the care and custody of said child, subject to the defendant's right of reasonable visitation with said child. That the defendant shall pay to the plaintiff for the support of said child the sum of $100.00 each month.

That the defendant should return immediately to plaintiff three boxes of her personal items, which she left in Germany.

IT IS, THEREFORE, BY THE COURT, Considered, Ordered, Adjudged and Decreed that plaintiff, Cheri Sue Phillips, should be and she is hereby granted a decree of absolute divorce from the defendant, Steven Charles Phillips; that the plaintiff is awarded the care and custody of the minor child of the parties, subject to defendant's right of reasonable visitation with said child; that the defendant should be and he is hereby ordered to pay to the plaintiff for the support of said child, the sum

RMR 000124

of $100.00 per month; that the defendant be and he hereby is directed to return immediately to the plaintiff three boxes of her personal items, which she left in Germany.

_Nell Powell Wright_
CHANCERY JUDGE
2/7/78

Filed this _14_ day of _Feb_ 1978
Naomi Parker, Clerk
By _Grace Mebane_ D. C.

201

Cheri S. Phillips VS Steven C. Phillips
Docket # E 77-337   Case # ████████

### 1978

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,100.00 | $0.00 | $1,100.00 |

### 1979

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1980

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1981

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1982

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1983

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

RMR 000126

### 1984

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1985

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1986

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1987

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1988

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1989

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

RMR 000127

### 1990

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1991

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1992

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1993

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | $100.00 | | $100.00 |
| Mar | $100.00 | | $100.00 |
| Apr | $100.00 | | $100.00 |
| May | $100.00 | | $100.00 |
| Jun | $100.00 | | $100.00 |
| Jul | $100.00 | | $100.00 |
| Aug | $100.00 | | $100.00 |
| Sep | $100.00 | | $100.00 |
| Oct | $100.00 | | $100.00 |
| Nov | $100.00 | | $100.00 |
| Dec | $100.00 | | $100.00 |
| TOTAL | $1,200.00 | $0.00 | $1,200.00 |

### 1994

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | $100.00 | | $100.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $100.00 | $0.00 | $100.00 |

### 1995

| | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

RMR 000128

| | | 1996 | | | | | 1997 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Amount Due | Amt Paid | Balance | | | Amount Due | Amt Paid | Balance |
| Jan | | | $0.00 | | Jan | | | $0.00 |
| Feb | | | $0.00 | | Feb | | | $0.00 |
| Mar | | | $0.00 | | Mar | | $110.00 | -$110.00 |
| Apr | | | $0.00 | | Apr | | $110.00 | -$110.00 |
| May | | | $0.00 | | May | | | $0.00 |
| Jun | | | $0.00 | | Jun | | | $0.00 |
| Jul | | | $0.00 | | Jul | | | $0.00 |
| Aug | | | $0.00 | | Aug | | | $0.00 |
| Sep | | | $0.00 | | Sep | | | $0.00 |
| Oct | | | $0.00 | | Oct | | | $0.00 |
| Nov | | | $0.00 | | Nov | | | $0.00 |
| Dec | | | $0.00 | | Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 | | TOTAL | $0.00 | $220.00 | -$220.00 |

| | | 1998 | | | | | 1999 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Amount Due | Amt Paid | Balance | | | Amount Due | Amt Paid | Balance |
| Jan | | | $0.00 | | Jan | | | $0.00 |
| Feb | | | $0.00 | | Feb | | | $0.00 |
| Mar | | | $0.00 | | Mar | | | $0.00 |
| Apr | | | $0.00 | | Apr | | | $0.00 |
| May | | | $0.00 | | May | | | $0.00 |
| Jun | | | $0.00 | | Jun | | | $0.00 |
| Jul | | | $0.00 | | Jul | | | $0.00 |
| Aug | | | $0.00 | | Aug | | | $0.00 |
| Sep | | | $0.00 | | Sep | | | $0.00 |
| Oct | | | $0.00 | | Oct | | | $0.00 |
| Nov | | | $0.00 | | Nov | | | $0.00 |
| Dec | | | $0.00 | | Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 | | TOTAL | $0.00 | $0.00 | $0.00 |

| | | 2000 | | | | | 2001 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Amount Due | Amt Paid | Balance | | | Amount Due | Amt Paid | Balance |
| Jan | | | $0.00 | | Jan | | | $0.00 |
| Feb | | | $0.00 | | Feb | | | $0.00 |
| Mar | | | $0.00 | | Mar | | | $0.00 |
| Apr | | | $0.00 | | Apr | | | $0.00 |
| May | | | $0.00 | | May | | | $0.00 |
| Jun | | | $0.00 | | Jun | | | $0.00 |
| Jul | | | $0.00 | | Jul | | | $0.00 |
| Aug | | | $0.00 | | Aug | | | $0.00 |
| Sep | | | $0.00 | | Sep | | | $0.00 |
| Oct | | | $0.00 | | Oct | | | $0.00 |
| Nov | | | $0.00 | | Nov | | | $0.00 |
| Dec | | | $0.00 | | Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 | | TOTAL | $0.00 | $0.00 | $0.00 |

RMR 000129

## 2002

| | Amount Due | Amt Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

## 2002

| | Amount Due | Amt Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

## 2003

| | Amount Due | Amt Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

## 2004

| | Amount Due | Amt Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

## 2005

| | Amount Due | Amt Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

## 2006

| | Amount Due | Amt Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

RMR 000130

| 2007 | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

| 2008 | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

| 2009 | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

| 2010 | Amount Due | Amount Paid | Balance |
|---|---|---|---|
| Jan | | | $0.00 |
| Feb | | | $0.00 |
| Mar | | | $0.00 |
| Apr | | | $0.00 |
| May | | | $0.00 |
| Jun | | | $0.00 |
| Jul | | | $0.00 |
| Aug | | | $0.00 |
| Sep | | | $0.00 |
| Oct | | | $0.00 |
| Nov | | | $0.00 |
| Dec | | | $0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 |

THAT THE AMOUNT OF $ 18,980.00 IS DUE AND OWING AS ARREARS FOR THE PERIOD OF Feb 1978 TO AND INCLUDING August 2010

*Denise Hutchison*

PETITIONER

SUBSCRIBED AND SWORN TO BEFORE ME A NOTARY PUBLIC THIS _____ DAY OF _____, 20 _____.

My Commission Expires:

_____

Notary Public

RMR 000131

**ARKANSAS CHILD SUPPORT TRACKING SYSTEM**
**PAYMENT HISTORY REPORT**
**FROM : 01/01/1994 TO : 08/27/2010**

| Case ID : | ███████ | | |
|---|---|---|---|
| Payor ID: | | Name: | PHILLIPS C STEVEN |
| Payee ID: | | Name: | MACUMBER S CHERI |

Docket Number: ███████

**NO of Other Cases Payor is Present: 1**

**Collection before 08/01/1997**

| Receipt Number | Receipt Date | Receipt Type | Receipt Amount | Check NO |
|---|---|---|---|---|
| 03/14/1997 0025 0077 | 03/12/1997 | 00 | 110.00 | ███████ |
| 04/18/1997 0003 0016 | 04/16/1997 | 00 | 110.00 | |

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

8/27/2010

RMR 000132

## Receipt Type

| Code | Description |
|------|-------------|
| 00 | Regular collection |
| 01 | Prior Collection |
| 02 | IRS Collection |
| 03 | State Revenue Collection |
| 04 | ESD Collection |
| 05 | Advance (Undistributed Excess) |
| 11 | Increase Regular Collections |
| 12 | Increase Advance |
| 13 | Increase ESD |
| 14 | Increase IRS |
| 15 | Increase State Revenues |
| 16 | Increase Prior Collections |
| 21 | Decrease Regular Collections |
| 22 | Decrease Advance |
| 23 | Decrease ESD |
| 24 | Decrease IRS |
| 25 | Decrease State Revenue |
| 26 | Decrease Prior Collections |

## RCT Status LookUp

| Code | Description |
|------|-------------|
| H | Hold |
| I | Identified |
| M | Manual Distribution |
| O | Out Of Balance |
| R | Research |
| S | SHEF Special Handling |
| X | Member Refund |
| Y | Other Party Refund |

## Indicator LookUp

| Code | Description |
|------|-------------|
| AAC | Applied To Another Case (s) |
| HOL | On Hold |
| RNN | Refunded To NCP |
| IUN | Identified But Undistributed |
| RSC | Research , Shef , Out Of Balance |
| OPR | Other Party Refund |

## DISB. Hold LookUp

| Code | Description |
|------|-------------|
| A | Address Hold |
| D | Daily Disbursement Hold |
| I | 6 Month Hold |
| F | Future Hold |
| L | Less Than Zero Dollar Hold |
| W | Welfare Distribution Hold |
| P | Deceased Hold |
| E | Foster Care Hold |

DISCLAIMER: PURSUANT TO ARK. CODE ANNO § 9-14-807 CHILD SUPPORT PAYMENT RECORD ISSUED BY THE OFFICE OF CHILD SUPPORT ENFORCEMENT THROUGH ITS STATE DISTRIBUTION UNIT SHALL BE CONSIDERED THE OFFICIAL PUBLIC RECORD OF THE CHILD SUPPORT PAYMENT HISTORY. A REQUEST FOR A CERTIFIED PAY HISTORY MUST BE IN WRITING FROM THE CUSTODIAN, NON-CUSTODIAL PARENT OR THEIR ATTORNEY OF RECORD TO THE STATE DISBURSEMENT UNIT, CERTIFIED PAY HISTORY REQUEST, P. O. BOX 8128, LITTLE ROCK, AR 72203. UNOFFICIAL COPIES OF CHILD SUPPORT PAYMENT RECORDS MAY BE AVAILABLE THROUGH THE LOCAL COURT CLERKS OFFICE.

8/27/2010

RMR 000133



October 6, 2010



Ms. Cheryl Sue Macumber

Re: Steven Phillips Wrongful Imprisonment Claim

Dear Ms. Macumber:

Our office is in receipt of the child support payment records provided to you by the Arkansas Child Support Enforcement Division for case #

Pursuant to Section 103.052(c), Texas Civil Practice and Remedies Code, any compensation for child support payments that Mr. Phillips may be owed, must be paid on his behalf to the state disbursement unit for distribution to the oblige under the child support order. Consequently, any payment from our office based on the Arkansas child support order and payment records would have to be paid directly to the Arkansas Child Support Enforcement Office for distribution.

Our office has contacted the Arkansas Child Support Enforcement Office regarding this matter. Unfortunately, they have notified our office that they cannot accept a payment on behalf of Mr. Phillips for distribution because the case is no longer open. Consequently, at this time we cannot make a payment based on the records you have submitted. If supplemental documentation from the Arkansas Child Support Enforcement Office is submitted which shows that the case has been reopened and that they can accept a payment on behalf of Mr. Phillips for distribution, then any payment determined to be owed will be made in accordance with Section 103.052(c), Texas Civil Practice and Remedies Code. You may wish to contact an attorney for assistance in reopening the case with the Arkansas Child Support Enforcement Office.

Sincerely,

Leonard Higgins
Comptroller's Judiciary Section

## SINKIN LAW FIRM
105 West Woodlawn Avenue
San Antonio, Texas 78212-3457
Tel 210-732-6000  Fax 210-736-2777

STEVEN A. SINKIN

ANDREW ROSS
SAM SINKIN

# TELECOPY COVER SHEET

---

**If there is a problem with transmission, please call 210-732-6000 for retransmission.**

---

TO:     Susan Combs            FAX: (512) 936-6184
         Texas Comptroller of Public Accounts
         Comptroller's Judiciary Section

FROM:    Steven A. Sinkin (by dlf)        DATE: Thursday, May 23, 2013

RE:      Cause No. 2013-CI-08709
        **Cheri Sue Phillips v. Steven Charles Phillips**
        In the 438th District Court of Bexar County, Texas
        **REGISTRATION AND ENFORCEMENT OF SUPPORT ORDER UNDER UIFSA**
        Our File No. 5898

Number of pages including this cover page: 7

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original to us by mail without making a copy. Thank you.

**Discussion:** Enclosed please find the Request for Registration and supporting documents, filed in District Court late yesterday. Please note paragraph 6 of the Request for Registration.

RMR 000135

Filed
13 May 22 P5:28
Donna Kay McKinney
District Clerk
Bexar District
Accepted by:
Deborah Garay

STEVEN A. SINKIN

ANDREW ROSS
SAN ANTONIO

May 22, 2013

Hon. Donna K. McKinney
Bexar County District Clerk
Paul Elizondo Tower
101 W Nueva, Suite 217
San Antonio, TX 78205-3411

Re:     Cause No. E-77-337
        **Cheri Sue Phillips v. Steven Charles Phillips**
        In the Chancery Court of Boone County, Arkansas
        **REQUEST FOR REGISTRATION OF SUPPORT ORDER UNDER UIFSA**
        Our File No. 5898

Dear Sir or Madam:

This is a formal request under the provisions of the Uniform Interstate Family Support Act

("UIFSA"), Texas Family Code §§ 159.001 et seq., for registration and enforcement of the enclosed

"Decree of Divorce" issued by the Chancery Court of Boone County, Arkansas on February 7, 1978.

1.      Please register and enforce the enclosed "Decree of Divorce."

2.      I am enclosing 3 copies of the judgment, one of which is a certified copy, of that judgment dated February 7, 1978, which remains in effect. This is the controlling Order.

3.      I enclose one original and one true copy of sworn statement of the person requesting registration that as of May 13, 1013, the amount owed as arrearage under the judgment is $301,199.26.

4.      The following information is provided concerning the Obligor:

        Name: Steven Charles Phillips
        Address████████████████████████
        Date of Birth: ████ █████
        Social Security Number: ███████

5.      The party seeking registration of this final judgment is Cheryl Sue Macumber of ████████
        ████████████████████████████████ and the Sinkin Law Firm, 105 West
        Woodlawn, San Antonio, Texas, 78212.

RMR 000136

6.  The party seeking registration of this final judgment also asserts a child support lien against any and all funds due obligor by reason of Sec. 103.001, et seq, Texas Civil Practice and Remedies Code.

7.  Please issue notice as required by law to the Obligor, Steven Charles Phillips at his residence address: ████████████████████

    If you have any questions regarding the above, please feel free to contact me at your earliest convenience.

                                  Sincerely yours,

                                  Steven A. Sinkin
                                  Attorney

SAS/dlf
Enclosures
Copy:   Susan Combs, Texas Comptroller of Public Accounts
        Comptroller's Judiciary Section
        P.O. Box 13528
        Austin, TX 78711-3528
        Via Fax: 512-936-6184 and
        Email: judiciary@cpa.state.tx.us

RMR 000137

# REGISTRATION INFORMATION

Obligor:    Name:    **Steven Charles Phillips**

Address:    ██████████████████████

Date of birth: ████ ██    ██████
Social Security number: ██████████

Obligee:    Name:    **Cheryl Sue Macumber**

Address:    ██████████████████████

The order to be registered is the "Decree of Divorce" issued by the Chancery Court of Boone County, Arkansas on February 7, 1978.

The order is registered in the following states: None.

Description and location of any property not exempt from execution: all property not exempt under the by law.

## Verification

_X___    I am the party seeking registration.

_____    I am the custodian of the records for this order.

I have personal knowledge that the following is true and correct: The child support arrearages due and owing under the Decree of Divorce sought to be registered is $301,199.26 as of May 13, 1013.

*Cheryl Sue Macumber*
Cheryl Sue Macumber

SIGNED under oath before me on May _16_, 2013.

*Rhonda F Hill*
Notary Public, State of Arkansas

```
RHONDA F HILL
NOTARY PUBLIC
WASHINGTON COUNTY, ARKANSAS
MY COMMISSION EXPIRES 4/1/2019
MY COMM. #12371623
```

IN THE CHANCERY COURT OF BOONE COUNTY, ARKANSAS

CHERI SUE PHILLIPS,                                                    PLAINTIFF

    Vs.       No. *E-77-337*

STEVEN CHARLES PHILLIPS,                                               DEFENDANT

## DECREE OF DIVORCE

NOW, on this 2nd day of February, 1978, comes on for hearing the above styled cause, and same is submitted upon the oral testimony of plaintiff and witness on her behalf, the official file, statement of counsel and other matters and things before the Court, from all of which the Court finds:

That the parties hereto are residents of Boone County, Arkansas, the defendant presently being in the military service in Germany; that the defendant was duly notified by publication and by Attorney Ad Litem, such proof of publication and Report of Attorney Ad Litem being filed herein; that the Court has jurisdiction of the parties and subject matter.

That the plaintiff has alleged and established by competent testimony just and proper grounds for divorce and a decree of absolute divorce should be entered in her favor.

That to this marriage was born one child, namely ███████████ that said child is presently in the care and custody of the plaintiff and she is fit and proper person to continue the care and custody of said child, subject to the defendant's right of reasonable visitation with said child. That the defendant shall pay to the plaintiff for the support of said child the sum of $100.00 each month.

That the defendant should return immediately to plaintiff three boxes of her personal items, which she left in Germany.

IT IS, THEREFORE, BY THE COURT, Considered, Ordered, Adjudged and Decreed that plaintiff, Cheri Sue Phillips, should be and she is hereby granted a decree of absolute divorce from the defendant, Steven Charles Phillips; that the plaintiff is awarded the care and custody of the minor child of the parties, subject to defendant's right of reasonable visitation with said child; that the defendant should be and he is hereby ordered to pay to the plaintiff for the support of said child, the sum

200

RMR 000139

of $100.00 per month; that the defendant be and he hereby is directed to return immediately to the plaintiff three boxes of her personal items, which she left in Germany.

_____
CHANCERY JUDGE

2/7/78

Filed this _14_ day of _26_ 1978

Naomi Parker, Clerk

By_____ D. C.

CLERK'S CERTIFICATE

STATE OF ARKANSAS }ss
County of Baxter

I, RHONDA WATKINS, Circuit Clerk and Recorder in and for the County and State aforesaid, do hereby certify that the foregoing instrument in writing is a true and correct copy of the original _____ page _____ in my office at _____

_____
RHONDA WATKINS, CLERK

By _____
Deputy Clerk

201

RMR 000140

## CLERK'S CERTIFICATE

STATE OF ARKANSAS } ss
    County of Boone

RHONDA WATKINS, Circuit Clerk and Recorder in and for the County and State aforesaid, do hereby certify that the foregoing instrument in writing is a true and correct copy of the original _____ as Recorded in Book at _____ page _____ in my office at Harrison, Arkansas.

    Given under my hand and seal this _____ day of _____, 20___ .

                RHONDA WATKINS, CLERK

By_____ Deputy Clerk

SEAL OF CIRCUIT COURT
BOONE COUNTY AR

RMR 000141

# SINKIN LAW FIRM

105 West Woodlawn Avenue
San Antonio, Texas 78212-3457
Tel 210-732-6000   Fax 210-736-2777

STEVEN A. SINKIN

ANDREW ROSS

SAM SINKIN

RECEIVED

MAY 3 0 2013

JUDICIARY

7004 2510 0003 8651 1252        May 24, 2013

Susan Combs
Comptroller's Judiciary Section
Texas Comptroller of Public Accounts
P.O. Box 13528
Austin, Texas 78711-3528
**Via Telecopier (512) 936-6184**

Re:     Cause No. 2013- CI-08709
        **In the Interest of ███████ Minor Child**
        In the 438th Judicial District Court of Bexar County, Texas
        Our File No. 5898

Dear Ms. Combs:

Enclosed, please find an original **Notice of Child Support Lien**. It is my understanding that **Steven Phillips** is receiving payments pursuant to TCPRC §103 - Compensation to Persons Wrongfully Imprisoned.  Accordingly, immediately upon receipt of this lien, **any payments to Steven Phillips must be immediately frozen**. Additionally, please provide the address of the Obligor to this office as required by § 157.314(d)(1). For your convenience, you may fax the address information to the above number.

Thank you for your prompt attention to this matter. Please contact my legal assistant, Gloria Suarez, if you have any questions.

Until our next communication, I remain

Very truly yours,

Steven A. Sinkin

/gs
cc:     Cheryl Macumber
        Steven Phillips, via 1st Class Mail and CMRRR #7004 2510 0006 4745 4564

RMR 000142

RECEIVED

MAY 3 0 2013

JUDICIARY

Cause No. 2013-CI-08709

| In the Interest | § | In the District Court |
| | § | |
|  | § | 438th Judicial District |
| | § | |
| Minor Child | § | Bexar County, Texas |

## Notice of Child Support Lien

TO:    Susan Combs
       Comptroller's Judiciary Section
       Texas Comptroller of Public Accounts
       P.O. Box 13528
       Austin, Texas 78711-3528

Obligor: **Steven Phillips**

Address:

SSN:
Driver's Lic. No.
DOB:

Obligee: **Cheryl Macumber**

Child and Date of Birth:

OAG Case No: **None**

Current monthly child support obligation (if any). This amount is separate and in addition to the past due support set forth herein:

$0

Amount of child-support arrears:

**$301,199.26 as of May 3, 2013**

Date of order or writ that determined arrears:

July 2, 1978

Manner in which the child support arrears were determined:

The court order establishing the child support obligation, payments made in compliance with the court order and the interest rate applicable at the time payments were due

Rate of interest on arrears:

Interest rate in effect at time obligation accrued until 12/31/2001; thereafter at 6 percent

The lien is asserted by **Cheryl Macumber**, Obligee, and the **Sinkin Law Firm**, 105 West Woodlawn, San Antonio, Texas 78212-3457.

This child support lien attaches to all nonexempt real and personal property of **Steven Phillips** and any payments due by the State of Texas to **Steven Phillips** including but not limited to any claims, compensation, settlements, judgments, payments or recovery under TCPRC §103.001, §103.052, §103.053, §103.151 and §103.152 that **Steven Phillips** has against the State of Texas. Any ordered child support not timely paid in the future constitutes a final judgment for the amount due and owing, including interest, and accrues up to an amount that may not exceed the lien amount pursuant to Texas Family Code § 157.313(10). By the signature set forth below, I certify that a copy of this Notice of Child Support Lien has been provided to the Obligor.

The Obligor is notified that he may dispute the arrearage amount by filing suit under Texas Family Code §157.323.

It is anticipated that additional arrears will accrue, and, on judicial foreclosure of this lien, the Court will be requested to confirm all amounts then due.

> **Sinkin Law Firm**
> 105 West Woodlawn Avenue
> San Antonio, Texas 78212-3457
> (210) 732-6000 Telephone
> (210) 736-2777 Telecopier
>
> By: _____
> **Steven A. Sinkin**
> State Bar No. 18438700
> **Andrew Ross**
> State Bar No. 24070529
> **Sam Sinkin**
> State Bar No. 24076901

RMR 000144

**Verification**

STATE OF TEXAS        §
COUNTY OF BEXAR       §

Before me, the undersigned notary, on this day personally appeared Steven A. Sinkin, a person whose identity is known to me. After I administered an oath to him, upon his oath he deposes and states he is competent to make this verification, has personal knowledge of the facts and statements contained in this Notice of Child Support Lien and the facts and statements contained in this document are true and correct.

_____
Steven A. Sinkin

Sworn to and subscribed before me by Steven A. Sinkin on May 24, 2013.

GLORIA SUAREZ
My Commission Expires
September 1, 2013

_____
Notary Public in and for the State of Texas

RMR 000145

June 3, 2013

Steven A. Sinkin                                                    ***Via Certified Mail, Return Receipt Requested***
Sinkin Law Firm
105 West Woodlawn Avenue
San Antonio, Texas 78212-3457

 Re: Notice of Child Support Lien: Cause No. 2013-CI-08709; *Cheri S. Phillips v. Steven C. Phillips*, , 438th Judicial District, Bexar County, Texas

Dear Mr. Sinkin:

 The Comptroller of Public Accounts ("the Comptroller") is in receipt of your letter dated May 24, 2013 and the Notice of Child Support Lien attached thereto. This letter is to inform you that the Comptroller is not able to comply with your request to freeze annuity payments made pursuant to Chapter 103 of the Texas Civil Practice and Remedies Code to Steven Phillips for the reasons set forth herein.

 The State of Texas and its agencies, including the Comptroller, possess sovereign immunity from liability, suit, and any attempts to control State action. The Comptroller is immune from writs of garnishment, judgment liens, and attachment proceedings because such actions subject the Comptroller to suit and interfere with the Comptroller's ability to carry out her statutory duties. *See* Tex. Prop. Code Ann. § 43.002(b); *Morris v. Tex. Dep't of Corr.*, 762 S.W.2d 667, 669-670 (Tex. App.—Tyler 1988, no pet.); *Wallace County Water Control and Improvement v. Abendorth*, 142 Tex. 320, 322-23 (Tex. 1944).

 Furthermore, the Comptroller is statutorily obligated to make annuity payments under Chapter 103 of the Texas Civil Practice and Remedies Code, and the Comptroller's statutory authority to withhold payments is also governed by the Government Code. The Comptroller's authority to withhold payments does not include the authority to withhold payment in response to a private child support lien. Tex. Gov't Code Ann. § 403.055.

 However, based on the contents of your letter, it appears that your client is seeking payment for past-due child support from Steven Phillips, who receives compensation for time spent wrongfully imprisoned pursuant to Chapter 103 of the Texas Civil Practice and Remedies Code. Please be advised that in addition to annuities paid to wrongfully imprisoned individuals, Chapter 103 also provides a mechanism for the payment of certain child support obligations. Section 103.052(a)(2) permits payment to be made by the Comptroller to the state disbursement unit for distribution to a child support obligee for child support that became due and interest on child support arreages that accrued during the time the wrongfully imprisoned individual was in prison.

RMR 000146

To be able to make such payments, the Comptroller must receive sufficient information, such as the information required by Section 103.051(a)(6), to accurately determine the amount of compensation owed to a child support obligee. Once the Comptroller verifies that amount with the child support service provider of the state from which the divorce decree was issued, the Comptroller is able to issue a lump-sum payment pursuant to Section 103.052(c). Section 103.052(c), requires that any compensation for child support payments that Mr. Phillips is owed, be paid on his behalf to the state disbursement unit for distribution to the obligee under the child support order.

Feel free to contact me if you would like to discuss this procedure in greater detail.

Sincerely,

Erika R. Sams, Assistant Attorney General
Financial Litigation, Tax, and Charitable Trusts
Division
Telephone: 512-475-2952
Facsimile: 512-477-2348
Erika.Sams@texasattorneygeneral.gov
*Attorney for Susan Combs, Comptroller of Public
Accounts for the State of Texas*

ERS:lje

Cc:     Client

RMR 000147

# Donna Kay McKinney

District Clerk  Bexar County

## FAX TRANSMISSION COVER SHEET

Date: JULY 2, 2013

TO: LAURA EDWARDS
Fax #: 512-477-2348

From: ROSANNE MEDELLIN
District Clerk's Office
Recording Department
Tel: (210) 335-2577    Fax #:  (210) 335-0536

Page 1 of 5 including coversheet

Comments:  ORDER ON CASE#2013-CI-08709

This Information in this facsimile is privileged and confidential and intended only for the use of the above named recipient, their agent or someone designated by recipient to represent recipient. Dissemination, distribution or copying of this/these documents is prohibited without permission of the recipient. If you have received this transmission in error, please notify sender at above Tel number and please return this miss-received transmission to the address below via the U.S. Postal Service.

Paul Elizondo Tower, 101 W. Nueva, Suite 217, San Antonio, Texas 78205
www.bexar.org/dc



2013CI08709 -0436

No. 2013-CI-08709

| In the Interest | § | In the District Court |
| | § | |
| ███████████ | § | 438th Judicial District |
| | § | |
| Minor Child | § | Bexar County, Texas |

### Order Registering Judgment Under UIFSA and on Arrears

On June 28, 2013, came on to be heard this case all matters of law and fact were submitted to the Court. The Court finds it has jurisdiction of the parties and the subject matter of this case. All persons entitled to notice were properly notified. A record of the arguments and evidence was made.

The Court finds that on or about May 30, 2013, **Steven Phillips** was duly and properly served with process in this cause, that the return has been on file for over ten (10) days, that **Steven Phillips** has not answered and has wholly made default.

The Court finds that on or about May 30, 2013, **Steven Phillips** was served via certified mail, return receipt requested, and regular mail the Notice of Application for Judicial Writ of Withholding. A verified motion to stay was not filed within ten days by **Steven Phillips**.

**IT IS ORDERED** that the "Decree of Divorce" issued by the Chancery Court of Boone County, Arkansas on February 7, 1978 and filed in this cause be and is registered and is a final judgment of this Court under the provisions of the Uniform Interstate Family Support Act.

**IT IS ORDERED** that **Cheryl Macumber** is granted and rendered an order for child support arrearages, including accrued interest against **Steven Phillips** in the amount of $304,861.74 as of June 28th, 2013, the date of rendition of this judgment, such judgment bearing interest at 10 percent interest compounded annually until the date the judgment is paid, and is rendered on June 28, 2013.

*Attorney's Fees*

**IT IS ORDERED** that a judgment for attorney's fees of $30,400.00 is taxed as costs against

RMR 000149

Steven Phillips, and Steven Phillips is ORDERED to pay those fees by cash, cashier's check or money order directly to Steven A. Sinkin at the Sinkin Law Firm, 105 West Woodlawn, San Antonio, Texas 78212. The attorneys may enforce this order for fees in the attorneys' own name and utilize all child support enforcement remedies for the collection of these attorney's fees. Such judgment bearing interest at the maximum rate provided by law from June 28th, 2013, until paid.

In the event of an unsuccessful appeal (direct or indirect) to the Court of Appeals by Steven Phillips an additional judgment of $25,000.00 for attorney's fees is granted in favor of Steven A. Sinkin and the Sinkin Law Firm against Steven Phillips. In the event of an unsuccessful petition for review or indirect appeal to the Supreme Court of Texas by Steven Phillips, an additional judgment of $17,500.00 for attorney's fees is granted in favor of Steven A. Sinkin and the Sinkin Law Firm and against Steven Phillips. In the event the petition for review or indirect appeal to the Supreme Court of Texas by Steven Phillips is granted and ultimately unsuccessful, an additional judgment of $15,000.00 for attorney's fees is granted in favor of Steven A. Sinkin and the Sinkin Law Firm and against Steven Phillips. In the event of the filing of a petition for bankruptcy by Steven Phillips, an additional judgment of $7,500.00 for attorney's fees is granted in favor of Steven A. Sinkin and the Sinkin Law Firm and against Steven Phillips for the collection of child support. The attorneys may enforce this order for fees in the attorneys' own name and utilize all child support enforcement remedies for collection of these attorney fees. Such judgment bearing interest at the maximum rate provided by law.

IT IS ORDERED that Cheryl Macumber is awarded a judgment of $359.59 against Steven Phillips for costs of court incurred in the course of this lawsuit, with interest at the maximum rate provided by law from the date of this judgment until paid, for which let execution issue.

IT IS ORDERED that Cheryl Macumber is entitled to issue child support liens, levies and

RESEARCH

writs of income withholding as remedies for the collection of unpaid child support.

IT IS FURTHER ORDERED that Cheryl Macumber is entitled to foreclose all child support liens issued in this case.

*Order for Withholding*

IT IS ORDERED that in addition to all other remedies available for enforcement, the arrearages enumerated above shall be payable through a judicial writ of withholding from earnings for child support within two years or less as mandated by the Texas Family Code. IT IS FURTHER ORDERED that the judicial writ of withholding from earnings for child support shall be binding on Steven Phillips's present employer and all subsequent employers.

IT IS ORDERED that all child support payments be made to:

Sinkin Law Firm
105 West Woodlawn
San Antonio, TX 78212

IT IS ORDERED that Steven Phillips's address for service is █████████████ █████████████. IT IS FURTHER ORDERED that Steven Phillips shall notify in writing this Court; the Sinkin Law Firm at 105 West Woodlawn, San Antonio, Texas 78212-3457, telecopier (210) 736-2777; and the State Case Registry within seven (7) days of any change in address or employment.

IT IS ORDERED that this Order on Arrears is a final and appealable order.

Signed this Date: June 28, 2013.

_Gloria Saldaña_
Judge Presiding

RMR 000151

Approved as to Form & Substance:

**Sinkin Law Firm**
105 West Woodlawn
San Antonio, Texas 78212-3457
(210) 732-6000 Telephone
(210) 736-2777 Telecopier

By: _____
**Steven A. Sinkin**
State Bar No. 18438700
**Andrew Ross**
State Bar No. 24070529
**Sam Sinkin**
State Bar No. 24076901
**Attorneys for Cheryl Macumber**

# Donna Kay McKinney

District Clerk    Bexar County

## FAX TRANSMISSION COVER SHEET

### Date: July 6, 2013

TO: Laura Edwards
Fax #: 512-477-2348

From: ROSANNE MEDELLIN
District Clerk's Office
Recording Department
Tel: (210) 335-2577    Fax #: (210) 335-0536

Page 1 of 7 including coversheet

Comments: ORDERS ON CASE#2013CI08709

This information in this facsimile is privileged and confidential and intended only for the use of the above named recipient, their agent or someone designated by recipient to represent recipient. Dissemination, distribution or copying of this/these documents is prohibited without permission of the recipient. If you have received this transmission in error, please notify sender at above Tel number and please return this miss-received transmission to the address below via the U.S. Postal Service.

Paul Elizondo Tower, 101 W. Nueva, Suite 217, San Antonio, Texas 78205
www.bexar.org/dc

RMR 000153

Filed
13 July 29 P9:49
Donna Kay McKinney
District Clerk
Bexar District
Accepted by:
Monica Hernandez

Cause Number 2013-CI-08709

| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| ███████████████ | § | 438TH JUDICIAL DISTRICT |
| | § | |
| A MINOR CHILD | § | BEXAR COUNTY, TEXAS |

## RESPONDENT'S AMENDED MOTION FOR NEW TRIAL

Respondent asks the court to grant a new trial in the interest of justice and fairness.

### A. Introduction

1. Petitioner is Cheryl Macumber; Respondent is Steven Phillips.

2. Petitioner sued respondent for the registration of a judgment under UIFSA.

### B. Facts

3. The Petitioner and Respondent were divorced by court order on February 7, 1978 in the Chancery Court of Boone County, AR in Cause Number E-77-337. The Court ordered the divorce and Mr. Phillips to pay $100 per month in child support.

4. In 1982, Mr. Phillips was wrongfully convicted of rape in Dallas, TX and sentenced to 30 years in prison. He was later exonerated on October 1, 2008. As a part of his compensation by the State of Texas for those years lost due to no fault of his own, he receives child support compensation benefits.

5. On May 22, 2013, Ms. Macumber filed a petition to register the 1978 Arkansas judgment in Texas. Citation was issued, served via certified mail and Mr. Phillips do not answer. This Court signed a no-answer default judgment on June 28, 2013. Mr. Phillips now files this Motion for New Trial.

6. Respondent attaches affidavits to this motion as Exhibits A-B to establish facts not apparent from the record and incorporates them by reference.

### C. Service of Citation Was Defective

7. If a court signs a default judgment against a respondent who was not properly served, the respondent is deprived of due process. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86-87 (1988); *LBL Oil Co. v. Int'l Power Servs., Inc.*, 777 S.W.2d 390, 390-91 (Tex. 1989).

8. Defects in citation are fatal and a no-answer default judgment cannot stand without strict compliance of the rules of citation. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994).

9. Texas Rule of Civil Procedure 99(b)(11) requires that the citation contain the address of

the court clerk. The citation in this case does not contain the address of the court clerk. This ~~is a fatal defect and this alone requires the default judgment be overturned and a new trial~~ had.

10. Texas Rule of Civil Procedure 99(b)(7) requires the citation show the names of the parties. The citation did not correctly name the petitioner. The citation lists the petitioner as Cheri S. Phillips and the petitioner's correct name is Cheryl Maccumber.

### D. Mistake or Accident

11. When a respondent does not file an answer because of a mistake or an accident, the court should set aside the default judgment and grant a new trial if the respondent can meet the requirements of *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). *Craddock* requires the respondent to do all of the following:

    a.    Demonstrate that the failure to file an answer was not intentional or the result of conscious indifference, but was a mistake or an accident. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009); *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006); *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993); *Craddock*, 133 S.W.2d at 126.

    b.    Set up a meritorious defense. *Dolgencorp*, 288 S.W.3d at 927; *In re R.R.*, 209 S.W.3d at 114; *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966); *Craddock*, 133 S.W.2d at 126. Respondent must allege facts that constitute a defense to petitioner's cause of action and must support the allegations with affidavits or other evidence that set up, not prove, a prima facie defense. *Dolgencorp*, 288 S.W.3d at 928; *Estate of Pollack*, 858 S.W.2d at 392; *Ivy*, 407 S.W.2d at 214.

    c.    Demonstrate that granting a new trial will not cause delay or otherwise injure petitioner. *Dolgencorp*, 288 S.W.3d at 925; *In re R.R.*, 209 S.W.3d at 114-15; *Craddock*, 133 S.W.2d at 126.

12. The court should grant a new trial because respondent's failure to answer was not intentional, but was accidental. Mr. Phillips received the certified mail from the court clerk but set it aside, never opened it, and it became mixed up with and lost among other legal paperwork from other cases. Mr. Phillips did not believe that he was being served with a lawsuit.

13. Also, Mr. Phillips did not have reason to believe he was being sued because he had been in talks with the Attorney General and the Texas Comptroller's Office about his outstanding child support and believed it would be handled through the Attorney General's Office. *In re R.R.*, 209 S.W.3d at 115 (Respondent failed to answer a termination suit because she had been in contact with CPS concerning her child. This negated conscious indifference.). Had Mr. Phillips known he was being sued he would have answered and appeared.

14. The court should grant a new trial because respondent has the following meritorious defenses.

RMR 000155

a. The attorney fees awarded in this case are neither necessary nor reasonable. This Court awarded the petitioner's attorney over $30,000 in attorney fees. The record is void of any action taken by the petitioner other than filing a petition for registration and filing a default judgment. This does not support an award that large.

b. Because Mr. Phillips was wrongfully incarcerated, this is a case of first impression and precedent of this nature should not be made without full consideration by the Court.

c. The Petitioner filed this suit under UIFSA outside of the statute of limitations period. The Petitioner wishes to enforce a child support order by registering it under UIFSA. UIFSA § 159.604(b) of the Texas Family Code states that the statute of limitations for a petition for arrearages by registration of a child support order is the longer of Texas law or the issuing state. This order was issued by Arkansas, which has a 5-year statute of limitations (see Ark. Rev. Stat. Ann. § 9-14-236 (2010)), and Texas has a 10-year statute of limitations. Tex. Fam. Code § 157.005(b). The Texas limitations period applies. This suit must be filed on or before the child turns 28.

The Arkansas order was issued in 1978 and named ███████ s the child of the marriage. Therefore the latest conceivable date this suit could be filed was in 2006. This suit was not filed until 2013. This suit was filed outside the statute of limitations period. Limitations is a meritorious defense.

14. The court should grant a new trial because a new trial will not cause delay or otherwise injure petitioner. Respondent is ready for trial and willing to reimburse petitioner for all reasonable expenses incurred in obtaining the default judgment.

### E. Prayer

15. Respondent prays this Court set this Motion for a hearing. Respondent further prays that in the interest of justice and fairness, the court to grant a new trial.

Respectfully Submitted,

**STICKELS AND ASSOCIATES, P.C.**

Tim Robinson, J.D.
SBN 24069040
770 N. Fielder Rd.
Arlington, TX 76012
Phone: 817-479-9282
Fax: 817-622-8071
tim.robinson@stickelslaw.com

RMR 000156

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served by facsimile to all known counsel record on the ___29___ day of ___July___ ,2013.

_____
Tim Robinson

RMR 000157

NCP Name:    *STEVEN PHILLIPS*
CP Name:     *CHERYL MACUMBER*
OAG Number:  ████████
LAC:         **INTE**

CAUSE NUMBER 2013-CI-08709

|  |  |  |
|---|---|---|
| IN THE INTEREST OF | § | IN THE 438TH *JUDICIAL DISTRICT COURT* |
| ████████ | § | OF |
| A CHILD | § | *BEXAR* COUNTY, TEXAS |

## INTERVENTION

1.   The ATTORNEY GENERAL, representing the State of Texas, files this pleading pursuant to Texas Family Code Chapter 231 for which discovery is intended to be conducted under Level 2 of Rule 190, Texas Rules of Civil Procedure.

### THE ATTORNEY GENERAL'S RIGHT TO INTERVENE

2.   The ATTORNEY GENERAL, pursuant to Texas Family Code § 102.009, is a necessary party because this is an action to establish, modify, or enforce a support right assigned to the ATTORNEY GENERAL pursuant to Texas Family Code Chapter 231.

### JURISDICTION

3.   This Court has continuing jurisdiction of the children the subject of this suit because of prior proceedings.

### CHILDREN

4.   The following child is the subject of this suit:

| Name | Sex | DOB | Birthplace |
|---|---|---|---|
| ████████ | F | ████ | HARRISON, AR |

No property, other than personal effects, is owned by any child the subject of this suit.

### PERSONS ENTITLED TO NOTICE

5.   The *mother* of the child is *CHERYL MACUMBER*. The ATTORNEY GENERAL will serve *CHERYL MACUMBER* with this pleading, by and through her attorney of record, pursuant to Rule 21a, Texas Rules of Civil Procedure.

6.   The *father* of the child is *STEVEN PHILLIPS*. The ATTORNEY GENERAL will serve *STEVEN PHILLIPS* with this pleading, by and through his attorney of record, pursuant to Rule 21a, Texas Rules of Civil Procedure.

### PRAYER

The ATTORNEY GENERAL prays that the Court grant all relief requested herein. The ATTORNEY GENERAL prays for general relief.

Document scanned as
filed.

Respectfully submitted,

Greg Abbott
Attorney General of Texas

Daniel T. Hodge
First Assistant Attorney General

Randolph V. Gonzalez - SBN: 08131200
Melissa Ramos Munoz - SBN: 00786186
Attorney of Record
Child Support Division
*CHILD SUPPORT UNIT 0201*
*3460 NORTHEAST PARKWAY*
*SAN ANTONIO TX 78218*
Telephone No. *210-804-6416*
Fax No. *210-930-3625*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on the below listed parties or their representatives pursuant to Rule 21a, Texas Rules of Civil Procedure, on the 29th day of July, 2013.

*RANDOLPH V. GONZALEZ*
*Attorney of Record*

**Party:**

CHERYL MACUMBER

STEVEN PHILLIPS

**Attorney for Party:**

STEPHEN A SINKIN
Sinkin Law Firm
105 W. Woodlawn Avenue
San Antonio, TX 78212

TIM ROBINSON
Stickels and Associates, P.C.
770 N. Fielder Rd.
Arlington, TX 76012

RMR 000159

September 10, 2013

COPY

Mr. Steven C. Phillips

Dear Mr. Phillips:

In 2009, the Comptroller approved your application for wrongful imprisonment compensation filed under Chapter 103 of the Texas Civil Practice and Remedies Code ("the Tim Cole Act"). In addition to compensation for time spent wrongfully imprisoned, the Tim Cole Act also provides compensation to wrongfully imprisoned individuals for child support payments owed by the person on whose imprisonment the claim is based that became due and interest on child support arrearages that accrued during the time served in prison but were not paid. As a part of your 2009 application, you sought compensation for child support owed to Ms. Cheryl Macumber.

In 2009, the Comptroller was unable to satisfy your claim for Ms. Macumber's child support because the Comptroller did not have sufficient information to determine the amount owed. In addition, Section 103.052(c) requires that child support payments under the Tim Cole Act be made through the state disbursement unit, and the Arkansas state disbursement unit was unwilling to accept Ms. Macumber's payment because they had no records of child support owed. Now, in light of new information and the registration of the child support order in Texas, which permits the Texas state disbursement unit to distribute the payment to Ms. Macumber, the Comptroller can satisfy your administrative claim and pay to Ms. Macumber, via the Texas state disbursement unit, amounts payable under Section 103.052(a)(2) of the Tim Cole Act.

The Comptroller has determined that $18,593.23 is payable under Section 103.052(a)(2) of the Tim Cole Act to Ms. Macumber. The attached spreadsheet details the calculation of this amount. The payment will be paid on your behalf in a lump-sum payment to the Texas state disbursement unit for distribution to Ms. Macumber. Please be advised that this amount of $18,593.23 in past due child support and interest (which includes all interest that is due) is the proper amount of child support that has been calculated in accordance with appropriate law, and is the only amount that the Comptroller is statutorily authorized to pay. Any other amounts ordered to be paid by you to Ms. Macumber are your obligation to pay or dispute.

Pursuant to Section 103.051(d) of the Tim Cole Act, you have 30 days in which you may file an application to cure. If you have any questions or need additional information, please contact the Comptroller's Judiciary Section by e-mail at leonard.higgins@cpa.state.tx.us or by phone at 1-800-531-5441, extension 6-6100.

Sincerely,

Leonard Higgins
Comptroller's Judiciary Section

cc: Tim Robinson

RMR 000160

| date | monthly support obligation | payment | EOM principal balance | Principal that accrues interest | EOM interest accrual | EOM interest balance | EOM arrears total | NOTES: |
|---|---|---|---|---|---|---|---|---|
| 06/04/82 | | | | | | | | |
| 06/14/82 | $100.00 | | $100.00 | | | $0.00 | $100.00 | Payment Due Date = 14th of month |
| 07/14/82 | $100.00 | | $200.00 | | | $0.00 | $200.00 | |
| 08/14/82 | $100.00 | | $300.00 | | | $0.00 | $300.00 | |
| 09/14/82 | $100.00 | | $400.00 | | | $0.00 | $400.00 | |
| 10/14/82 | $100.00 | | $500.00 | | | $0.00 | $500.00 | |
| 11/14/82 | $100.00 | | $600.00 | | | $0.00 | $600.00 | |
| 12/14/82 | $100.00 | | $700.00 | | | $0.00 | $700.00 | |
| 01/14/83 | $100.00 | | $800.00 | | | $0.00 | $800.00 | |
| 02/14/83 | $100.00 | | $900.00 | | | $0.00 | $900.00 | |
| 03/14/83 | $100.00 | | $1,000.00 | | | $0.00 | $1,000.00 | |
| 04/14/83 | $100.00 | | $1,100.00 | | | $0.00 | $1,100.00 | |
| 05/14/83 | $100.00 | | $1,200.00 | | | $0.00 | $1,200.00 | |
| 06/14/83 | $100.00 | | $1,300.00 | | | $0.00 | $1,300.00 | |
| 07/14/83 | $100.00 | | $1,400.00 | | | $0.00 | $1,400.00 | |
| 08/14/83 | $100.00 | | $1,500.00 | | | $0.00 | $1,500.00 | |
| 09/14/83 | $100.00 | | $1,600.00 | | | $0.00 | $1,600.00 | |
| 10/14/83 | $100.00 | | $1,700.00 | | | $0.00 | $1,700.00 | |
| 11/14/83 | $100.00 | | $1,800.00 | | | $0.00 | $1,800.00 | |
| 12/14/83 | $100.00 | | $1,900.00 | | | $0.00 | $1,900.00 | |
| 01/14/84 | $100.00 | | $2,000.00 | | | $0.00 | $2,000.00 | |
| 02/14/84 | $100.00 | | $2,100.00 | | | $0.00 | $2,100.00 | |
| 03/14/84 | $100.00 | | $2,200.00 | | | $0.00 | $2,200.00 | |
| 04/14/84 | $100.00 | | $2,300.00 | | | $0.00 | $2,300.00 | |
| 05/14/84 | $100.00 | | $2,400.00 | | | $0.00 | $2,400.00 | |
| 06/14/84 | $100.00 | | $2,500.00 | | | $0.00 | $2,500.00 | |
| 07/14/84 | $100.00 | | $2,600.00 | | | $0.00 | $2,600.00 | |
| 08/14/84 | $100.00 | | $2,700.00 | | | $0.00 | $2,700.00 | |
| 09/14/84 | $100.00 | | $2,800.00 | | | $0.00 | $2,800.00 | |
| 10/14/84 | $100.00 | | $2,900.00 | | | $0.00 | $2,900.00 | |
| 11/14/84 | $100.00 | | $3,000.00 | | | $0.00 | $3,000.00 | |
| 12/14/84 | $100.00 | | $3,100.00 | | | $0.00 | $3,100.00 | |
| 01/14/85 | $100.00 | | $3,200.00 | | | $0.00 | $3,200.00 | |
| 02/14/85 | $100.00 | | $3,300.00 | | | $0.00 | $3,300.00 | |
| 03/14/85 | $100.00 | | $3,400.00 | | | $0.00 | $3,400.00 | |
| 04/14/85 | $100.00 | | $3,500.00 | | | $0.00 | $3,500.00 | |
| 05/14/85 | $100.00 | | $3,600.00 | | | $0.00 | $3,600.00 | |
| 06/14/85 | $100.00 | | $3,700.00 | | | $0.00 | $3,700.00 | |
| 07/14/85 | $100.00 | | $3,800.00 | | | $0.00 | $3,800.00 | |
| 08/14/85 | $100.00 | | $3,900.00 | | | $0.00 | $3,900.00 | |
| 09/14/85 | $100.00 | | $4,000.00 | | | $0.00 | $4,000.00 | |
| 10/14/85 | $100.00 | | $4,100.00 | | | $0.00 | $4,100.00 | |
| 11/14/85 | $100.00 | | $4,200.00 | | | $0.00 | $4,200.00 | |
| 12/14/85 | $100.00 | | $4,300.00 | | | $0.00 | $4,300.00 | |
| 01/14/86 | $100.00 | | $4,400.00 | | | $0.00 | $4,400.00 | |
| 02/14/86 | $100.00 | | $4,500.00 | | | $0.00 | $4,500.00 | |
| 03/14/86 | $100.00 | | $4,600.00 | | | $0.00 | $4,600.00 | |
| 04/14/86 | $100.00 | | $4,700.00 | | | $0.00 | $4,700.00 | |
| 05/14/86 | $100.00 | | $4,800.00 | | | $0.00 | $4,800.00 | |
| 06/14/86 | $100.00 | | $4,900.00 | | | $0.00 | $4,900.00 | |
| 07/14/86 | $100.00 | | $5,000.00 | | | $0.00 | $5,000.00 | |
| 08/14/86 | $100.00 | | $5,100.00 | | | $0.00 | $5,100.00 | |
| 09/14/86 | $100.00 | | $5,200.00 | | | $0.00 | $5,200.00 | |
| 10/14/86 | $100.00 | | $5,300.00 | | | $0.00 | $5,300.00 | |
| 11/14/86 | $100.00 | | $5,400.00 | | | $0.00 | $5,400.00 | |
| 12/14/86 | $100.00 | | $5,500.00 | | | $0.00 | $5,500.00 | |
| 01/14/87 | $100.00 | | $5,600.00 | | | $0.00 | $5,600.00 | |
| 02/14/87 | $100.00 | | $5,700.00 | | | $0.00 | $5,700.00 | |
| 03/14/87 | $100.00 | | $5,800.00 | | | $0.00 | $5,800.00 | |
| 04/14/87 | $100.00 | | $5,900.00 | | | $0.00 | $5,900.00 | |
| 05/14/87 | $100.00 | | $6,000.00 | | | $0.00 | $6,000.00 | |
| 06/14/87 | $100.00 | | $6,100.00 | | | $0.00 | $6,100.00 | |
| 07/14/87 | $100.00 | | $6,200.00 | | | $0.00 | $6,200.00 | |
| 08/14/87 | $100.00 | | $6,300.00 | | | $0.00 | $6,300.00 | |
| 09/14/87 | $100.00 | | $6,400.00 | | | $0.00 | $6,400.00 | |
| 10/14/87 | $100.00 | | $6,500.00 | | | $0.00 | $6,500.00 | |
| 11/14/87 | $100.00 | | $6,600.00 | | | $0.00 | $6,600.00 | |
| 12/14/87 | $100.00 | | $6,700.00 | | | $0.00 | $6,700.00 | |
| 01/14/88 | $100.00 | | $6,800.00 | | | $0.00 | $6,800.00 | |
| 02/14/88 | $100.00 | | $6,900.00 | | | $0.00 | $6,900.00 | |

RMR 000161

| Date | Payment | Balance | | (illegible) | Interest | Total | Notes |
|---|---|---|---|---|---|---|---|
| 03/14/88 | $100.00 | $7,000.00 | | | $0.00 | $7,000.00 | |
| 04/14/88 | $100.00 | $7,100.00 | | | $0.00 | $7,100.00 | |
| 05/14/88 | $100.00 | $7,200.00 | | | $0.00 | $7,200.00 | |
| 06/14/88 | $100.00 | $7,300.00 | | | $0.00 | $7,300.00 | |
| 07/14/88 | $100.00 | $7,400.00 | | | $0.00 | $7,400.00 | |
| 08/14/88 | $100.00 | $7,500.00 | | | $0.00 | $7,500.00 | |
| 09/14/88 | $100.00 | $7,600.00 | | | $0.00 | $7,600.00 | Unless otherwise indicated, |
| 10/14/88 | $100.00 | $7,700.00 | | | $0.00 | $7,700.00 | EOM interest entry for each line |
| 11/14/88 | $100.00 | $7,800.00 | | | $0.00 | $7,800.00 | represents interest accruals from |
| 12/14/88 | $100.00 | $7,900.00 | | | $0.00 | $7,900.00 | 15th of previous month through |
| 01/14/89 | $100.00 | $8,000.00 | | | $0.00 | $8,000.00 | date in Column A. |
| 02/14/89 | $100.00 | $8,100.00 | | | $0.00 | $8,100.00 | |
| 03/14/89 | $100.00 | $8,200.00 | $100.00 | | $0.00 | $8,200.00 | |
| 04/14/89 | $100.00 | $8,300.00 | $200.00 | | $0.83 | $8,300.83 | one month's interest on 3/14 accrual |
| 05/14/89 | $100.00 | $8,400.00 | $300.00 | | $2.50 | $8,402.50 | one month's interest on 3/14 and 4/14 |
| 06/14/89 | $100.00 | $8,500.00 | $400.00 | | $5.00 | $8,505.00 | etc. |
| 07/14/89 | $100.00 | $8,600.00 | $500.00 | | $8.33 | $8,608.33 | |
| 08/14/89 | $100.00 | $8,700.00 | $600.00 | | $12.50 | $8,712.50 | |
| 09/14/89 | $100.00 | $8,800.00 | $700.00 | | $17.50 | $8,817.50 | |
| 10/14/89 | $100.00 | $8,900.00 | $800.00 | | $23.33 | $8,923.33 | |
| 11/14/89 | $100.00 | $9,000.00 | $900.00 | | $30.00 | $9,030.00 | |
| 12/14/89 | $100.00 | $9,100.00 | $1,000.00 | | $37.50 | $9,137.50 | |
| 01/14/90 | $100.00 | $9,200.00 | $1,100.00 | | $45.83 | $9,245.83 | |
| 02/14/90 | $100.00 | $9,300.00 | $1,200.00 | | $55.00 | $9,355.00 | |
| 03/14/90 | $100.00 | $9,400.00 | $1,300.00 | | $65.00 | $9,465.00 | |
| 04/14/90 | $100.00 | $9,500.00 | $1,400.00 | | $75.83 | $9,575.83 | |
| 05/14/90 | $100.00 | $9,600.00 | $1,500.00 | | $87.50 | $9,687.50 | |
| 06/14/90 | $100.00 | $9,700.00 | $1,600.00 | | $100.00 | $9,800.00 | |
| 07/14/90 | $100.00 | $9,800.00 | $1,700.00 | | $113.33 | $9,913.33 | |
| 08/14/90 | $100.00 | $9,900.00 | $1,800.00 | | $127.50 | $10,027.50 | |
| 09/14/90 | $100.00 | $10,000.00 | $1,900.00 | | $142.50 | $10,142.50 | |
| 10/14/90 | $100.00 | $10,100.00 | $2,000.00 | | $158.33 | $10,258.33 | |
| 11/14/90 | $100.00 | $10,200.00 | $2,100.00 | | $175.00 | $10,375.00 | |
| 12/14/90 | $100.00 | $10,300.00 | $2,200.00 | | $192.50 | $10,492.50 | |
| 01/14/91 | $100.00 | $10,400.00 | $2,300.00 | | $210.83 | $10,610.83 | |
| 02/14/91 | $100.00 | $10,500.00 | $2,400.00 | | $230.00 | $10,730.00 | |
| 03/14/91 | $100.00 | $10,600.00 | $2,500.00 | | $250.00 | $10,850.00 | |
| 04/14/91 | $100.00 | $10,700.00 | $2,600.00 | | $270.83 | $10,970.83 | |
| 05/14/91 | $100.00 | $10,800.00 | $2,700.00 | | $292.50 | $11,092.50 | |
| 06/14/91 | $100.00 | $10,900.00 | $2,800.00 | | $315.00 | $11,215.00 | |
| 07/14/91 | $100.00 | $11,000.00 | $2,900.00 | | $338.33 | $11,338.33 | |
| 08/14/91 | $100.00 | $11,100.00 | $3,000.00 | | $362.50 | $11,462.50 | |
| 09/14/91 | $100.00 | $11,200.00 | $3,100.00 | | $387.50 | $11,587.50 | |
| 10/14/91 | $100.00 | $11,300.00 | $3,200.00 | | $413.33 | $11,713.33 | |
| 11/14/91 | $100.00 | $11,400.00 | $3,300.00 | | $440.00 | $11,840.00 | |
| 12/14/91 | $100.00 | $11,500.00 | $3,400.00 | | $467.50 | $11,967.50 | |
| 01/14/92 | $100.00 | $11,600.00 | $3,500.00 | | $495.83 | $12,095.83 | |
| 02/14/92 | $100.00 | $11,700.00 | $3,600.00 | | $525.00 | $12,225.00 | |
| 03/14/92 | $100.00 | $11,800.00 | $3,700.00 | | $555.00 | $12,355.00 | |
| 04/14/92 | $100.00 | $11,900.00 | $3,800.00 | | $585.83 | $12,485.83 | |
| 05/14/92 | $100.00 | $12,000.00 | $3,900.00 | | $617.50 | $12,617.50 | |
| 06/14/92 | $100.00 | $12,100.00 | $4,000.00 | | $650.00 | $12,750.00 | |
| 07/14/92 | $100.00 | $12,200.00 | $4,100.00 | | $683.33 | $12,883.33 | |
| 08/14/92 | $100.00 | $12,300.00 | $4,200.00 | | $717.50 | $13,017.50 | |
| 09/14/92 | $100.00 | $12,400.00 | $4,300.00 | | $752.50 | $13,152.50 | |
| 10/14/92 | $100.00 | $12,500.00 | $4,400.00 | | $788.33 | $13,288.33 | |
| 11/14/92 | $100.00 | $12,600.00 | $4,500.00 | | $825.00 | $13,425.00 | |
| 12/14/92 | $100.00 | $12,700.00 | $4,600.00 | | $862.50 | $13,562.50 | |
| 01/14/93 | $100.00 | $12,800.00 | $4,700.00 | | $900.83 | $13,700.83 | |
| 02/14/93 | $100.00 | $12,900.00 | $4,800.00 | | $940.00 | $13,840.00 | |
| 03/14/93 | $100.00 | $13,000.00 | $4,900.00 | | $980.00 | $13,980.00 | |
| 04/14/93 | $100.00 | $13,100.00 | $5,000.00 | | $1,020.83 | $14,120.83 | |
| 05/14/93 | $100.00 | $13,200.00 | $5,100.00 | | $1,062.50 | $14,262.50 | |
| 06/14/93 | $100.00 | $13,300.00 | $5,200.00 | | $1,105.00 | $14,405.00 | |
| 07/14/93 | $100.00 | $13,400.00 | $5,300.00 | | $1,148.33 | $14,548.33 | |
| 08/14/93 | $100.00 | $13,500.00 | $5,400.00 | | $1,192.50 | $14,692.50 | |
| 09/14/93 | $100.00 | $13,600.00 | $5,500.00 | | $1,237.50 | $14,837.50 | |
| 10/14/93 | $100.00 | $13,700.00 | $5,600.00 | | $1,283.33 | $14,983.33 | |
| 11/14/93 | $100.00 | $13,800.00 | $5,700.00 | | $1,330.00 | $15,130.00 | |

RMR 000162

| Date | Payment | | | | | | Notes |
|---|---|---|---|---|---|---|---|
| 12/14/93 | $100.00 | $13,900.00 | $5,800.00 | $47.5 | $1,377.50 | $15,277.50 | |
| 01/14/94 | $100.00 | $14,000.00 | $5,900.00 | $48.33 | $1,425.83 | $15,425.83 | |
| 02/14/94 | $100.00 | $14,100.00 | $6,000.00 | $49.1 | $1,475.00 | $15,575.00 | |
| 03/14/94 | $100.00 | $14,200.00 | $6,100.00 | $50.0 | $1,525.00 | $15,725.00 | |
| 04/14/94 | $100.00 | $14,300.00 | $6,200.00 | $50.83 | $1,575.83 | $15,875.83 | |
| 05/14/94 | $100.00 | $14,400.00 | $6,300.00 | $51.6 | $1,627.50 | $16,027.50 | H.S. Graduation |
| 06/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $1,680.00 | $16,080.00 | |
| 07/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $1,732.50 | $16,132.50 | |
| 08/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $1,785.00 | $16,185.00 | |
| 09/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $1,837.50 | $16,237.50 | |
| 10/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $1,890.00 | $16,290.00 | |
| 11/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $1,942.50 | $16,342.50 | |
| 12/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $1,995.00 | $16,395.00 | |
| 01/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,047.50 | $16,447.50 | |
| 02/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,100.00 | $16,500.00 | |
| 03/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,152.50 | $16,552.50 | |
| 04/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,205.00 | $16,605.00 | |
| 05/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,257.50 | $16,657.50 | |
| 06/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,310.00 | $16,710.00 | |
| 07/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,362.50 | $16,762.50 | |
| 08/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,415.00 | $16,815.00 | |
| 09/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,467.50 | $16,867.50 | |
| 10/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,520.00 | $16,920.00 | |
| 11/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,572.50 | $16,972.50 | |
| 12/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,625.00 | $17,025.00 | |
| 01/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,677.50 | $17,077.50 | |
| 02/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,730.00 | $17,130.00 | |
| 03/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,782.50 | $17,182.50 | |
| 04/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,835.00 | $17,235.00 | |
| 05/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,887.50 | $17,287.50 | |
| 06/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,940.00 | $17,340.00 | |
| 07/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $2,992.50 | $17,392.50 | |
| 08/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,045.00 | $17,445.00 | |
| 09/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,097.50 | $17,497.50 | |
| 10/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,150.00 | $17,550.00 | |
| 10/15/96-10/23 | | | | $15.24 | $3,18x | | interest for 9 days (10/15 to 10/23) RELEASED ON PAROLE ON 23RD |
| 10/24/96 - 11/14/96 | | $14,400.00 | $6,300.00 | $37.26 | $37.26 | $14,437.26 | interest for 22 days (10/24 to 11/14) |
| 12/14/96 | | $14,400.00 | $6,300.00 | $52.50 | $89.76 | $14,489.76 | No amounts between 10/23/96 |
| 01/14/97 | | $14,400.00 | $6,300.00 | $52.50 | $142.26 | $14,542.26 | and 5/13/97 are counted towards |
| 02/14/97 | | $14,400.00 | $6,300.00 | $52.50 | $194.76 | $14,594.76 | Comptroller's total. |
| 03/14/97 | | $14,400.00 | $6,300.00 | $52.50 | $247.26 | $14,647.26 | |
| 3/xx/1997 | $110.00 | $14,400.00 | $6,300.00 | | $117.2 | $14,537.26 | Amount owed by Phillips for |
| 04/14/97 | | $14,400.00 | $6,300.00 | $52.50 | $189.76 | $14,589.76 | $130.51 |
| 4/xx/97 | $110.00 | $14,400.00 | $6,300.00 | | $79.7 | $14,479.76 | |
| 05/13/97 | | $14,400.00 | $6,300.00 | $50.75 | $130.51 | | interest for 29 days TAKEN INTO CUSTODY ON 14TH |
| 05/14/9 | | $14,400.00 | $6,300.00 | $1.75 | $1.5 | | interest for 1 day (5/14) |
| 06/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,217.74 | $17,617.74 | |
| 07/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,270.24 | $17,670.24 | |
| 08/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,322.74 | $17,722.74 | |
| 09/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,375.24 | $17,775.24 | |
| 10/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,427.74 | $17,827.74 | |
| 11/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,480.24 | $17,880.24 | |
| 12/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,532.74 | $17,932.74 | |
| 01/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,585.24 | $17,985.24 | |
| 02/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,637.74 | $18,037.74 | |
| 03/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,690.24 | $18,090.24 | |
| 04/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,742.74 | $18,142.74 | |
| 05/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,795.24 | $18,195.24 | |
| 06/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,847.74 | $18,247.74 | |
| 07/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,900.24 | $18,300.24 | |
| 08/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $3,952.74 | $18,352.74 | |
| 09/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $4,005.24 | $18,405.24 | |
| 10/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $4,057.74 | $18,457.74 | |
| 11/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $4,110.24 | $18,510.24 | |
| 12/14/9 | | $14,400.00 | $6,300.00 | $52.5 | $4,162.74 | $18,562.74 | |
| | | $14,400.00 | $6,300.00 | $30.4 | $4,193.23 | | interest accrual for 18 days |

TOTAL [redacted]

*Assumption: Child support obligation terminates May 31, 1994 (Final Payment 5/14/94)

RMR 000163

 **Texas Comptroller of Public Accounts**

129596923          SEPTEMBER 11, 2013

TREASURY WARRANT NO.

**129596923**

091813 0001 902 9SM40017 DOOOX96511 001
PAYING AGENCY: 512-463-4561 COMPTROLLER - STATE FISCAL

PAY          EIGHTEEN THOUSAND FIVE HUNDRED NINETY THREE DOLLARS          $18,593.23
             AND 23/100

TO          TX STATE DISPURSEMENT UNIT
            NCP:STEVEN CHARLES PHILLIPS ID
            CP: CHERYL MACUMBER
            PO BOX 659417
            SAN ANTONIO, TX  78265-9417

VOID AFTER
08/31/2016

⌐304⌐ ⑆114900164⑈     ⌐129596923⌐

 TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
AUSTIN TX  78774-0100

Special Collections SDU
PO Box 659417
San Antonio, TX 78265-9417

RMR 000164

![Seal of the State of Texas]

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

September 26, 2013

The Honorable Gloria Saldaña                              *Via Federal Express Overnight*
438th Civil District Court
100 Dolorosa, 2nd Floor
San Antonio, Texas 78205

    Re:    *Cheri S. Phillips v. Steven C. Phillips*, Cause No. 2013CI08709

Dear Judge Saldaña:

The Comptroller of Public Accounts of the State of Texas ("the Comptroller") hereby advises the Court of a recent action taken by the Comptroller related to the issue of child support and certain arrearages owed by Steven Phillips to Cheryl Macumber, the parties in the above-referenced lawsuit. On September 10, 2013, the Comptroller granted Mr. Phillips' application for child support payments and interest under the "Tim Cole Act." Tex. Civ. Prac. & Rem. Code § 103.052(a)(2).

The Tim Cole Act gives the Comptroller the duty and the concomitant discretion to determine the amount of compensation owed to the applicant for time spent wrongfully imprisoned. Tex. Civ. Prac. & Rem. Code § 103.051(b). Compensation includes "child support payments owed by the person on whose imprisonment the claim is based that became due and interest on child support arrearages that accrued during the time served in prison but were not paid." Tex. Civ. Prac. & Rem. Code § 103.052(a)(2). Review of the Comptroller's decision is only available by mandamus to the Texas Supreme Court. Tex. Civ. Prac. & Rem. Code § 103.051(e).

The Comptroller determined that Mr. Phillips is entitled to child support compensation in the total amount of $18,593.23. This sum represents the amount of child support arrearages and interest that accrued during Mr. Phillips' time spent in prison from June 4, 1982 to October 23, 1996 and again from May 14, 1997 to December 28, 2007. Tex. Civ. Prac. & Rem. Code § 103.052(a)(2). To determine the amount owed under section 103.052(a)(2), the Comptroller applied the relevant Arkansas laws that govern child support obligations, arrearages, and interest. Tex. Fam. Code § 159.604. On September 11, 2013, the Comptroller issued a warrant for $18,593.23 to the Texas state disbursement unit, as required by section 103.052(c) of the Tim Cole Act, to be distributed to Ms. Macumber.

RMR 000165

Counsel for Mr. Phillips and Ms. Macumber made the Comptroller aware of the default judgment in the above-referenced lawsuit in which Mr. Phillips was ordered to pay $304,861.74 in child support arrearages, including accrued interest, to Ms. Macumber. Because the Comptroller in fulfilling her statutory duty under the Tim Cole Act has determined the amount due for child support obligations, arrearages, and interest, the Comptroller wanted to advise all interested parties and the Court that the amount of $18,593.23 has been paid and is the only 8amount the Comptroller is statutorily authorized to pay.

The Comptroller is unaware of the precise calculation underlying the default judgment of $304,861.74, other than the unchallenged representation by Ms. Macumber. This amount, if properly due and owing, cannot, as explained above, be recovered under the Tim Cole Act. Accordingly, any amounts ordered to be paid by Mr. Phillips under the Order Registering Judgment under UIFSA on Arrears, signed by this Court on June 28, 2013, are solely Mr. Phillips' obligation.

For the Court's information, Mr. Phillips' monthly annuity payment for his time spent wrongfully imprisoned is not subject to garnishment. Pursuant to the Order for Turnover Relief, signed by this Court on July 30, 2013, those monthly payments are currently being sent to Tim Robinson, counsel for Mr. Phillips.

Respectfully,

Erika R. Sams, Assistant Attorney General
Financial Litigation, Tax, and Charitable Trusts Division
Telephone: 512-475-2952
Facsimile: 512-477-2348
Erika.Sams@texasattorneygeneral.gov

CC:   Client
      Steven Sinkin
      Tim Robinson

RMR 000166

# TIM ROBINSON
## ATTORNEY AT LAW
## 6204 SHERBERT DRIVE
## NORTH RICHLAND HILLS, TX 76180

October 9, 2013

Texas State Comptroller of Public Accounts
ATTN: Judiciary Section
P.O. Box 13528
Austin, TX 78711-3528
*Via US Mail*

RE: Steven Phillips Compensation Claim

Dear Sir or Madam

Enclosed please find an application to cure and supportive documentation. Enclosed is a schedule that closely tracks the court order. The judgment amount through June of 2013 was determined by the Court to be $304,861.74 and ordered to accrue interest at 10% compounded annually. To date the interest accrued is $7,621.54 for a total judgment amount of $312,483.28. Through February of 1983 (the month Mr. Phillips was incarcerated) the amount owed was $7,743.71. That makes a total request of $304,739.57 due Mr. Phillips under the Tim Cole Act. Please note that the judgment only states that the judgment amount is for child support and child support arrearages and for no other causes of action Ms. Macumber may have had against Mr. Phillips. I eagerly await your response.

Respectfully Yours,

Tim Robinson

CC: Erika Sams *via email*

RECEIVED
OCT 1 1 2013
JUDICIARY

Phone: 817-408-9777       Email: tim.robinson@lawyer.com       Fax: 817-393-4932

RMR 000167

# REQUEST FOR WRONGFUL IMPRISONMENT COMPENSATION

## COMPTROLLER USE ONLY

| AGY | COBJ | TC | FUND | AY | PCA | APPROVAL | DOCUMENT NUMBER | DOCUMENT AMOUNT |
|-----|------|----|----|----|-----|----------|-----------------|-----------------|
|  |  |  |  |  |  |  |  |  |

**Claimant name and address**

Steven Phillips

| Social Security Number | TDCJ Number |
|---|---|
|  |  |

Mail completed form and documentation to:
**COMPTROLLER'S JUDICIARY SECTION**
P.O. Box 13528
Austin, TX 78711-3528
Call 1-800-531-5441, ext. 6-5985 or (512) 936-5985

Alternate phone number

## REQUIRED DOCUMENTATION

THIS SECTION TO BE COMPLETED BY CLAIMANT

| | | |
|---|---|---|
| A verified copy of pardon / court order showing actual innocence and justifying application. | Enclosed | X |
| A written statement from Texas Department of Criminal Justice verifying length of incarceration in a State prison. | Enclosed | X |
| A written statement verifying the length of incarceration from any Texas County or Municipality where incarcerated in relation to the charges for which claimant is eligible to make the claim. | Enclosed | |
| If applicable, a written statement from Texas Department of Criminal Justice verifying length of time spent on parole. | Enclosed | |
| If applicable, a written statement from the Texas Department of Public Safety verifying registration as a sex offender and length of registration. | Enclosed | |
| A certified copy each child support order , if applicable, under which child support payments became due during the time the claimant served in prison and copies of the official child support payment records described by Section 234.009, Family Code, for that period. | Enclosed | X |
| For proof of birth date provide a copy of birth certificate, or state driver's license, or state ID, or a notarized statement verifying month, day and year of birth. | Enclosed | X |

RECEIVED OCT 11 2013 JUDICIARY

**Total Amount of Claim Supported by the Attached Documentation:** $304,739.57

## CLAIMANT'S CERTIFICATION

I, Steven Phillips _____, do hereby certify that the amount requested is due and payable pursuant to Chapter 103 of the Texas Civil Practice and Remedies Code and I will immediately notify the Comptroller's Judiciary Section in writing of any changes or conditions which will disqualify this payment.

sign here ►

| Claimant Signature | Date |
|---|---|
| Steven C. Phillips | 10 07 13 |

## IF REPRESENTED, CLAIMANT'S LEGAL COUNSEL

| Attorney of Record | Contact Phone Number (Area code and phone number) |
|---|---|
| Tim Robinson | 817-408-9777 |

Address/City/State/zip code
6204 Sherbert Drive North Richland Hills, TX 76180

## COMPTROLLER APPROVAL

I approve this request for payment and to the best of my knowledge this request for payment is true and correct. This payment complies with Chapter 103 of the Texas Civil Practice and Remedies Code.

Audited by:

sign here ►

| Approved by: | Date |
|---|---|
|  |  |

RMR 000168



# Texas Department of Criminal Justice

Brad Livingston
Executive Director

September 15, 2009

Steven Charles Phillips

RE: Phillips, Steven Charles

Dear Ms. Stone,

The files of this Agency have been reviewed on offender Steven Charles Phillips, pursuant to your request.

Offender Phillips was received into TDCJ custody on 2-22-1983 from Dallas County on eight 10-year sentences, two-30-year sentences, and a 40-year sentence. Offender Phillips is charged with Aggravated Assault (4cts.), Burglary of a Habitation (3cts.), Indecency W/Child, Aggravated Rape, and Aggravated Sexual Abuse (2cts.) by the 204th and 194th Judicial District Courts, under cause numbers F82-82743-NKQ, F82-79130-JKQ, F82-86748-NKQ, F82-68990-JKQ, F82-77699-QKQ, **F82-87051-JKQ, F82-79140-JKQ, F82-86866-NKNKQ, F82-77700-QKQ, F82-77162-NKMKQ, F82-77161-NKM**. Offender Phillips is charged for offenses occurring on 5-15-1982, 4-22-1982, and 5-14-1982, with sentencing on 6-11-1984, 8-24-1983, and 8-27-1982. Offender Phillips was released from TDCJ custody on 12-28-2007 on mandatory supervision.

On 10-27-2008 the Court of Criminal Appeals issued mandates on cause numbers F82-79140-JKQ, F82-86866-NKNKQ, F82-7700-QKQ, F82-77162-NKMKQ, and F82-77161-NKM, setting these cases aside.

Offender Phillips served a total of 25-years, 6-months, and 18-days on these cause numbers, and is not under TDCJ jurisdiction.

**Offender Phillips was on mandatory supervision from 12-28-2007 until 10-27-2007, for a period of 9-months, and 29-days.**

Sincerely,

Charley Valdez
PS-III
Offender Time Management
Classification and Records
(936) 437-6380

cc: file

---

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime.*

P.O. Box 99
Huntsville, Texas 77342-0099
www.tdcj.state.tx.us

RMR 000169

2008 WL 4417288
Only the Westlaw citation is currently available.

UNDER TX R RAP RULE 77.3, UNPUBLISHED
OPINIONS MAY NOT BE CITED AS AUTHORITY.

## *OPINION*
**Do Not Publish**
Court of Criminal Appeals of Texas.

Ex parte Steven Charles PHILLIPS, Applicant.

Nos. AP-76010, AP-76013, AP-76011,
AP-76014, AP-76012. | Oct. 1, 2008.

On Applications for Writs of Habeas Corpus, Cause Nos.
F82-77700-Q; F82-77162-Q; F82-79140-Q; F82-86866-Q,
In the 204th District Court from Dallas County and Cause
No. F82-77161-M, In the 194th District Court from Dallas
County.

**Attorneys and Law Firms**

Robert Udashen, for Steven Charles Phillips.

**Opinion**

### *OPINION*

PER CURIAM.

*1 Pursuant to the provisions of Article 11.07 of the
Texas Code of Criminal Procedure, the clerk of the trial
court transmitted to this Court these applications for writs
of habeas corpus. *Ex parte Young,* 418 S.W.2d 824,
826 (Tex.Crim.App.1967). Applicant was convicted of two
aggravated sexual abuse causes, sentenced to forty and thirty
years' imprisonment, indecency with a child, sentenced to ten
years' imprisonment, burglary of a habitation, sentenced to
thirty years' imprisonment, and aggravated rape, sentenced
to ten years' imprisonment. The Fifth Court of Appeals
affirmed his convictions for one of the aggravated sexual
abuse cases and the burglary of a habitation. *Phillips v. State,*
No. 05-83-1058-CR (Tex.App.-Dallas, delivered October 26,
1984) and *Phillips v. State,* No. 05-82-01260-CR (Tex.App.-
Dallas, delivered January 4, 1984). Applicant pleaded guilty
to the other causes and no appeal was taken from those.

Applicant contends that he has newly discovered evidence
that he is actually innocent of these offenses. The trial court
has determined that no rational jury would have convicted
Applicant in light of the new evidence, which was previously
unavailable to Applicant. The evidence, obtained pursuant to
post-conviction DNA testing and investigation, indicates that
it was another individual, and not Applicant, who committed
at least one of these offenses. Applicant is entitled to relief. *Ex
parte Elizondo,* 947 S.W.2d 202, 209 (Tex.Crim.App.1996).

Relief is granted. The judgments in Cause Nos. F82-77700-Q;
F82-77162-Q; F82-79140-Q and F82-86866-Q in the 204th
District Court of Dallas County and Cause No. F82-77161-M
in the 194th District Court of Dallas County are set aside, and
Applicant is remanded to the custody of the Sheriff of Dallas
County to answer the charges against him.

Copies of this opinion shall be sent to the Texas Department
of Criminal Justice-Correctional Institutions Division and
Parole Division.

---

　　　　© 2013 Thomson Reuters. No claim to original U.S. Government Works.

RMR 000170



Texas

DRIVER LICENSE

USA
TX

4d DL ▓▓▓▓▓    9 Class C
1a Iss 01/12/2011    4b Exp ▓▓▓▓
3 DOB ▓▓▓▓
1 PHILLIPS
2 STEVEN CHARLES

12 Restrictions A    9a End NONE
16 Hgt 5-10    15 Sex M    18 Eyes GRN
5 DD ▓▓▓▓▓▓

RMR 000171

No. 2013-CI-08709

| In the Interest | § | In the District Court |
| | § | |
| ▮▮▮▮▮▮ | § | 438th Judicial District |
| | § | |
| Minor Child | § | Bexar County, Texas |



### Order Registering Judgment Under UIFSA and on Arrears

On June 28, 2013, came on to be heard this case all matters of law and fact were submitted to the Court. The Court finds it has jurisdiction of the parties and the subject matter of this case. All persons entitled to notice were properly notified. A record of the arguments and evidence was made.

The Court finds that on or about May 30, 2013, **Steven Phillips** was duly and properly served with process in this cause, that the return has been on file for over ten (10) days, that **Steven Phillips** has not answered and has wholly made default.

The Court finds that on or about May 30, 2013, **Steven Phillips** was served via certified mail, return receipt requested, and regular mail the Notice of Application for Judicial Writ of Withholding. A verified motion to stay was not filed within ten days by **Steven Phillips**.

**IT IS ORDERED** that the "Decree of Divorce" issued by the Chancery Court of Boone County, Arkansas on February 7, 1978 and filed in this cause be and is registered and is a final judgment of this Court under the provisions of the Uniform Interstate Family Support Act.

**IT IS ORDERED** that **Cheryl Macumber** is granted and rendered an order for child support arrearages, including accrued interest against **Steven Phillips** in the amount of $304,861.74 as of June 28th, 2013, the date of rendition of this judgment, such judgment bearing interest at 10 percent interest compounded annually until the date the judgment is paid, and is rendered on June 28, 2013.

*Attorney's Fees*

**IT IS ORDERED** that a judgment for attorney's fees of $30,400.00 is taxed as costs against

RMR 000172

Steven Phillips, and **Steven Phillips** is ORDERED to pay those fees by cash, cashier's check or money order directly to **Steven A. Sinkin** at the Sinkin Law Firm, 105 West Woodlawn, San Antonio, Texas 78212. The attorneys may enforce this order for fees in the attorneys' own name and utilize all child support enforcement remedies for the collection of these attorney's fees. Such judgment bearing interest at the maximum rate provided by law from June 28th, 2013, until paid.

In the event of an unsuccessful appeal (direct or indirect) to the Court of Appeals by **Steven Phillips** an additional judgment of $25,000.00 for attorney's fees is granted in favor of **Steven A. Sinkin** and the Sinkin Law Firm against **Steven Phillips**. In the event of an unsuccessful petition for review or indirect appeal to the Supreme Court of Texas by **Steven Phillips**, an additional judgment of $17,500.00 for attorney's fees is granted in favor of **Steven A. Sinkin** and the Sinkin Law Firm and against **Steven Phillips**. In the event the petition for review or indirect appeal to the Supreme Court of Texas by **Steven Phillips** is granted and ultimately unsuccessful, an additional judgment of $15,000.00 for attorney's fees is granted in favor of **Steven A. Sinkin** and the Sinkin Law Firm and against **Steven Phillips**. In the event of the filing of a petition for bankruptcy by **Steven Phillips**, an additional judgment of $7,500.00 for attorney's fees is granted in favor of **Steven A. Sinkin** and the Sinkin Law Firm and against **Steven Phillips** for the collection of child support. The attorneys may enforce this order for fees in the attorneys' own name and utilize all child support enforcement remedies for collection of these attorney fees. Such judgment bearing interest at the maximum rate provided by law.

IT IS ORDERED that **Cheryl Macumber** is awarded a judgment of $359.59 against **Steven Phillips** for costs of court incurred in the course of this lawsuit, with interest at the maximum rate provided by law from the date of this judgment until paid, for which let execution issue.

IT IS ORDERED that **Cheryl Macumber** is entitled to issue child support liens, levies and

RMR 000173

writs of income withholding as remedies for the collection of unpaid child support.

IT IS FURTHER ORDERED that **Cheryl Macumber** is entitled to foreclose all child support liens issued in this case.

*Order for Withholding*

IT IS ORDERED that in addition to all other remedies available for enforcement; the arrearages enumerated above shall be payable through a judicial writ of withholding from earnings for child support within two years or less as mandated by the Texas Family Code. **IT IS FURTHER ORDERED** that the judicial writ of withholding from earnings for child support shall be binding on **Steven Phillips**'s present employer and all subsequent employers.

IT IS ORDERED that all child support payments be made to:

> Sinkin Law Firm
> 105 West Woodlawn
> San Antonio, TX 78212

IT IS ORDERED that **Steven Phillips**'s address for service is ███████████████ ██████████████ IT IS FURTHER ORDERED that **Steven Phillips** shall notify in writing this Court, the Sinkin Law Firm at 105 West Woodlawn, San Antonio, Texas 78212-3457, telecopier (210) 736-2777; and the State Case Registry within seven (7) days of any change in address or employment.

IT IS ORDERED that this Order on Arrears is a final and appealable order.

Signed this Date: June _28_, 2013.

_____
**Judge Presiding**

RMR 000174

Approved as to Form & Substance:

**Sinkin Law Firm**
105 West Woodlawn
San Antonio, Texas 78212-3457
(210) 732-6000 Telephone
(210) 736-2777 Telecopier

By: _____
**Steven A. Sinkin**
State Bar No. 18438700
**Andrew Ross**
State Bar No. 24070529
**Sam Sinkin**
State Bar No. 24076901
**Attorneys for Cheryl Macumber**



RMR 000175

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT, WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*October 04, 2013*

DONNA KAY McKINNEY
BEXAR COUNTY, TEXAS

By: _____

DANIEL ZAMARRIPA, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*

# Child Support Paymnets
## Monthly Principal and Interest - Compounded Monthly

| Yearly Interest Rate: | 10% |
|---|---|
| Monthly Interest Rate: | 0.83333% |

| Month | Monthly Payment | Interest | Total |
|---|---|---|---|
| Mar-78 | 100.00 | - | 100.00 |
| Apr-78 | 100.00 | 0.83 | 200.83 |
| May-78 | 100.00 | 1.67 | 302.51 |
| Jun-78 | 100.00 | 2.52 | 405.03 |
| Jul-78 | 100.00 | 3.38 | 508.40 |
| Aug-78 | 100.00 | 4.24 | 612.64 |
| Sep-78 | 100.00 | 5.11 | 717.75 |
| Oct-78 | 100.00 | 5.98 | 823.73 |
| Nov-78 | 100.00 | 6.86 | 930.59 |
| Dec-78 | 100.00 | 7.75 | 1,038.35 |
| Jan-79 | 100.00 | 8.65 | 1,147.00 |
| Feb-79 | 100.00 | 9.56 | 1,256.56 |
| Mar-79 | 100.00 | 10.47 | 1,367.03 |
| Apr-79 | 100.00 | 11.39 | 1,478.42 |
| May-79 | 100.00 | 12.32 | 1,590.74 |
| Jun-79 | 100.00 | 13.26 | 1,704.00 |
| Jul-79 | 100.00 | 14.20 | 1,818.20 |
| Aug-79 | 100.00 | 15.15 | 1,933.35 |
| Sep-79 | 100.00 | 16.11 | 2,049.46 |
| Oct-79 | 100.00 | 17.08 | 2,166.54 |
| Nov-79 | 100.00 | 18.05 | 2,284.59 |
| Dec-79 | 100.00 | 19.04 | 2,403.63 |
| Jan-80 | 100.00 | 20.03 | 2,523.66 |
| Feb-80 | 100.00 | 21.03 | 2,644.69 |
| Mar-80 | 100.00 | 22.04 | 2,766.73 |
| Apr-80 | 100.00 | 23.06 | 2,889.79 |
| May-80 | 100.00 | 24.08 | 3,013.87 |
| Jun-80 | 100.00 | 25.12 | 3,138.98 |
| Jul-80 | 100.00 | 26.16 | 3,265.14 |
| Aug-80 | 100.00 | 27.21 | 3,392.35 |
| Sep-80 | 100.00 | 28.27 | 3,520.62 |
| Oct-80 | 100.00 | 29.34 | 3,649.96 |
| Nov-80 | 100.00 | 30.42 | 3,780.38 |
| Dec-80 | 100.00 | 31.50 | 3,911.88 |
| Jan-81 | 100.00 | 32.60 | 4,044.48 |
| Feb-81 | 100.00 | 33.70 | 4,178.18 |

RMR 000177

| | | | |
|---|---|---|---|
| Mar-81 | 100.00 | 34.82 | 4,313.00 |
| Apr-81 | 100.00 | 35.94 | 4,448.94 |
| May-81 | 100.00 | 37.07 | 4,586.02 |
| Jun-81 | 100.00 | 38.22 | 4,724.23 |
| Jul-81 | 100.00 | 39.37 | 4,863.60 |
| Aug-81 | 100.00 | 40.53 | 5,004.13 |
| Sep-81 | 100.00 | 41.70 | 5,145.83 |
| Oct-81 | 100.00 | 42.88 | 5,288.71 |
| Nov-81 | 100.00 | 44.07 | 5,432.79 |
| Dec-81 | 100.00 | 45.27 | 5,578.06 |
| Jan-82 | 100.00 | 46.48 | 5,724.54 |
| Feb-82 | 100.00 | 47.70 | 5,872.25 |
| Mar-82 | 100.00 | 48.94 | 6,021.18 |
| Apr-82 | 100.00 | 50.18 | 6,171.36 |
| May-82 | 100.00 | 51.43 | 6,322.79 |
| Jun-82 | 100.00 | 52.69 | 6,475.48 |
| Jul-82 | 100.00 | 53.96 | 6,629.44 |
| Aug-82 | 100.00 | 55.25 | 6,784.69 |
| Sep-82 | 100.00 | 56.54 | 6,941.23 |
| Oct-82 | 100.00 | 57.84 | 7,099.07 |
| Nov-82 | 100.00 | 59.16 | 7,258.23 |
| Dec-82 | 100.00 | 60.49 | 7,418.71 |
| Jan-83 | 100.00 | 61.82 | 7,580.54 |
| Feb-83 | 100.00 | 63.17 | 7,743.71 |
| Mar-83 | 100.00 | 64.53 | 7,908.24 |
| Apr-83 | 100.00 | 65.90 | 8,074.14 |
| May-83 | 100.00 | 67.28 | 8,241.42 |
| Jun-83 | 100.00 | 68.68 | 8,410.10 |
| Jul-83 | 100.00 | 70.08 | 8,580.19 |
| Aug-83 | 100.00 | 71.50 | 8,751.69 |
| Sep-83 | 100.00 | 72.93 | 8,924.62 |
| Oct-83 | 100.00 | 74.37 | 9,098.99 |
| Nov-83 | 100.00 | 75.82 | 9,274.82 |
| Dec-83 | 100.00 | 77.29 | 9,452.11 |
| Jan-84 | 100.00 | 78.77 | 9,630.87 |
| Feb-84 | 100.00 | 80.26 | 9,811.13 |
| Mar-84 | 100.00 | 81.76 | 9,992.89 |
| Apr-84 | 100.00 | 83.27 | 10,176.16 |
| May-84 | 100.00 | 84.80 | 10,360.97 |
| Jun-84 | 100.00 | 86.34 | 10,547.31 |
| Jul-84 | 100.00 | 87.89 | 10,735.20 |
| Aug-84 | 100.00 | 89.46 | 10,924.66 |
| Sep-84 | 100.00 | 91.04 | 11,115.70 |
| Oct-84 | 100.00 | 92.63 | 11,308.33 |
| Nov-84 | 100.00 | 94.24 | 11,502.57 |
| Dec-84 | 100.00 | 95.85 | 11,698.42 |
| Jan-85 | 100.00 | 97.49 | 11,895.91 |

RMR 000178

| | | | |
|---|---|---|---|
| Feb-85 | 100.00 | 99.13 | 12,095.04 |
| Mar-85 | 100.00 | 100.79 | 12,295.83 |
| Apr-85 | 100.00 | 102.47 | 12,498.30 |
| May-85 | 100.00 | 104.15 | 12,702.45 |
| Jun-85 | 100.00 | 105.85 | 12,908.31 |
| Jul-85 | 100.00 | 107.57 | 13,115.87 |
| Aug-85 | 100.00 | 109.30 | 13,325.17 |
| Sep-85 | 100.00 | 111.04 | 13,536.22 |
| Oct-85 | 100.00 | 112.80 | 13,749.02 |
| Nov-85 | 100.00 | 114.58 | 13,963.59 |
| Dec-85 | 100.00 | 116.36 | 14,179.96 |
| Jan-86 | 100.00 | 118.17 | 14,398.12 |
| Feb-86 | 100.00 | 119.98 | 14,618.11 |
| Mar-86 | 100.00 | 121.82 | 14,839.93 |
| Apr-86 | 100.00 | 123.67 | 15,063.59 |
| May-86 | 100.00 | 125.53 | 15,289.12 |
| Jun-86 | 100.00 | 127.41 | 15,516.53 |
| Jul-86 | 100.00 | 129.30 | 15,745.83 |
| Aug-86 | 100.00 | 131.22 | 15,977.05 |
| Sep-86 | 100.00 | 133.14 | 16,210.19 |
| Oct-86 | 100.00 | 135.08 | 16,445.28 |
| Nov-86 | 100.00 | 137.04 | 16,682.32 |
| Dec-86 | 100.00 | 139.02 | 16,921.34 |
| Jan-87 | 100.00 | 141.01 | 17,162.35 |
| Feb-87 | 100.00 | 143.02 | 17,405.37 |
| Mar-87 | 100.00 | 145.04 | 17,650.42 |
| Apr-87 | 100.00 | 147.09 | 17,897.50 |
| May-87 | 100.00 | 149.15 | 18,146.65 |
| Jun-87 | 100.00 | 151.22 | 18,397.87 |
| Jul-87 | 100.00 | 153.32 | 18,651.19 |
| Aug-87 | 100.00 | 155.43 | 18,906.61 |
| Sep-87 | 100.00 | 157.56 | 19,164.17 |
| Oct-87 | 100.00 | 159.70 | 19,423.87 |
| Nov-87 | 100.00 | 161.87 | 19,685.73 |
| Dec-87 | 100.00 | 164.05 | 19,949.78 |
| Jan-88 | 100.00 | 166.25 | 20,216.03 |
| Feb-88 | 100.00 | 168.47 | 20,484.50 |
| Mar-88 | 100.00 | 170.70 | 20,755.20 |
| Apr-88 | 100.00 | 172.96 | 21,028.16 |
| May-88 | 100.00 | 175.23 | 21,303.40 |
| Jun-88 | 100.00 | 177.53 | 21,580.93 |
| Jul-88 | 100.00 | 179.84 | 21,860.77 |
| Aug-88 | 100.00 | 182.17 | 22,142.94 |
| Sep-88 | 100.00 | 184.52 | 22,427.46 |
| Oct-88 | 100.00 | 186.90 | 22,714.36 |
| Nov-88 | 100.00 | 189.29 | 23,003.65 |
| Dec-88 | 100.00 | 191.70 | 23,295.34 |

RMR 000179

| | | | |
|---|---|---|---|
| Jan-89 | 100.00 | 194.13 | 23,589.47 |
| Feb-89 | 100.00 | 196.58 | 23,886.05 |
| Mar-89 | 100.00 | 199.05 | 24,185.10 |
| Apr-89 | 100.00 | 201.54 | 24,486.64 |
| May-89 | 100.00 | 204.06 | 24,790.70 |
| Jun-89 | 100.00 | 206.59 | 25,097.29 |
| Jul-89 | 100.00 | 209.14 | 25,406.43 |
| Aug-89 | 100.00 | 211.72 | 25,718.15 |
| Sep-89 | 100.00 | 214.32 | 26,032.47 |
| Oct-89 | 100.00 | 216.94 | 26,349.41 |
| Nov-89 | 100.00 | 219.58 | 26,668.98 |
| Dec-89 | 100.00 | 222.24 | 26,991.23 |
| Jan-90 | 100.00 | 224.93 | 27,316.15 |
| Feb-90 | 100.00 | 227.63 | 27,643.79 |
| Mar-90 | 100.00 | 230.36 | 27,974.15 |
| Apr-90 | 100.00 | 233.12 | 28,307.27 |
| May-90 | 100.00 | 235.89 | 28,643.16 |
| Jun-90 | 100.00 | 238.69 | 28,981.86 |
| Jul-90 | 100.00 | 241.52 | 29,323.37 |
| Aug-90 | 100.00 | 244.36 | 29,667.73 |
| Sep-90 | 100.00 | 247.23 | 30,014.97 |
| Oct-90 | 100.00 | 250.12 | 30,365.09 |
| Nov-90 | 100.00 | 253.04 | 30,718.13 |
| Dec-90 | 100.00 | 255.98 | 31,074.12 |
| Jan-91 | 100.00 | 258.95 | 31,433.07 |
| Feb-91 | 100.00 | 261.94 | 31,795.01 |
| Mar-91 | 100.00 | 264.96 | 32,159.97 |
| Apr-91 | 100.00 | 268.00 | 32,527.97 |
| May-91 | 100.00 | 271.07 | 32,899.03 |
| Jun-91 | 100.00 | 274.16 | 33,273.19 |
| Jul-91 | 100.00 | 277.28 | 33,650.47 |
| Aug-91 | 100.00 | 280.42 | 34,030.89 |
| Sep-91 | 100.00 | 283.59 | 34,414.48 |
| Oct-91 | 100.00 | 286.79 | 34,801.27 |
| Nov-91 | 100.00 | 290.01 | 35,191.28 |
| Dec-91 | 100.00 | 293.26 | 35,584.54 |
| Jan-92 | 100.00 | 296.54 | 35,981.08 |
| Feb-92 | 100.00 | 299.84 | 36,380.92 |
| Mar-92 | 100.00 | 303.17 | 36,784.09 |
| Apr-92 | 100.00 | 306.53 | 37,190.63 |
| May-92 | 100.00 | 309.92 | 37,600.55 |
| Jun-92 | 100.00 | 313.34 | 38,013.89 |
| Jul-92 | 100.00 | 316.78 | 38,430.67 |
| Aug-92 | 100.00 | 320.26 | 38,850.93 |
| Sep-92 | 100.00 | 323.76 | 39,274.68 |
| Oct-92 | 100.00 | 327.29 | 39,701.97 |
| Nov-92 | 100.00 | 330.85 | 40,132.82 |

RMR 000180

| | | | |
|---|---|---|---|
| Dec-92 | 100.00 | 334.44 | 40,567.26 |
| Jan-93 | 100.00 | 338.06 | 41,005.32 |
| Feb-93 | 100.00 | 341.71 | 41,447.03 |
| Mar-93 | 100.00 | 345.39 | 41,892.43 |
| Apr-93 | 100.00 | 349.10 | 42,341.53 |
| May-93 | 100.00 | 352.85 | 42,794.38 |
| Jun-93 | 100.00 | 356.62 | 43,251.00 |
| Jul-93 | 100.00 | 360.42 | 43,711.42 |
| Aug-93 | 100.00 | 364.26 | 44,175.68 |
| Sep-93 | 100.00 | 368.13 | 44,643.81 |
| Oct-93 | 100.00 | 372.03 | 45,115.85 |
| Nov-93 | 100.00 | 375.97 | 45,591.81 |
| Dec-93 | 100.00 | 379.93 | 46,071.74 |
| Jan-94 | - | 383.93 | 46,455.67 |
| Feb-94 | - | 387.13 | 46,842.80 |
| Mar-94 | - | 390.36 | 47,233.16 |
| Apr-94 | - | 393.61 | 47,626.77 |
| May-94 | - | 396.89 | 48,023.66 |
| Jun-94 | - | 400.20 | 48,423.86 |
| Jul-94 | - | 403.53 | 48,827.39 |
| Aug-94 | - | 406.89 | 49,234.28 |
| Sep-94 | - | 410.29 | 49,644.57 |
| Oct-94 | - | 413.70 | 50,058.28 |
| Nov-94 | - | 417.15 | 50,475.43 |
| Dec-94 | - | 420.63 | 50,896.06 |
| Jan-95 | - | 424.13 | 51,320.19 |
| Feb-95 | - | 427.67 | 51,747.86 |
| Mar-95 | - | 431.23 | 52,179.09 |
| Apr-95 | - | 434.83 | 52,613.92 |
| May-95 | - | 438.45 | 53,052.37 |
| Jun-95 | - | 442.10 | 53,494.47 |
| Jul-95 | - | 445.79 | 53,940.26 |
| Aug-95 | - | 449.50 | 54,389.76 |
| Sep-95 | - | 453.25 | 54,843.01 |
| Oct-95 | - | 457.03 | 55,300.03 |
| Nov-95 | - | 460.83 | 55,760.86 |
| Dec-95 | - | 464.67 | 56,225.54 |
| Jan-96 | - | 468.55 | 56,694.08 |
| Feb-96 | - | 472.45 | 57,166.53 |
| Mar-96 | - | 476.39 | 57,642.92 |
| Apr-96 | - | 480.36 | 58,123.28 |
| May-96 | - | 484.36 | 58,607.64 |
| Jun-96 | - | 488.40 | 59,096.04 |
| Jul-96 | - | 492.47 | 59,588.51 |
| Aug-96 | - | 496.57 | 60,085.08 |
| Sep-96 | - | 500.71 | 60,585.78 |
| Oct-96 | - | 504.88 | 61,090.67 |

RMR 000181

| | | | |
|---|---|---|---|
| Nov-96 | - | 509.09 | 61,599.76 |
| Dec-96 | - | 513.33 | 62,113.09 |
| Jan-97 | - | 517.61 | 62,630.70 |
| Feb-97 | - | 521.92 | 63,152.62 |
| Mar-97 | - | 526.27 | 63,678.89 |
| Apr-97 | - | 530.66 | 64,209.55 |
| May-97 | - | 535.08 | 64,744.63 |
| Jun-97 | - | 539.54 | 65,284.17 |
| Jul-97 | - | 544.03 | 65,828.20 |
| Aug-97 | - | 548.57 | 66,376.77 |
| Sep-97 | - | 553.14 | 66,929.91 |
| Oct-97 | - | 557.75 | 67,487.66 |
| Nov-97 | - | 562.40 | 68,050.05 |
| Dec-97 | - | 567.08 | 68,617.14 |
| Jan-98 | - | 571.81 | 69,188.95 |
| Feb-98 | - | 576.57 | 69,765.52 |
| Mar-98 | - | 581.38 | 70,346.90 |
| Apr-98 | - | 586.22 | 70,933.13 |
| May-98 | - | 591.11 | 71,524.24 |
| Jun-98 | - | 596.04 | 72,120.27 |
| Jul-98 | - | 601.00 | 72,721.27 |
| Aug-98 | - | 606.01 | 73,327.28 |
| Sep-98 | - | 611.06 | 73,938.34 |
| Oct-98 | - | 616.15 | 74,554.50 |
| Nov-98 | - | 621.29 | 75,175.78 |
| Dec-98 | - | 626.46 | 75,802.25 |
| Jan-99 | - | 631.69 | 76,433.93 |
| Feb-99 | - | 636.95 | 77,070.88 |
| Mar-99 | - | 642.26 | 77,713.14 |
| Apr-99 | - | 647.61 | 78,360.75 |
| May-99 | - | 653.01 | 79,013.76 |
| Jun-99 | - | 658.45 | 79,672.21 |
| Jul-99 | - | 663.94 | 80,336.14 |
| Aug-99 | - | 669.47 | 81,005.61 |
| Sep-99 | - | 675.05 | 81,680.66 |
| Oct-99 | - | 680.67 | 82,361.33 |
| Nov-99 | - | 686.34 | 83,047.67 |
| Dec-99 | - | 692.06 | 83,739.74 |
| Jan-00 | - | 697.83 | 84,437.57 |
| Feb-00 | - | 703.65 | 85,141.21 |
| Mar-00 | - | 709.51 | 85,850.72 |
| Apr-00 | - | 715.42 | 86,566.15 |
| May-00 | - | 721.38 | 87,287.53 |
| Jun-00 | - | 727.40 | 88,014.93 |
| Jul-00 | - | 733.46 | 88,748.38 |
| Aug-00 | - | 739.57 | 89,487.95 |
| Sep-00 | - | 745.73 | 90,233.69 |

RMR 000182

| | | | |
|---|---|---|---|
| Oct-00 | - | 751.95 | 90,985.63 |
| Nov-00 | - | 758.21 | 91,743.85 |
| Dec-00 | - | 764.53 | 92,508.38 |
| Jan-01 | - | 770.90 | 93,279.28 |
| Feb-01 | - | 777.33 | 94,056.61 |
| Mar-01 | - | 783.81 | 94,840.42 |
| Apr-01 | - | 790.34 | 95,630.75 |
| May-01 | - | 796.92 | 96,427.68 |
| Jun-01 | - | 803.56 | 97,231.24 |
| Jul-01 | - | 810.26 | 98,041.50 |
| Aug-01 | - | 817.01 | 98,858.51 |
| Sep-01 | - | 823.82 | 99,682.33 |
| Oct-01 | - | 830.69 | 100,513.02 |
| Nov-01 | - | 837.61 | 101,350.63 |
| Dec-01 | - | 844.59 | 102,195.22 |
| Jan-02 | - | 851.63 | 103,046.84 |
| Feb-02 | - | 858.72 | 103,905.57 |
| Mar-02 | - | 865.88 | 104,771.45 |
| Apr-02 | - | 873.10 | 105,644.54 |
| May-02 | - | 880.37 | 106,524.91 |
| Jun-02 | - | 887.71 | 107,412.62 |
| Jul-02 | - | 895.11 | 108,307.73 |
| Aug-02 | - | 902.56 | 109,210.29 |
| Sep-02 | - | 910.09 | 110,120.38 |
| Oct-02 | - | 917.67 | 111,038.05 |
| Nov-02 | - | 925.32 | 111,963.36 |
| Dec-02 | - | 933.03 | 112,896.39 |
| Jan-03 | - | 940.80 | 113,837.19 |
| Feb-03 | - | 948.64 | 114,785.84 |
| Mar-03 | - | 956.55 | 115,742.39 |
| Apr-03 | - | 964.52 | 116,706.91 |
| May-03 | - | 972.56 | 117,679.46 |
| Jun-03 | - | 980.66 | 118,660.13 |
| Jul-03 | - | 988.83 | 119,648.96 |
| Aug-03 | - | 997.07 | 120,646.03 |
| Sep-03 | - | 1,005.38 | 121,651.42 |
| Oct-03 | - | 1,013.76 | 122,665.18 |
| Nov-03 | - | 1,022.21 | 123,687.39 |
| Dec-03 | - | 1,030.73 | 124,718.12 |
| Jan-04 | - | 1,039.32 | 125,757.44 |
| Feb-04 | - | 1,047.98 | 126,805.41 |
| Mar-04 | - | 1,056.71 | 127,862.13 |
| Apr-04 | - | 1,065.52 | 128,927.64 |
| May-04 | - | 1,074.40 | 130,002.04 |
| Jun-04 | - | 1,083.35 | 131,085.39 |
| Jul-04 | - | 1,092.38 | 132,177.77 |
| Aug-04 | - | 1,101.48 | 133,279.25 |

RMR 000183

| | | | |
|---|---|---|---|
| Sep-04 | - | 1,110.66 | 134,389.91 |
| Oct-04 | - | 1,119.92 | 135,509.83 |
| Nov-04 | - | 1,129.25 | 136,639.08 |
| Dec-04 | - | 1,138.66 | 137,777.74 |
| Jan-05 | - | 1,148.15 | 138,925.88 |
| Feb-05 | - | 1,157.72 | 140,083.60 |
| Mar-05 | - | 1,167.36 | 141,250.96 |
| Apr-05 | - | 1,177.09 | 142,428.05 |
| May-05 | - | 1,186.90 | 143,614.95 |
| Jun-05 | - | 1,196.79 | 144,811.74 |
| Jul-05 | - | 1,206.76 | 146,018.51 |
| Aug-05 | - | 1,216.82 | 147,235.33 |
| Sep-05 | - | 1,226.96 | 148,462.29 |
| Oct-05 | - | 1,237.19 | 149,699.48 |
| Nov-05 | - | 1,247.50 | 150,946.97 |
| Dec-05 | - | 1,257.89 | 152,204.86 |
| Jan-06 | - | 1,268.37 | 153,473.24 |
| Feb-06 | - | 1,278.94 | 154,752.18 |
| Mar-06 | - | 1,289.60 | 156,041.78 |
| Apr-06 | - | 1,300.35 | 157,342.13 |
| May-06 | - | 1,311.18 | 158,653.32 |
| Jun-06 | - | 1,322.11 | 159,975.43 |
| Jul-06 | - | 1,333.13 | 161,308.56 |
| Aug-06 | - | 1,344.24 | 162,652.79 |
| Sep-06 | - | 1,355.44 | 164,008.23 |
| Oct-06 | - | 1,366.74 | 165,374.97 |
| Nov-06 | - | 1,378.12 | 166,753.09 |
| Dec-06 | - | 1,389.61 | 168,142.70 |
| Jan-07 | - | 1,401.19 | 169,543.89 |
| Feb-07 | - | 1,412.87 | 170,956.76 |
| Mar-07 | - | 1,424.64 | 172,381.40 |
| Apr-07 | - | 1,436.51 | 173,817.91 |
| May-07 | - | 1,448.48 | 175,266.39 |
| Jun-07 | - | 1,460.55 | 176,726.94 |
| Jul-07 | - | 1,472.72 | 178,199.67 |
| Aug-07 | - | 1,485.00 | 179,684.67 |
| Sep-07 | - | 1,497.37 | 181,182.04 |
| Oct-07 | - | 1,509.85 | 182,691.89 |
| Nov-07 | - | 1,522.43 | 184,214.32 |
| Dec-07 | - | 1,535.12 | 185,749.44 |
| Jan-08 | - | 1,547.91 | 187,297.35 |
| Feb-08 | - | 1,560.81 | 188,858.16 |
| Mar-08 | - | 1,573.82 | 190,431.98 |
| Apr-08 | - | 1,586.93 | 192,018.92 |
| May-08 | - | 1,600.16 | 193,619.07 |
| Jun-08 | - | 1,613.49 | 195,232.57 |
| Jul-08 | - | 1,626.94 | 196,859.50 |

RMR 000184

| | | | |
|---|---|---|---|
| Aug-08 | - | 1,640.50 | 198,500.00 |
| Sep-08 | - | 1,654.17 | 200,154.17 |
| Oct-08 | - | 1,667.95 | 201,822.12 |
| Nov-08 | - | 1,681.85 | 203,503.97 |
| Dec-08 | - | 1,695.87 | 205,199.83 |
| Jan-09 | - | 1,710.00 | 206,909.83 |
| Feb-09 | - | 1,724.25 | 208,634.08 |
| Mar-09 | - | 1,738.62 | 210,372.70 |
| Apr-09 | - | 1,753.11 | 212,125.80 |
| May-09 | - | 1,767.72 | 213,893.52 |
| Jun-09 | - | 1,782.45 | 215,675.97 |
| Jul-09 | - | 1,797.30 | 217,473.27 |
| Aug-09 | - | 1,812.28 | 219,285.54 |
| Sep-09 | - | 1,827.38 | 221,112.92 |
| Oct-09 | - | 1,842.61 | 222,955.53 |
| Nov-09 | - | 1,857.96 | 224,813.49 |
| Dec-09 | - | 1,873.45 | 226,686.94 |
| Jan-10 | - | 1,889.06 | 228,576.00 |
| Feb-10 | - | 1,904.80 | 230,480.80 |
| Mar-10 | - | 1,920.67 | 232,401.47 |
| Apr-10 | - | 1,936.68 | 234,338.15 |
| May-10 | - | 1,952.82 | 236,290.97 |
| Jun-10 | - | 1,969.09 | 238,260.06 |
| Jul-10 | - | 1,985.50 | 240,245.56 |
| Aug-10 | - | 2,002.05 | 242,247.60 |
| Sep-10 | - | 2,018.73 | 244,266.33 |
| Oct-10 | - | 2,035.55 | 246,301.89 |
| Nov-10 | - | 2,052.52 | 248,354.40 |
| Dec-10 | - | 2,069.62 | 250,424.02 |
| Jan-11 | - | 2,086.87 | 252,510.89 |
| Feb-11 | - | 2,104.26 | 254,615.15 |
| Mar-11 | - | 2,121.79 | 256,736.94 |
| Apr-11 | - | 2,139.47 | 258,876.41 |
| May-11 | - | 2,157.30 | 261,033.72 |
| Jun-11 | - | 2,175.28 | 263,209.00 |
| Jul-11 | - | 2,193.41 | 265,402.41 |
| Aug-11 | - | 2,211.69 | 267,614.09 |
| Sep-11 | - | 2,230.12 | 269,844.21 |
| Oct-11 | - | 2,248.70 | 272,092.91 |
| Nov-11 | - | 2,267.44 | 274,360.35 |
| Dec-11 | - | 2,286.34 | 276,646.69 |
| Jan-12 | - | 2,305.39 | 278,952.08 |
| Feb-12 | - | 2,324.60 | 281,276.68 |
| Mar-12 | - | 2,343.97 | 283,620.65 |
| Apr-12 | - | 2,363.51 | 285,984.16 |
| May-12 | - | 2,383.20 | 288,367.36 |
| Jun-12 | - | 2,403.06 | 290,770.42 |

RMR 000185

| | | | |
|---|---|---|---|
| Jul-12 | - | 2,423.09 | 293,193.51 |
| Aug-12 | - | 2,443.28 | 295,636.79 |
| Sep-12 | - | 2,463.64 | 298,100.43 |
| Oct-12 | - | 2,484.17 | 300,584.60 |
| Nov-12 | - | 2,504.87 | 303,089.47 |
| Dec-12 | - | 2,525.75 | 305,615.21 |
| Jan-13 | - | 2,546.79 | 308,162.01 |
| Feb-13 | - | 2,568.02 | 310,730.02 |
| Mar-13 | - | 2,589.42 | 313,319.44 |
| Apr-13 | - | 2,611.00 | 315,930.44 |
| May-13 | - | 2,632.75 | 318,563.19 |
| Jun-13 | - | 2,654.69 | 321,217.88 |
| Jul-13 | - | 2,676.82 | 323,894.70 |
| Aug-13 | - | 2,699.12 | 326,593.82 |
| Sep-13 | - | 2,721.62 | 329,315.44 |

RMR 000186



| S U S A N | TEXAS COMPTROLLER *of* PUBLIC ACCOUNTS |
|---|---|
| C O M B S | P.O. Box 13528 • Austin, TX 78711-3528 |



November 21, 2013

Mr. Tim Robinson
Attorney at Law
6204 Sherbert Drive
North Richland Hills, Texas 76180

RE:     Steven Phillips Wrongful Imprisonment Child Support Claim - Application to Cure

Dear Mr. Robinson:

The Comptroller has completed the review of the application to cure that you submitted on
behalf of your client, Mr. Steven Phillips. The application to cure was submitted on October 11,
2013, pursuant to Section 103.051(d) of the Texas Civil Practice and Remedies Code. *See* Tex.
Civ. Prac. & Rem. Code Ann. §§ 103.001-.154 ("the Tim Cole Act"). After careful
consideration of the application to cure, the supporting documentation including the Order
Registering Judgment under UIFSA and on Arrears issued by the 438th Judicial District Court of
Bexar County on June 28, 2013[1] and the schedule of child support arrearages, and contemplation
of the terms and provisions of the Tim Cole Act, the Comptroller stands by the determination
conveyed in our letter to Mr. Phillips dated September 10, 2013.

The Tim Cole Act gives the Comptroller the duty and the concomitant discretion to determine
the amount of compensation owed to the applicant for time spent wrongfully imprisoned.[2]
Compensation includes "child support payments owed by the person on whose imprisonment the
claim is based that became due and interest on child support arrearages that accrued during the
time served in prison but were not paid."[3]

The Comptroller determined that Mr. Phillips is entitled to child support compensation in the
total amount of $18,593.23 payable to Ms. Macumber. This sum represents the amount of child
support arrearages and interest that accrued during Mr. Phillips's time spent in prison from June
4, 1982 to October 23, 1996 and again from May 14, 1997 to December 28, 2007.[4] The amount
of child support arrearages and interest that accrued is based on the Decree of Divorce, signed on
February 7, 1978, in Boone County, Arkansas. The Decree of Divorce ordered Mr. Phillips to
pay $100 per month in child support to Ms. Macumber for the support of their child ███████
████████████ who was born on ████████████ To determine the amount owed

---

[1] Please note that the Order Registering Judgment does not address the amount payable under the Tim Cole Act
because it is directed to the total amount of child support allegedly owed by Mr. Phillips to Ms. Macumber.
[2] *See* Tex. Civ. Prac. & Rem. Code § 103.051(b).
[3] Tex. Civ. Prac. & Rem. Code § 103.052(a)(2).
[4] *See id.*

under Section 103.052(a)(2) of the Tim Cole Act, the Comptroller applied the relevant Arkansas laws that govern child support obligations, arrearages, and interest.[5] To calculate the amount of child support arrearages and interest that accrued, the Comptroller first determined that: (1) Mr. Phillips's obligation to pay current child support payments terminated by operation of law upon the date ████ should have graduated from high school, May of 1994;[6] (2) none of Mr. Phillips's child support payments that became due prior to March 7, 1989 accrued interest, and all of Mr. Phillips's child support payments that became due after March 7, 1989 accrued interest at the statutory rate of ten percent (10%) per annum;[7] (3) the ten percent (10%) interest rate in this case should be calculated as simple interest;[8] and (4) interest on child support arrearages stopped accruing when ████ turned 23 on ████████ [9]

Based upon these principles and applicable law, the Comptroller determined that Mr. Phillips was entitled to child support compensation in the total amount of $18,593.23 payable to Ms. Macumber. Therefore, on September 11, 2013, the Comptroller issued a warrant for $18,593.23 to the Texas state disbursement unit, as required by Section 103.052(c) of the Tim Cole Act, to be distributed to Ms. Macumber. The amount of $18,593.23 in past due child support and interest is the proper amount of child support that was calculated in accordance with Arkansas law, and is the only amount that the Comptroller is statutorily authorized to pay. Any other amounts ordered to be paid by Mr. Phillips to Ms. Macumber are his obligation to pay or dispute.

Rather than the $18,593.23 in child support arrearages and interest determined to be payable under Section 103.052(a)(2) of the Tim Cole Act, Mr. Phillips's application to cure seeks from the Comptroller child support arrearages and interest totaling over $304,739.57. This $304,739.57 amount appears to be determined based on a chart of alleged child support arrearages and interest submitted by Ms. Macumber to the Bexar County District Court to procure an "Order Registering Judgment under UIFSA on Arrears," signed on June 28, 2013 in Cause No. 2013-CI-08709 in the 438th Judicial District Court of Bexar County. The chart is labeled "Child Support Paymnets [sic] Monthly Principal and Interest - Compounded Monthly." The calculation in this chart is incorrect because: (1) it compounds the interest when a simple interest rate is required; (2) it begins interest accrual prior to March 7, 1989, the effective date of Act 383 of Arkansas, 1989 Regular Session, which authorized the accrual of interest on child support arrearages; and (3) it continues to calculate interest accruals beyond ████████ birthday on ████████ in contravention of Ark. Code. Ann. § 9-14-236.

---

[5] *See* Tex. Fam. Code § 159.604.
[6] *See* Ark. Code. Ann. § 9-14-327; *Ward v. Doss*, 361 Ark. 153, Fn. 1 (2005); *Mixon v. Mixon*, 65 Ark. App. 240 (1999); *James v. James*, 52 Ark. App. 29 (1996).
[7] *See Ark.* Act 383 of 1989, Regular Session; Ark. Code. Ann. § 16-65-114; *Chism v. Phelps*, 228 Ark. 936, 939 (1958).
[8] *See First Nat'l Bank in Mena v. Nowlin*, 509 F.2d 872, 875-76 (8th Cir. 1975); *see also In re SW Boston Hotel Venture, LLC*, 479 B.R. 210, 224-25 (B.A.P. 1st Cir. 2012); *RFF Family P'ship, LP v. Link Dev., LLC*, 2013 WL 450150, *8 (D.Mass. 2013); *Grandoe Corp. v. Gander Mountain Co.*, 2013 WL 3353927, *23 (D.Minn. 2013); *Barbosa v. Jastrzab*, 2010 WL 2666947, *4-5 (N.D.N.Y. 2010); *Imperial Casualty and Indemnity Co., v. Bellini*, 947 A.2d 886, 894-95 (R.I. 2008); *Edwards v. Campbell*, 369 S.C. 572, 577-79 (2006).
[9] *See* Ark. Code. Ann. § 9-14-236.

Mr. Tim Robinson
November 21, 2013
Page 3

Consequently, the Comptroller is unable to approve Mr. Phillips's application to cure, and stands by the determination conveyed in our letter to Mr. Phillips dated September 10, 2013. If you have any questions or need additional information, please contact the Comptroller's Judiciary Section by e-mail at leonard.higgins@cpa.state.tx.us or by phone at 1-800-531-5441, extension 6-6100.

Sincerely,

Leonard Higgins
Comptroller's Judiciary Section

RMR 000189



January 7, 2015

Mr. Steven C. Phillips

███████████████████████

Dear Mr. Phillips:

In 2009, the Comptroller approved your application for wrongful imprisonment compensation filed under Chapter 103 of the Texas Civil Practice and Remedies Code ("the Tim Cole Act"). In addition to compensation for time spent wrongfully imprisoned, the Tim Cole Act also provides compensation to wrongfully imprisoned individuals for child support payments owed by the person on whose imprisonment the claim is based that became due and interest on child support arrearages that accrued during the time served in prison but were not paid. As a part of your 2009 application, you sought compensation for child support owed to Ms. Cheryl Macumber.

In 2009, the Comptroller was unable to satisfy your claim for Ms. Macumber's child support because the Comptroller did not have sufficient information to determine the amount owed. In addition, Section 103.052(c) requires that child support payments under the Tim Cole Act be made through the state disbursement unit, and the Arkansas state disbursement unit was unwilling to accept Ms. Macumber's payment because they had no records of child support owed. In 2013, in light of new information and the registration of the child support order in Texas, which permits the Texas state disbursement unit to distribute the payment to Ms. Macumber, the Comptroller determined that $18,593.23 was payable under Section 103.052(a)(2) of the Tim Cole Act to Ms. Macumber. This payment was paid on your behalf in a lump-sum payment to the Texas state disbursement unit for distribution to Ms. Macumber.

In determining the $18,593.23 payment amount, the Comptroller included a calculation of simple interest of 10% per annum on all payments that became due after March 7, 1989, based on Arkansas Code section 9-14-233, which became effective on March 7, 1989 and provides that all child support that becomes due and remains unpaid shall accrue 10% interest per annum. Now, after a subsequent review of the relevant law, the Comptroller has determined that an additional payment of interest is appropriate. Arkansas common law and constitution provide for the recovery of 6% simple interest on payments that became due between June 4, 1982 and December 31, 1987, and Arkansas Code section 9-12-309(c), which became effective at midnight December 31, 1987, provides for the recovery of 10% simple interest on payments that became due between January 1, 1988 and January 1, 1999. As a result, the Comptroller has determined that a total of $25,125.69 is payable under Section 103.052(a)(2) of the Tim Cole Act to Ms.

Mr. Steven C. Phillips
January 7, 2015
Page Two

Macumber. The attached spreadsheet details the calculation of this amount. Because the Comptroller has already paid $18,593.23, an additional payment of $6,532.46 has been made, for a total payment of $25,125.69.

The additional payment of $6,532.46 was paid on your behalf in a lump-sum payment to the Texas state disbursement unit for distribution to Ms. Macumber. Please be advised that the new total of $25,125.69 in past due child support and interest (which includes all interest that is due) is the proper amount of child support that has been calculated in accordance with appropriate law, and is the only amount that the Comptroller is statutorily authorized to pay. Any other amounts ordered to be paid by you to Ms. Macumber are your obligation to pay or dispute.

If you have any questions or need additional information, please contact the Comptroller's Judiciary Section by e-mail at leonard.higgins@cpa.state.tx.us or by phone at 1-800-531-5441, extension 6-6100.

Sincerely,

Leonard Higgins
Comptroller's Judiciary Section

cc: Matthew F. Wymer

RMR 000191

# Phillips - Macumber - Child Support Calculation

| date | monthly support obligation | payment | EOM principal balance | EOM 10% int. balance | EOM 6% int. balance | EOM arrears total | NOTES: |
|------|------|------|------|------|------|------|------|
| 06/04/82 | | | | | | | EOM = "end of month" |
| 06/14/82 | $100.00 | | $100.00 | $0.00 | | | Payment Due Date = 14th of month |
| 07/14/82 | $100.00 | | $200.00 | $0.00 | | | |
| 08/14/82 | $100.00 | | $300.00 | $0.00 | $0.50 | $300.50 | Unless otherwise indicated, |
| 09/14/82 | $100.00 | | $400.00 | $0.00 | $1.50 | $401.50 | EOM interest entry for each line |
| 10/14/82 | $100.00 | | $500.00 | $0.00 | $3.00 | $503.00 | represents interest accruals from |
| 11/14/82 | $100.00 | | $600.00 | $0.00 | $5.00 | $605.00 | 15th of previous month through |
| 12/14/82 | $100.00 | | $700.00 | $0.00 | $7.50 | $707.50 | date in first column. |
| 01/14/83 | $100.00 | | $800.00 | $0.00 | $10.50 | $810.50 | |
| 02/14/83 | $100.00 | | $900.00 | $0.00 | $14.00 | $914.00 | |
| 03/14/83 | $100.00 | | $1,000.00 | $0.00 | $18.00 | $1,018.00 | |
| 04/14/83 | $100.00 | | $1,100.00 | $0.00 | $22.50 | $1,122.50 | |
| 05/14/83 | $100.00 | | $1,200.00 | $0.00 | $27.50 | $1,227.50 | |
| 06/14/83 | $100.00 | | $1,300.00 | $0.00 | $33.00 | $1,333.00 | |
| 07/14/83 | $100.00 | | $1,400.00 | $0.00 | $39.00 | $1,439.00 | |
| 08/14/83 | $100.00 | | $1,500.00 | $0.00 | $45.50 | $1,545.50 | |
| 09/14/83 | $100.00 | | $1,600.00 | $0.00 | $52.50 | $1,652.50 | |
| 10/14/83 | $100.00 | | $1,700.00 | $0.00 | $60.00 | $1,760.00 | |
| 11/14/83 | $100.00 | | $1,800.00 | $0.00 | $68.00 | $1,868.00 | |
| 12/14/83 | $100.00 | | $1,900.00 | $0.00 | $76.50 | $1,976.50 | |
| 01/14/84 | $100.00 | | $2,000.00 | $0.00 | $85.50 | $2,085.50 | |
| 02/14/84 | $100.00 | | $2,100.00 | $0.00 | $95.00 | $2,195.00 | |
| 03/14/84 | $100.00 | | $2,200.00 | $0.00 | $105.00 | $2,305.00 | |
| 04/14/84 | $100.00 | | $2,300.00 | $0.00 | $115.50 | $2,415.50 | |
| 05/14/84 | $100.00 | | $2,400.00 | $0.00 | $126.50 | $2,526.50 | |
| 06/14/84 | $100.00 | | $2,500.00 | $0.00 | $138.00 | $2,638.00 | |
| 07/14/84 | $100.00 | | $2,600.00 | $0.00 | $150.00 | $2,750.00 | |
| 08/14/84 | $100.00 | | $2,700.00 | $0.00 | $162.50 | $2,862.50 | |
| 09/14/84 | $100.00 | | $2,800.00 | $0.00 | $175.50 | $2,975.50 | |
| 10/14/84 | $100.00 | | $2,900.00 | $0.00 | $189.00 | $3,089.00 | |
| 11/14/84 | $100.00 | | $3,000.00 | $0.00 | $203.00 | $3,203.00 | |
| 12/14/84 | $100.00 | | $3,100.00 | $0.00 | $217.50 | $3,317.50 | |
| 01/14/85 | $100.00 | | $3,200.00 | $0.00 | $232.50 | $3,432.50 | |
| 02/14/85 | $100.00 | | $3,300.00 | $0.00 | $248.00 | $3,548.00 | |
| 03/14/85 | $100.00 | | $3,400.00 | $0.00 | $264.00 | $3,664.00 | |
| 04/14/85 | $100.00 | | $3,500.00 | $0.00 | $280.50 | $3,780.50 | |
| 05/14/85 | $100.00 | | $3,600.00 | $0.00 | $297.50 | $3,897.50 | |
| 06/14/85 | $100.00 | | $3,700.00 | $0.00 | $315.00 | $4,015.00 | |
| 07/14/85 | $100.00 | | $3,800.00 | $0.00 | $333.00 | $4,133.00 | |
| 08/14/85 | $100.00 | | $3,900.00 | $0.00 | $351.50 | $4,251.50 | |
| 09/14/85 | $100.00 | | $4,000.00 | $0.00 | $370.50 | $4,370.50 | |
| 10/14/85 | $100.00 | | $4,100.00 | $0.00 | $390.00 | $4,490.00 | |
| 11/14/85 | $100.00 | | $4,200.00 | $0.00 | $410.00 | $4,610.00 | |
| 12/14/85 | $100.00 | | $4,300.00 | $0.00 | $430.50 | $4,730.50 | |
| 01/14/86 | $100.00 | | $4,400.00 | $0.00 | $451.50 | $4,851.50 | |
| 02/14/86 | $100.00 | | $4,500.00 | $0.00 | $473.00 | $4,973.00 | |
| 03/14/86 | $100.00 | | $4,600.00 | $0.00 | $495.00 | $5,095.00 | |
| 04/14/86 | $100.00 | | $4,700.00 | $0.00 | $517.50 | $5,217.50 | |
| 05/14/86 | $100.00 | | $4,800.00 | $0.00 | $540.50 | $5,340.50 | |
| 06/14/86 | $100.00 | | $4,900.00 | $0.00 | $564.00 | $5,464.00 | |
| 07/14/86 | $100.00 | | $5,000.00 | $0.00 | $588.00 | $5,588.00 | |
| 08/14/86 | $100.00 | | $5,100.00 | $0.00 | $612.50 | $5,712.50 | |
| 09/14/86 | $100.00 | | $5,200.00 | $0.00 | $637.50 | $5,837.50 | |
| 10/14/86 | $100.00 | | $5,300.00 | $0.00 | $663.00 | $5,963.00 | |
| 11/14/86 | $100.00 | | $5,400.00 | $0.00 | $689.00 | $6,089.00 | |
| 12/14/86 | $100.00 | | $5,500.00 | $0.00 | $715.50 | $6,215.50 | |

RMR 000192

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 01/14/87 | $100.00 | $5,600.00 | $0.00 | $742.50 | $6,342.50 | |
| 02/14/87 | $100.00 | $5,700.00 | $0.00 | $770.00 | $6,470.00 | |
| 03/14/87 | $100.00 | $5,800.00 | $0.00 | $798.00 | $6,598.00 | |
| 04/14/87 | $100.00 | $5,900.00 | $0.00 | $826.50 | $6,726.50 | |
| 05/14/87 | $100.00 | $6,000.00 | $0.00 | $855.50 | $6,855.50 | |
| 06/14/87 | $100.00 | $6,100.00 | $0.00 | $885.00 | $6,985.00 | |
| 07/14/87 | $100.00 | $6,200.00 | $0.00 | $915.00 | $7,115.00 | |
| 08/14/87 | $100.00 | $6,300.00 | $0.00 | $945.50 | $7,245.50 | |
| 09/14/87 | $100.00 | $6,400.00 | $0.00 | $976.50 | $7,376.50 | |
| 10/14/87 | $100.00 | $6,500.00 | $0.00 | $1,008.00 | $7,508.00 | |
| 11/14/87 | $100.00 | $6,600.00 | $0.00 | $1,040.00 | $7,640.00 | |
| 12/14/87 | $100.00 | $6,700.00 | $0.00 | $1,072.50 | $7,772.50 | |
| 01/14/88 | $100.00 | $6,800.00 | $0.00 | $1,105.50 | $7,905.50 | Ark. Code § 9-12-309 takes effect |
| 02/14/88 | $100.00 | $6,900.00 | $0.83 | $1,138.50 | $8,039.33 | |
| 03/14/88 | $100.00 | $7,000.00 | $2.50 | $1,171.50 | $8,174.00 | |
| 04/14/88 | $100.00 | $7,100.00 | $5.00 | $1,204.50 | $8,309.50 | |
| 05/14/88 | $100.00 | $7,200.00 | $8.33 | $1,237.50 | $8,445.83 | |
| 06/14/88 | $100.00 | $7,300.00 | $12.50 | $1,270.50 | $8,583.00 | |
| 07/14/88 | $100.00 | $7,400.00 | $17.50 | $1,303.50 | $8,721.00 | |
| 08/14/88 | $100.00 | $7,500.00 | $23.33 | $1,336.50 | $8,859.83 | |
| 09/14/88 | $100.00 | $7,600.00 | $30.00 | $1,369.50 | $8,999.50 | |
| 10/14/88 | $100.00 | $7,700.00 | $37.50 | $1,402.50 | $9,140.00 | |
| 11/14/88 | $100.00 | $7,800.00 | $45.83 | $1,435.50 | $9,281.33 | |
| 12/14/88 | $100.00 | $7,900.00 | $55.00 | $1,468.50 | $9,423.50 | |
| 01/14/89 | $100.00 | $8,000.00 | $65.00 | $1,501.50 | $9,566.50 | |
| 02/14/89 | $100.00 | $8,100.00 | $75.83 | $1,534.50 | $9,710.33 | |
| 03/14/89 | $100.00 | $8,200.00 | $11.67 | $1,567.50 | $9,779.17 | |
| 04/14/89 | $100.00 | $8,300.00 | $24.17 | $1,600.50 | $9,924.67 | |
| 05/14/89 | $100.00 | $8,400.00 | $37.50 | $1,633.50 | $10,071.00 | |
| 06/14/89 | $100.00 | $8,500.00 | $51.67 | $1,666.50 | $10,218.17 | |
| 07/14/89 | $100.00 | $8,600.00 | $66.67 | $1,699.50 | $10,366.17 | |
| 08/14/89 | $100.00 | $8,700.00 | $82.50 | $1,732.50 | $10,515.00 | |
| 09/14/89 | $100.00 | $8,800.00 | $99.17 | $1,765.50 | $10,664.67 | |
| 10/14/89 | $100.00 | $8,900.00 | $116.67 | $1,798.50 | $10,815.17 | |
| 11/14/89 | $100.00 | $9,000.00 | $135.00 | $1,831.50 | $10,966.50 | |
| 12/14/89 | $100.00 | $9,100.00 | $154.17 | $1,864.50 | $11,118.67 | |
| 01/14/90 | $100.00 | $9,200.00 | $174.17 | $1,897.50 | $11,271.67 | |
| 02/14/90 | $100.00 | $9,300.00 | $195.00 | $1,930.50 | $11,425.50 | |
| 03/14/90 | $100.00 | $9,400.00 | $216.67 | $1,963.50 | $11,580.17 | |
| 04/14/90 | $100.00 | $9,500.00 | $239.17 | $1,996.50 | $11,735.67 | |
| 05/14/90 | $100.00 | $9,600.00 | $262.50 | $2,029.50 | $11,892.00 | |
| 06/14/90 | $100.00 | $9,700.00 | $286.67 | $2,062.50 | $12,049.17 | |
| 07/14/90 | $100.00 | $9,800.00 | $311.67 | $2,095.50 | $12,207.17 | |
| 08/14/90 | $100.00 | $9,900.00 | $337.50 | $2,128.50 | $12,366.00 | |
| 09/14/90 | $100.00 | $10,000.00 | $364.17 | $2,161.50 | $12,525.67 | |
| 10/14/90 | $100.00 | $10,100.00 | $391.67 | $2,194.50 | $12,686.17 | |
| 11/14/90 | $100.00 | $10,200.00 | $420.00 | $2,227.50 | $12,847.50 | |
| 12/14/90 | $100.00 | $10,300.00 | $449.17 | $2,260.50 | $13,009.67 | |
| 01/14/91 | $100.00 | $10,400.00 | $479.17 | $2,293.50 | $13,172.67 | |
| 02/14/91 | $100.00 | $10,500.00 | $510.00 | $2,326.50 | $13,336.50 | |
| 03/14/91 | $100.00 | $10,600.00 | $541.67 | $2,359.50 | $13,501.17 | |
| 04/14/91 | $100.00 | $10,700.00 | $574.17 | $2,392.50 | $13,666.67 | |
| 05/14/91 | $100.00 | $10,800.00 | $607.50 | $2,425.50 | $13,833.00 | |
| 06/14/91 | $100.00 | $10,900.00 | $641.67 | $2,458.50 | $14,000.17 | |
| 07/14/91 | $100.00 | $11,000.00 | $676.67 | $2,491.50 | $14,168.17 | |
| 08/14/91 | $100.00 | $11,100.00 | $712.50 | $2,524.50 | $14,337.00 | |
| 09/14/91 | $100.00 | $11,200.00 | $749.17 | $2,557.50 | $14,506.67 | |
| 10/14/91 | $100.00 | $11,300.00 | $786.67 | $2,590.50 | $14,677.17 | |
| 11/14/91 | $100.00 | $11,400.00 | $825.00 | $2,623.50 | $14,848.50 | |
| 12/14/91 | $100.00 | $11,500.00 | $864.17 | $2,656.50 | $15,020.67 | |

RMR 000193

| | | | | | |
|---|---|---|---|---|---|
| 01/14/92 | $100.00 | $11,600.00 | $904.17 | $2,689.50 | $15,193.67 |
| 02/14/92 | $100.00 | $11,700.00 | $945.00 | $2,722.50 | $15,367.50 |
| 03/14/92 | $100.00 | $11,800.00 | $986.67 | $2,755.50 | $15,542.17 |
| 04/14/92 | $100.00 | $11,900.00 | $1,029.17 | $2,788.50 | $15,717.67 |
| 05/14/92 | $100.00 | $12,000.00 | $1,072.50 | $2,821.50 | $15,894.00 |
| 06/14/92 | $100.00 | $12,100.00 | $1,116.67 | $2,854.50 | $16,071.17 |
| 07/14/92 | $100.00 | $12,200.00 | $1,161.67 | $2,887.50 | $16,249.17 |
| 08/14/92 | $100.00 | $12,300.00 | $1,207.50 | $2,920.50 | $16,428.00 |
| 09/14/92 | $100.00 | $12,400.00 | $1,254.17 | $2,953.50 | $16,607.67 |
| 10/14/92 | $100.00 | $12,500.00 | $1,301.67 | $2,986.50 | $16,788.17 |
| 11/14/92 | $100.00 | $12,600.00 | $1,350.00 | $3,019.50 | $16,969.50 |
| 12/14/92 | $100.00 | $12,700.00 | $1,399.17 | $3,052.50 | $17,151.67 |
| 01/14/93 | $100.00 | $12,800.00 | $1,449.17 | $3,085.50 | $17,334.67 |
| 02/14/93 | $100.00 | $12,900.00 | $1,500.00 | $3,118.50 | $17,518.50 |
| 03/14/93 | $100.00 | $13,000.00 | $1,551.67 | $3,151.50 | $17,703.17 |
| 04/14/93 | $100.00 | $13,100.00 | $1,604.17 | $3,184.50 | $17,888.67 |
| 05/14/93 | $100.00 | $13,200.00 | $1,657.50 | $3,217.50 | $18,075.00 |
| 06/14/93 | $100.00 | $13,300.00 | $1,711.67 | $3,250.50 | $18,262.17 |
| 07/14/93 | $100.00 | $13,400.00 | $1,766.67 | $3,283.50 | $18,450.17 |
| 08/14/93 | $100.00 | $13,500.00 | $1,822.50 | $3,316.50 | $18,639.00 |
| 09/14/93 | $100.00 | $13,600.00 | $1,879.17 | $3,349.50 | $18,828.67 |
| 10/14/93 | $100.00 | $13,700.00 | $1,936.67 | $3,382.50 | $19,019.17 |
| 11/14/93 | $100.00 | $13,800.00 | $1,995.00 | $3,415.50 | $19,210.50 |
| 12/14/93 | $100.00 | $13,900.00 | $2,054.17 | $3,448.50 | $19,402.67 |
| 01/14/94 | $100.00 | $14,000.00 | $2,114.17 | $3,481.50 | $19,595.67 |
| 02/14/94 | $100.00 | $14,100.00 | $2,175.00 | $3,514.50 | $19,789.50 |
| 03/14/94 | $100.00 | $14,200.00 | $2,236.67 | $3,547.50 | $19,984.17 |
| 04/14/94 | $100.00 | $14,300.00 | $2,299.17 | $3,580.50 | $20,179.67 |
| 05/14/94 | $100.00 | $14,400.00 | $2,362.50 | $3,613.50 | $20,376.00 H.S. Graduation |
| 06/14/94 | | $14,400.00 | $2,426.67 | $3,646.50 | $20,473.17 |
| 07/14/94 | | $14,400.00 | $2,490.83 | $3,679.50 | $20,570.33 |
| 08/14/94 | | $14,400.00 | $2,555.00 | $3,712.50 | $20,667.50 |
| 09/14/94 | | $14,400.00 | $2,619.17 | $3,745.50 | $20,764.67 |
| 10/14/94 | | $14,400.00 | $2,683.33 | $3,778.50 | $20,861.83 |
| 11/14/94 | | $14,400.00 | $2,747.50 | $3,811.50 | $20,959.00 |
| 12/14/94 | | $14,400.00 | $2,811.67 | $3,844.50 | $21,056.17 |
| 01/14/95 | | $14,400.00 | $2,875.83 | $3,877.50 | $21,153.33 |
| 02/14/95 | | $14,400.00 | $2,940.00 | $3,910.50 | $21,250.50 |
| 03/14/95 | | $14,400.00 | $3,004.17 | $3,943.50 | $21,347.67 |
| 04/14/95 | | $14,400.00 | $3,068.33 | $3,976.50 | $21,444.83 |
| 05/14/95 | | $14,400.00 | $3,132.50 | $4,009.50 | $21,542.00 |
| 06/14/95 | | $14,400.00 | $3,196.67 | $4,042.50 | $21,639.17 |
| 07/14/95 | | $14,400.00 | $3,260.83 | $4,075.50 | $21,736.33 |
| 08/14/95 | | $14,400.00 | $3,325.00 | $4,108.50 | $21,833.50 |
| 09/14/95 | | $14,400.00 | $3,389.17 | $4,141.50 | $21,930.67 |
| 10/14/95 | | $14,400.00 | $3,453.33 | $4,174.50 | $22,027.83 |
| 11/14/95 | | $14,400.00 | $3,517.50 | $4,207.50 | $22,125.00 |
| 12/14/95 | | $14,400.00 | $3,581.67 | $4,240.50 | $22,222.17 |
| 01/14/96 | | $14,400.00 | $3,645.83 | $4,273.50 | $22,319.33 |
| 02/14/96 | | $14,400.00 | $3,710.00 | $4,306.50 | $22,416.50 |
| 03/14/96 | | $14,400.00 | $3,774.17 | $4,339.50 | $22,513.67 |
| 04/14/96 | | $14,400.00 | $3,838.33 | $4,372.50 | $22,610.83 |
| 05/14/96 | | $14,400.00 | $3,902.50 | $4,405.50 | $22,708.00 |
| 06/14/96 | | $14,400.00 | $3,966.67 | $4,438.50 | $22,805.17 |
| 07/14/96 | | $14,400.00 | $4,030.83 | $4,471.50 | $22,902.33 |
| 08/14/96 | | $14,400.00 | $4,095.00 | $4,504.50 | $22,999.50 |
| 09/14/96 | | $14,400.00 | $4,159.17 | $4,537.50 | $23,096.67 |
| 10/14/96 | | $14,400.00 | $4,223.33 | $4,570.50 | $23,193.83 |
| 5/96 -10/23/96 | | | $4,241.96 | $4,580.08 | $23,222.04 interest for 9 days (10/15 to 10/23) |
| | | | | | RELEASED ON PAROLE ON 23RD |

RMR 000194

| Date | Payment | | | | | Notes |
|---|---|---|---|---|---|---|
| /96 - 11/14/96 | | $14,400.00 | $45.54 | $23.42 | $68.96 | interest for 22 days (10/24 to 11/14) |
| 12/14/96 | | $14,400.00 | $109.70 | $56.42 | $166.12 | No amounts between 10/23/96 |
| 01/14/97 | | $14,400.00 | $173.87 | $89.42 | $263.29 | and 5/13/97 count towards CPA total. |
| 02/14/97 | | $14,400.00 | $238.04 | $122.42 | $360.46 | 2 payments of $110 apply to this time. |
| 03/14/97 | | $14,400.00 | $302.20 | $155.42 | $457.62 | |
| 3/xx/1997 | $110.00 | $14,400.00 | $192.20 | | | During this period out of prison, |
| 04/14/97 | | $14,400.00 | $256.37 | $188.42 | $444.79 | Phillips owes $427.69. |
| 4/xx/97 | $110.00 | $14,400.00 | $146.37 | | | |
| 05/13/97 | | $14,400.00 | $208.40 | $219.29 | $427.69 | interest for 29 days |
| | | | | | | TAKEN INTO CUSTODY ON 14TH |
| 05/14/97 | | $14,400.00 | $4,244.10 | $4,581.15 | $23,225.25 | interest for 1 day (5/14) |
| 06/14/97 | | $14,400.00 | $4,306.13 | $4,614.15 | $23,320.27 | |
| 07/14/97 | | $14,400.00 | $4,370.30 | $4,647.15 | $23,417.44 | |
| 08/14/97 | | $14,400.00 | $4,434.46 | $4,680.15 | $23,514.61 | |
| 09/14/97 | | $14,400.00 | $4,498.63 | $4,713.15 | $23,611.77 | |
| 10/14/97 | | $14,400.00 | $4,562.80 | $4,746.15 | $23,708.94 | |
| 11/14/97 | | $14,400.00 | $4,626.96 | $4,779.15 | $23,806.11 | |
| 12/14/97 | | $14,400.00 | $4,691.13 | $4,812.15 | $23,903.27 | |
| 01/14/98 | | $14,400.00 | $4,755.30 | $4,845.15 | $24,000.44 | |
| 02/14/98 | | $14,400.00 | $4,819.46 | $4,878.15 | $24,097.61 | |
| 03/14/98 | | $14,400.00 | $4,883.63 | $4,911.15 | $24,194.77 | |
| 04/14/98 | | $14,400.00 | $4,947.80 | $4,944.15 | $24,291.94 | |
| 05/14/98 | | $14,400.00 | $5,011.96 | $4,977.15 | $24,389.11 | |
| 06/14/98 | | $14,400.00 | $5,076.13 | $5,010.15 | $24,486.27 | |
| 07/14/98 | | $14,400.00 | $5,140.30 | $5,043.15 | $24,583.44 | |
| 08/14/98 | | $14,400.00 | $5,204.46 | $5,076.15 | $24,680.61 | |
| 09/14/98 | | $14,400.00 | $5,268.63 | $5,109.15 | $24,777.77 | |
| 10/14/98 | | $14,400.00 | $5,332.80 | $5,142.15 | $24,874.94 | |
| 11/14/98 | | $14,400.00 | $5,396.96 | $5,175.15 | $24,972.11 | |
| 12/14/98 | | $14,400.00 | $5,461.13 | $5,208.15 | $25,069.27 | |
| | | $14,400.00 | $5,498.39 | $5,227.31 | $25,125.69 | interest accrual for 18 days |
| | | | | | | TOTAL Tim Cole Act Amount Owed |

RMR 000195



# Texas Comptroller of Public Accounts

132252074      JANUARY 07, 2015

TREASURY WARRANT NO.

010615 0001 902 95M50157 7X0000X67739 001
PAYING AGENCY: 512-463-4561 COMPTROLLER - STATE FISCAL

## 132252074

PAY     SIX THOUSAND FIVE HUNDRED THIRTY TWO DOLLARS AND 46/100

*6,532.46

TO      TX STATE DISPURSEMENT UNIT
NCP:STEVEN CHARLES PHILLIPS ID █████████
CP: CHERYL MACUMBER
PO BOX 659417
SAN ANTONIO, TX 78265-9417

VOID AFTER
08/31/2017

⑈304⑈ ⑆114900164⑆    ⑈132252074⑈



TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
AUSTIN TX 78774-0100

TX State Disbursement Unit
NCP:Steven Charles Phillips ID █████████
PO Box 659417
San Antonio, Texas 78265-9417

RMR 000196